# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **VANGUARD IDENTIFICATION SYSTEMS, INC.,** | : | |
| | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 97-6790 (JPF)** |
| | : | |
| **STIK/STRIP LAMINATING COMPANY, INC.** | : | |
| **(d/b/a SSI PHOTO I.D.) and DOCUSYSTEMS, INC.,** | : | |
| | : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| **VANGUARD IDENTIFICATION SYSTEMS, INC.,** | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | **NO. 02-2943** |
| v. | : | |
| | : | |
| **RONNIE E. GOADE, Sr., et al.** | : | |
| | : | |
| Defendants. | : | |

## SUPPLEMENTAL MEMORANDUM OF LAW

### I. INTRODUCTION

The purpose of this Memorandum is to address two points raised at the October 24, 2002 argument.

First, the Court requested a brief from counsel for Vanguard Identification Systems, Inc. ("Vanguard") on the authority that, when a plaintiff asserts a successor liability claim, a court has federal jurisdiction over the successor corporation if it had jurisdiction over the predecessor. This doctrine establishes as a matter of law that the Court has jurisdiction over REG Oklahoma Acquisition, LLC ("REG") in *Vanguard v. Ron E.Goade, Sr.,* et. al. No. 02-2943 ("Fraudulent

Conveyance Action.") and defeats REG's Motion to Dismiss.  Additionally, Vanguard provides the authority mentioned at argument, but not briefed, concerning this Court's obligation to exercise the jurisdiction granted it even when an overlapping case is pending in state court.

Secondly, Vanguard responds to the Bench Memo submitted by REG concerning Vanguard's Motion for Judicial Sale filed in *Vanguard Identification Systems, Inc. v. Stik/Strip Laminating*, 97-CV-6790 ("Patent Action.")    In brief, U.S. Patent 5,921,584 ("584 Patent") was never transferred from SSI to REG.  (Accomplishing the transfer was the purpose of the action filed by REG against SSI in Oklahoma. )   Even if one assumes that Heller Financial, Inc. ("Heller") had a lien on the 584 Patent filed at the state level -- and Vanguard would contest its validity given that Heller did not have a patent-specific security agreement or Patent Office lien, as it did for other patents -- Heller terminated that state lien on March 30, 2001.  (Remarkably, REG ignored this fact.)[1]  Consequently, Vanguard is entitled to execute by virtue of its lien or simply by virtue of its $2 Judgment.  Further, because Heller terminated its lien, there is no reason for it to be a party to the judicial sale.  Again, it is not the role of this, or any, Court to correct the errors made by attorneys to the prejudice of judgment creditors – in this case, an error made by McAffee & Taft, which represents REG in this case, in failing to accomplish the transfer of the 584 Patent.

## II.  ARGUMENT

### A.    This Court Has Jurisdiction Over REG Because It Had Jurisdiction Over Its Predecessor, SSI.

As stated at argument on October 24, 2002, this Court has jurisdiction over REG by virtue of its having had jurisdiction over SSI and by virtue of Vanguard's successor liability claim in the

---

[1]  The termination document was produced to Vanguard by REG.  Undoubtedly, REG knew about it but failed to disclose it to the Court.

fraudulent conveyance action.   Clearly, SSI cannot evade both a judgment and then jurisdiction for a claim concerning that judgment by transforming itself into a new entity.   The relevant doctrine is well established.   *Simmers v. American Cyanamid Corp.*, 394 Pa. Super. 464, 473, 576 A. 2d 376, 381(1990); *City of Richmond v. Madison Management Group, Inc.*, 918 F. 2d 438, 444-445 (4th Cir. 1990); *McClary v. Erie Engine & Manufacturing Co.*, 856 F. Supp. 52, 57 (D. N.H. 1994); *Select Creations, Inc. v. Paliafito America, Inc.*, 853 F. Supp. 740, 765 (E.D. Wis. 1994).   As the Court in *City of Richmond* stated, quoting the Pennsylvania Superior Court in *Simmers*:

> "The great weight of persuasive authority permits imputation of a predecessor's actions upon its successor *whenever* forum law would hold the successor liable for its predecessor's actions."

*City of Richmond* at 454, citing *Simmers*; see other cases cited by *City of Richmond* at 454.

Finally, one cannot forget the larger picture.   All the acts complained of were committed for purposes of evading a $2 million judgment entered in an action in this District in favor of a plaintiff in this District while Ron E. Goade, Sr. ("Goade") continues with apparent impunity to operate the same company that Vanguard sued in 1997.   The fact that Goade re-purchased the company at the foreclosure of a secured lender who appeared on the scene after suit was filed – and became secured to Vanguard's detriment as a result of Goade's fraudulent statements – does not insulate defendants. Defendants' liability is supported by the case mentioned at the oral argument just then reported in the *Legal Intelligencer* and attached hereto, as Exhibit "A."   *Continental Insurance Company v. Schneider, Inc., et. al.* 2002 Pa. Super 323, slip op. October 21, 2002

**B.    This Court Has An Obligation To Exercise The Jurisdiction Conferred Upon It.**

The first-filed rule cannot apply because the Third Circuit has held that it applies only

-3-

between courts of equal sovereignty.[2]   Nevertheless, it is still worth noting that Federal courts have

an obligation to exercise the jurisdiction conferred upon them and can only abstain in exceptional

circumstances.  In *Ryan v. Johnson*, 115 F. 3d. 193, 198 (3rd Cir. 1997), the Third Circuit recognized

"the century-old principle" that "'the pendency of an action in the state court is no bar to proceedings

concerning the same matter in the Federal court having jurisdiction..,'" quoting  *Colorado River*

*Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246 (1976).  Still

quoting *Colorado River*, it recognized the "virtually unflagging obligation of the federal courts to

exercise the jurisdiction given them..."   Consequently, as the Third Circuit observed in *Spring City*

*Corp. v. American Buildings Co.*, 193 F. 3d 165, 172 (3rd Cir. 1999), the general rule is that state and

federal actions proceed simultaneously until one has a collateral estoppel effect on the other.   In

similar circumstances, the court in *Bryant Electric Co., Inc. v. Joe Rainero Tile Company, Inc.*, 84

F.R.D. 120, 126 (W. D. Va. 1979) stated that the state court should voluntarily stay the action before

it – relief that Vanguard will likely seek in Oklahoma.

Indeed, if this court takes any action, it should enjoin REG from proceeding in the Oklahoma

court under the "in aid of jurisdiction" exception to the anti-injunction act, 28 U.S.C. § 2283.  See

*In Re Diet Drugs*, 282 F. 3d. 220 (3rd Cir. 2002) for the Third Circuit's most recent explanation of

this exception.   This exception would apply if this Court proceeds with the judicial sale.[3]

---

[2]     *Compagnie Des Bauxites De Guinea v. Insurance Company of North America*,
651 F. 2d 877, n. 10 at 887 (3rd Cir. 1981); *EEOC v. U of Penn*, 805 F. 2d 969, 971-972 (3rd Cir.
1999).  Thus, if REG did **not** abandon the first filed rule in the course of its briefing – as REG
claimed that it did not at argument – it should have.

[3]     The in-aid-of-jurisdiction exception to the anti-injunction act applies when both
actions are in rem.  Although the Oklahoma state court action was not in rem when it was filed
since REG sought specific performance from SSI, it arguably became in rem when a default
judgment was granted in REG's favor and Vanguard and REG were left to argue whether SSI
still owns the 584 Patent.

Finally, it is not insignificant that REG, opposing Vanguard's intervention in Oklahoma (the same forum where REG now wants Vanguard to bring claims and name new Defendants!), told that court any enforcement action should proceed in Pennsylvania:

> ... nothing in the [Oklahoma] lawsuit would have a preclusive effect on Vanguard's ability to attempt to collect on its judgment against Stik/Strip.  In fact, the court in Pennsylvania has retained jurisdiction over the Vanguard lawsuit against Stik/Strip for precisely this purpose, and the Court's Order specifically and expressly permits Vanguard to bring claims for any purported fraudulent conveyances or transfers.

REG's Opposition to Vanguard's Petition to Intervene, attached as Ex. H. to Vanguard's Motion for Public Judicial Sale.

**C.    Even If Heller Had A Lien – Which Vanguard Contests – The Court Should Proceed With The Judicial Sale Because Heller Released Its Lien And The Judgment Debtor SSI Remained, And Remains, The Owner Of The Asset.**

For the first time at argument, REG offered a general financing statement filed in Oklahoma and the case of *Cybernetic Services, Inc. v. Matsco, Inc.*, 252 F. 3d 1039 (2001).  REG's argument is that, even though the 584 Patent was never transferred from SSI to REG and even though Heller never filed a patent-specific lien at the Patent Office (as it did for all other patents and as Vangaurd did for the 584 Patent) and even though there was not a security agreement between Heller and SSI **specific** to the 584 Patent (as there was for all other patents[4]), Vanguard cannot execute because Heller has a prior lien perfected at the state level.   To support this proposition, it presented the Financing Statement filed in Oklahoma County, Oklahoma on June 2, 1998, attached hereto as Exhibit "B."

---

[4]  That Heller had a patent-specific security agreement for all patents but the 584 Patent is evident from the Patent Security Agreement that was part of a document that Vanguard's counsel submitted on October 26, showing that the 584 Patent was omitted from the Patent Security Agreement's Schedule 1, and is attached hereto as Exhibit "J."

REG also submitted *Cybernetic Services* because that case holds that the United States Patent Act does not mandate that a lien on a patent be filed at the Patent Office to be perfected if it is filed at the state level;[5] hence – so REG's argument goes – Heller's lien was perfected, despite the fact that it is inconsistent in form with Heller's other patent liens and patent security agreements.   At the same time, *Cybernetic Services* does not hold that a lien filed at the Patent Office – like Heller's liens on other patents – is invalid; it holds only that a Patent Office lien is not required by the Patent Act and unnecessary if a lien is filed at the state level.

In presenting this argument,  REG ignored one critical fact:  Heller terminated the very lien REG now relies upon on March 30, 2001.  See Termination Statement, attached hereto as Exhibit "C ."[6]   Meanwhile, Vanguard holds its lien, filed on April 22, 2002, and even if it did not have the lien, it has its July 10, 2000 unsatisfied $ 2 million Judgment against SSI and Docusystems, Inc. Because Heller has terminated its lien, the argument that this lien must prevail is meaningless. Moreover, because Heller terminated its lien, there is no need for Heller to be a party to these proceedings.

In this context, it is important to recall that the 584 Patent was not, in fact, transferred from SSI to REG.   It remained with SSI, Vanguard's judgment debtor.  It was the property of  SSI when Vanguard filed its lien and remains the property of SSI today.   The Assignment of Inventions and Patent Rights ("Assignment") transferring the 584 Patent from SSI to REG was never executed as it was for all other patents.  See Assignment of Inventions and Patent Rights, attached hereto as

---

[5]    The Ninth Circuit's reading of the operative Patent Act language seems strained. Its interpretation of the Patent Act is the subject of substantial academic dispute, both noted in the opinion and continuing since the opinion.

[6]    Remarkably, REG's counsel went out of his way to state that all documents were produced to Vanguard while ignoring this document itself.

Exhibit "D" and Oklahoma Petition, attached hereto as Exhibit "E " with its proposed "Corrected Assignment of Inventions and Patent Rights."   Indeed, transfer of the 584 Patent  was the explicit purpose of REG's Oklahoma Petition against SSI, and it is the basis for the specific admission in that Petition that the 585 Patent "is owned by Defendant [SSI] . . ."  See Petition, attached hereto as Exhibit "E" ¶ 4.   In short, the Petition stands as an irrefutable admission that the 584 Patent was never transferred.

That the Assignment was clearly the document effectuating transfer is reflected both in its plain language, and from the need, admitted by REG, to execute one for each patent, including a so-called Corrected Assignment for the 584 Patent, as sought by the Oklahoma Petition.   SSI's continued ownership of the 584 Patent is further substantiated by the Patent Office records, both the patent description from the Patent Office website and the document available from the Patent Office showing all title and lien holders.  See Exhibits "F " and "G ."  (Indeed, the patent description shows that the patent was filed in 1996, well before the May 29, 1998 transaction that resulted in Heller's security interests, and so there was  no reason for the 584 Patent to be omitted from a patent-specific security agreement or patent-specific lien at the patent office.)   Moreover, it was the custom of Heller and SSI, and it is standard practice generally, to register title and liens with the Patent Office. The departure from this practice is consistent with REG's filing the Oklahoma Petition to effectuate a transfer.[7]

Simply because REG can find evidence of  an **intent** to transfer all assets at the foreclosure

---

[7]         Incidentally, there is no evidence that SSI's attorneys would not execute a "Corrected" assignment because Vanguard threatened to sue them.   They corrected other errors, such as correcting the identification of another patent.   Perhaps they realized that this request from McAffee & Taft was of another dimension, particularly since it was McAffee & Taft that neglected to list the 584 Patent on the original transaction documents.

to REG on July 14, 2000, it does not follow that all assets **were**, in fact, transferred.  The specific course of dealing was to execute an Assignment of Inventions and Patents specifying the patents transferred.  To the extent REG can make a case that there was an intent to transfer all assets, there is, by necessity, an even stronger case that the parties intended to transfer each patent through the vehicle of the Assignment of Inventions and Patent Rights and by no other means.  Thus, any "intent" argument gets REG nowhere, defeated by the specific intent to execute the Assignment.  See, e.g. *H & H Press, Inc. v. Axelrod*, 638 N.E.2d 333 (Ill. App. 1994) (course of dealing gives meaning to contract.)[8]

While the language of the Assignment effectuates the transfer, the Foreclosure Agreement merely expresses an intent to transfer or assign.  Paragraph 2 says that "Debtor **shall** assign..."  See Foreclosure Agreement, attached hereto as Exhibit "H" at ¶ 2.  Contemplating the execution of such an Assignment, the Foreclosure Agreement had attached to it as an exhibit a blank Assignment.[9] *Id.* at Bates Nos. 336-338.   The Assignment is controlling as to the transfer of patents over and above any more general document.  *State Street Properties v. Zoning Board of Appeals of Chicago*, 298 N.E. 2d 239, 242 (Ill. App. 1973) (specific controls the general.)

More fundamentally, however, the Oklahoma Petition establishes that the 584 Patent was, and is, owned by SSI.  That REG may be "enforcing" the 584 Patent, as represented at argument, simply means that it is bringing lawsuits for which it lacks standing.  To the extent such lawsuits are truly adversarial and not contrived, REG's ownership will certainly be challenged.

---

[8]    By agreement of the parties, the Foreclosure Agreement is governed by Illinois law, where Heller was located.

[9]    Just as REG's counsel submitted an incomplete Petition without its exhibits, it submitted a Foreclosure Agreement without exhibits.

In the world of liens and priority, timing and form are everything.   It is not the role of the Court to correct errors or effectuate transfers *nunc pro tunc* to the prejudice of judgment creditors. REG's statement at argument that Dunlop & Codding, and not McAffee & Taft, slipped up, is incorrect.   As Exhibit " I" hereto reveals, McAffee & Taft was marking up drafts of the Foreclosure Agreement, including the unsigned Patent Assignment, and transmitting them to SSI's counsel before the agreement was consummated.   McAffee's attorneys could have added the 584 Patent to the list, but they did not.   Instead, years later, they filed the Oklahoma Petition.   Certainly it is not the role of the Court to correct attorney errors.   Under the circumstances, Vanguard is entitled to have its $2 million Judgment entered by this Court on July 10, 2000 satisfied, at least in part, from the 584 Patent.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**


By:_____
     George Bochetto, Esquire
     David J. Perlman, Esquire
     1524 Locust Street
     Philadelphia, PA 19102
     (215) 735-3900

     Attorneys for Plaintiff,
     Vanguard Identifications Systems, Inc.

Date:_____

## <u>CERTIFICATE OF SERVICE</u>

I, David J. Perlman, Esquire, hereby certify that I caused to served a true and correct copy

of the foregoing Supplemental Memorandum of Law upon the following counsel via First Class

Mail, postage prepaid:

James C. McMillin, Esquire
LAW OFFICES OF MCAFEE & TAFT, P.C.
Two Leadership Square
211 North Robinson, 10th Floor
Oklahoma City, OK 73102-7103;

And upon the following by hand delivery:

A. Richard Feldman, Esquire
BLAZON, LESS & FELDMAN, P.C.
1515 Market Street
Suite 700
Philadelphia, PA 19102-1907

BOCHETTO & LENTZ, P.C.

By:_____
David J. Perlman, Esquire

Date:_____

-10-