IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANGUARD IDENTIFICATION SYSTEMS, INC., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION No. 02-2943 (JPF) |
| RON E. GOADE, SR., et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| VANGUARD IDENTIFICATION SYSTEMS, INC., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION No. 97-CV-6790 (JPF) |
| STIK/STRIP LAMINATING, et al., | : | |
| Defendants. | : | |

## POST HEARING BRIEF

The defendants, Ron E. Goade, Sr. ("Mr. Goade"), the Ron E. Goade, Sr. Revocable Trust (the "Goade Trust"), and REG Oklahoma Acquisitions, L.L.C. ("REG") (collectively "Defendants"), submit the following post hearing brief. The Defendants' post hearing brief addresses the following issues:

1. <u>Motion for Public Judicial Sale of the '584 Patent</u>. Vanguard does not have an ownership interest in the '584 Patent. REG owns the '584 Patent, which it purchased in a Foreclosure Agreement from Heller Financial and Stik/Strip after Heller Financial lawfully foreclosed its *senior* *perfected* security interest in the assets of Stik/Strip. At the very least, if the issue of lien priority and ownership of the '584 Patent is not conclusively established in favor of

Defendants, the issue presents a material factual dispute that cannot be resolved by a summary judicial foreclosure hearing.

2.  <u>Vanguard's Fraudulent Transfer Lawsuit – Defendants' Motion to Dismiss for Lack of Personal Jurisdiction</u>.  Defendants are not subject to personal jurisdiction under a theory of "successor liability."  Mr. Goade and the Goade Trust did not purchase the assets of Stik/Strip and are indisputably not "successor" entities to Stik/Strip.  Further, while it is true that REG purchased Stik/Strip's assets and may be considered a successor, REG did not assume any liability created by Vanguard's prior lawsuit against Stik/Strip or for any other conduct subjecting Strik/Strip to personal jurisdiction in Pennsylvania.  Assuming liability of the predecessor company is a requirement for establishing personal jurisdiction on a theory of successor liability.  <u>See</u> <u>Simmers v. American Cyanamid Corp.</u>, 576 A.2d 376 (Pa. Super. Ct. 1990) (holding that the acts of a predecessor corporation may be attributed to a successor for purposes of establishing personal jurisdiction only if the successor corporation assumes the liability for the acts of its predecessor in interest).

## I.   **VANGUARD HAS NO OWNERSHIP INTEREST IN THE '584 PATENT**

Vanguard argues that the '584 Patent should be sold at a judicial sale to satisfy its Consent Judgment.  Vanguard asserts that its Consent Judgment lien has priority over Heller Financial's security interest.  In the alternative, Vanguard argues that if Heller Financial's interest is senior, then Heller Financial's security interest does not include the '584 Patent.  Vanguard's argument further assumes the '584 Patent was not one of the assets purchased by REG in the Foreclosure Agreement.

However, the evidence submitted by Defendants, which is set forth below, shows that Heller Financial had a perfected security interest in all of Stik/Strip's assets, including the '584 Patent, which is senior to Vanguard's Consent Judgment lien.  Further, the evidence shows that the '584 Patent was included in the Foreclosure Agreement and, therefore, that REG owns the '584 Patent.  If these issues are not conclusively resolved in favor of Defendants based on this evidence, the evidence at a minimum establishes a material factual dispute that cannot be

resolved in a summary judicial sale proceeding, prior to any discovery and without the testimony of any witnesses. If Vanguard's claim is not outright rejected, Vanguard should assert its lien priority dispute and claim to the '584 Patent in the Oklahoma Action (which is the purpose for which Vanguard was allowed to intervene into that lawsuit), or it should assert its claim as part of its fraudulent conveyance lawsuit against Defendants.[1]

**A.   On May 29, 1998, Stik/Strip Granted Heller Financial a Security Interest in All of Stik/Strip's Assets. This Security Interest was Created Over Two (2) Years Prior to Vanguard's Consent Judgment Against Stik/Strip.**

Mr. Goade founded Stik/Strip in approximately 1969. See Affidavit of Mr. Goade, attached as Exhibit "A," at ¶ 4.[2] Mr. Goade successfully operated the Stik/Strip business for approximately the next thirty (30) years. See id.

On May 29, 1998, Mr. Goade sold Stik/Strip to DocuSystems. See id. As part of the agreement, Mr. Goade entered into an Employment Contract with DocuSystems and took a position on DocuSystems' Board of Directors. See id.

In a separate transaction on this same date, Stik/Strip granted Heller Financial a security interest in all of Stik/Strip's assets. As part of the Security Agreement, the parties executed a "Patent Security Agreement," which specifically grants Heller Financial a security interest in "***all patents*** and patent applications ***now owned or hereafter created or acquired*** by Stik/Strip." (emphasis added). Thus, like virtually all security agreements, the Security Agreement at issue covered all property then owned by the debtor and all after-acquired

---

[1] In a separate lawsuit, Vanguard argues that the Foreclosure Agreement was a fraudulent transfer. See Vanguard's Complaint. Defendants deny that the Foreclosure Agreement was a fraudulent transfer, and Defendants have filed a Motion to Dismiss Vanguard's lawsuit for a lack of personal jurisdiction, which is pending before this Court. However, the merits of whether the Foreclosure Agreement was a fraudulent transfer are not at issue. Rather, the only arguments before the Court in support of Vanguard's Motion for Public Judicial Sale are (i) that Vanguard's lien has priority over Heller Financial's security interest; and (ii) Heller Financial's Security Interest and the Foreclosure Agreement do not include the '584 Patent.

[2] All the exhibits attached to this post hearing brief have been previously submitted to this Court in either Defendants' or Vanguard's prior pleadings, with the exception of Exhibit "I," which is an affidavit from a Vice President at Heller Financial who participated in the Foreclosure Agreement and was previously submitted in the Oklahoma Action. Vanguard has a copy of Exhibit "I" through its participation in the Oklahoma Lawsuit.

Post Hearing Brief

property, specifically including all patents "hereafter created or acquired." A copy of the relevant portion of the Security Agreement between Stik/Strip and Heller Financial is attached hereto as Exhibit "B."

Accordingly, Heller Financial's security interest was created by the Security Agreement over two years ***prior*** to Vanguard's Consent Judgment against Stik/Strip. See Vanguard's Consent Judgment Against Stik/Strip, attached as Exhibit "C." Thus, as of May 29, 1998, Heller Financial had a senior security interest, and at the time Vanguard had no interest in the '584 Patent whatsoever.

### B. On June 2, 1998, Heller Financial Perfected Its Security Interest by Filing a Financing Statement in Oklahoma's UCC Article 9 Record Database. Heller Perfected its Security Interest Over Two (2) Years Prior to Vanguard's Judgment Against Stik/Strip through which it Claims Ownership Rights in the '584 Patent.

Defendants have found no authority, and no authority has been cited by Vanguard, where a court has held that a security interest in a patent may be perfected by filing notice or a financing statement in the United States Patent and Trademark Office ("USPTO") pursuant to 35 U.S.C. § 261. Rather, it appears that all courts that have addressed the issue, and most scholars commentating on the issue, have concluded that a security interest in a patent is perfected by filing in the UCC Article 9 record database of the state where the debtor is located. See Cybernetic Services, Inc. v. Mtsco, Inc., 252 F.3d 1039 (9th Cir. 2001) (holding that a security interest is perfected by filing in a state's Article 9 UCC record database because the Supreme Court has held that the purpose of the USPTO database is only for recording "assignments" and "transfers of interest," and a security interest is not an assignment or transfer of interest) (relying on Waterman v. MacKenzie, 138 U.S. 252, 255-56 (1891); 4 White and Summers § 30-12 at 86 (noting that the text of "federal statutes appears to distinguish between security interests and outright assignments, and among lien creditors, mortgages, bona fide purchasers and others"); William C. Hillman, Documenting Secured Transactions, 2-19 22-20 (May 1998 rev.) (concluding that the filing requirements of the Patent Act do not preempt Article 9 of the UCC); Alice Haemmerli, In Security Interests: Where Intellectual Property and Commercial Law

4

Collide, 96 Columbia Law Review, 1645, 1657 (1996) (arguing that security interests are not within the scope of the Patent Acts recording statute 35 U.S.C. § 261)).  See also City Bank and Trust Co. v. Otto Fabric, Inc., 7 U.S.P.Q.2d 1719, 5 UCC Reporter Rep. Serv. 2d 1459 (D.Kan. 1988) ("For the above-stated reasons, the Court holds that a federal filing is not required to perfect a security interest in patents . . . .").

On June 2, 1998, Heller Financial perfected its security interest in the assets of Stik/Strip by filing a Financing Statement in Oklahoma's UCC Article 9 record database.  Like the Foreclosure Agreement, the Financing Statement covers all existing and after-acquired assets including "all patents and patent applications now owned or **hereafter created or acquired by debtor**."  See UCC Financing Statement filed by Heller Financial on June 2, 2000, attached hereto as Exhibit "D" (emphasis added).  Heller also filed notice of its security interest with the USPTO, though this is not required.  See USPTO Filing, attached as Exhibit "E."

Accordingly, Heller Financial perfected its security interest over two years ***prior*** to Vanguard's Consent Judgment against Stik/Strip.  See Consent Judgment, Exhibit "C."  Thus, as of June 2, 1998, Heller Financial had a senior and perfected security interest in the patent application that would ripen into the '584 Patent, and at this time Vanguard had no interest in the '584 Patent whatsoever.

> **1.    The '584 Patent Was Not Issued Until July of 1999.  The '584 Patent Was Covered by The Security Agreement and Financing Statement as After-Acquired Collateral.**

As Vanguard correctly notes, both Heller Financial's June 2, 1998 Financing Statement and USPTO filing omit the '584 Patent from the schedule of specifically listed patents. Vanguard argues that this is evidence that Heller did not acquire a security interest in the '584 Patent because, according to Vanguard, omission of the '584 Patent proves that Heller had a "patent specific" security interest.  Vanguard's argument that Heller had a "patent-specific" Security Agreement and filed a "patent-specific" Financing Statement is incorrect.

The '584 Patent did not issue from the USPTO until July 13, 1999. See Printout of USPTO Database showing the '584 Patent was issued on July 13, 1999, attached as Exhibit "F." Thus, at the time Heller Financial filed its June 2, 1998 Financing Statement and made its USPTO filing, the '584 Patent had not issued and, therefore, could not be specifically scheduled. Accordingly, omission of the '584 Patent from these schedules evidences nothing more than the fact that the '584 Patent had not been issued at the time of filing.

Moreover, the unambiguous language of the Security Agreement and June 2, 1998 Financing Statement expressly includes all after-acquired property, specifically including "all patents . . . hereafter created or acquired." Thus, the Security Agreement and Financing Statement cover the '584 Patent as a subsequently acquired patent. Vanguard's argument that, because the '584 Patent was not specifically scheduled Heller Financial's Security Agreement and June 2, 1998 Financing Statement do not include the '584 Patent, is fatally flawed because: (i) the '584 Patent could not be specifically scheduled on the Security Agreement or Financing Statement before July 13, 1999 when the '584 Patent was issued; and (ii) the language of the Security Agreement and the June 2, 1998 Financing Statement expressly cover all after acquired property, including specifically after-acquired patents and thereby the '584 Patent.

      **C.    On October 1, 1999, DocuSystems/Stik/Strip Improperly Terminated Mr. Goade and Ousted Him From the Board of Directors. Mr. Goade Never Again Worked For Or Was A Member of the Board of DocuSystems or Stik/Strip and Had No Part In the Decision by Heller Financial to Foreclose and Sell the Assets of Stik/Strip.**

Vanguard has consistently implied throughout these proceedings that Mr. Goade was somehow involved in the decision by Heller Financial to foreclose on the assets of Stik/Strip and sell them to REG. However, Mr. Goade was not involved in these decisions.

On October 1, 1999, DocuSystems terminated Mr. Goade and ousted him from the board of directors, all in violation of his Employment Agreement. See Affidavit of Mr. Goade, Exhibit "A," at ¶ 5. In October of 1999, Mr. Goade brought suit against DocuSystems for breach of employment contract. See id. at ¶ 6. Accordingly, at the time Vanguard claims Mr. Goade was somehow involved in the foreclosure and sale decisions of Heller Financial and Stik/Strip, Mr.

6

Goade was **not** employed by or on the board of directors of DocuSystems or Stik/Strip. Rather, Mr. Goade was involved in a lawsuit against DocuSystems and Stik/Strip for breach of employment contract. Accordingly, Mr. Goade was in no position to be involved in the decisions of Heller Financial and Stik/Strip to foreclose and sell Stik/Strip's assets.

> **D.    On July 10, 2000, this Court Entered a Consent Judgment for $2 Million Against Stik/Strip and in Favor of Vanguard. At the Time This Judgment Was Entered, Heller Financial Had an Approximately $42,000,000 Senior Perfected Security Interest in All Assets of Stik/Strip, Including the '584 Patent.**

Vanguard has inferred in these proceedings that Mr. Goade was somehow involved in a decision by Stik/Strip to allow the $2 million consent judgment to be entered in favor of Vanguard. As set forth above, however, Mr. Goade had been terminated by DocuSystems and was not employed by DocuSystems or Stik/Strip at the time Stik/Strip consented to the entry of a $2 million Judgment in favor of Vanguard. See Goade Affidavit, Exhibit "A," at ¶ 5. Rather, Mr. Goade was involved in a lawsuit against DocuSystems and Stik/Strip for breach of employment agreement. See id. at ¶ 6. Thus, Mr. Goade was not and could not be involved in any such decision.

It is further important to note that at the time Stik/Strip allowed the $2 million Consent Judgment to be entered in favor of Vanguard, Heller Financial's approximately $42 million senior perfected security interest in Stik/Strip's assets was filed of public record. See Exhibit "D." Thus, Vanguard knew or should have known of Heller Financial's senior perfected security interest, and Vanguard knew or should have known its Consent Judgment was subordinate to Heller Financial's perfected security interest. The fact that Vanguard knew its interest was subordinate explains why Vanguard took no immediate action to collect its Consent Judgment but rather waited over two years before filing the Consent Judgment of record and attempting to enforce the judgment against REG. See Vanguard's Judgment Lien Filed in the USPTO on or about April 19, 2001, attached as Exhibit "L." Vanguard only took these actions after it became aware that through a clerical error the '584 Patent had been omitted from a schedule to the Foreclosure Agreement. Vanguard seeks to parlay this clerical error into a position of senior

7

secured creditor – a position Vanguard certainly knew it did not have at the time the Consent Judgment was entered and a position Vanguard cannot retroactively create now, years after the fact.

> **E. On July 14, 2000, Heller Financial Foreclosed the Assets of Stik/Strip Pursuant to its Approximately $42 Million Senior Perfected Security Interest. Heller Financial and Stik/Strip Sold Stik/Strip's Assets to REG in a Foreclosure Agreement, Including the '584 Patent. The Fact that the '584 Patent was Included in the Foreclosure Agreement is Evidenced by: (i) the Language of the Foreclosure Agreement which Reflects that All Patents Owned by Stik/Strip Were Sold to REG; (ii) the Parties to the Foreclosure Agreement Agree that the Foreclosure Agreement Included the '584 Patent; and (iii) the Court in the Oklahoma Lawsuit has Entered Judgment in Favor of REG, which Expressly Provides that REG Purchased the '584 Patent in the Foreclosure Sale.**

In July of 2000, Heller Financial contacted Mr. Goade out of the blue and informed him that Heller Financial was going to shut down the business Mr. Goade had operated for thirty (30) years, Stik/Strip, thereby putting many people out of work, unless Mr. Goade agreed to purchase the assets of Stik/Strip and close the sale in approximately 3 days. Mr. Goade and Heller Financial agreed to a sale price of $2 million, and in a Foreclosure Agreement dated July 14, 2000, Heller Financial and Stik/Strip sold the assets of Stik/Strip to REG for $2 million. See, generally, Goade Affidavit, Exhibit "A," ¶ 7-8.

Vanguard has implied in this proceeding that the Foreclosure Agreement was improper because of its Consent Judgment. However, it is important to note that: (i) Heller Financial's security interest arose *prior* to Vanguard's Judgment so that Heller Financial's interest was senior to the interest created in Vanguard by the Consent Judgment; and (ii) the Foreclosure Agreement was executed after the Consent Judgment but before it was recorded and attached to Stik/Strip's assets so that Vanguard did not have any interest asserted against Stik/Strip's assets at the time of the Foreclosure Agreement – thus, the assets passed unencumbered. There was nothing improper about the Foreclosure Agreement, and the fact that Vanguard knew there was nothing improper (and that its Consent Judgment was subordinate) is evidenced by the fact that: (i) Vanguard did not (and has never) file a lien against Stik/Strip's assets in Oklahoma's Article

9 UCC Record Database; (ii) Vanguard did not file notice of its Consent Judgment in the USPTO (the filing of which does not perfect an interest in any event, <u>see</u> discussion, *supra*) until April 19, 2002, almost two years after Vanguard received its Consent Judgment.  <u>See</u> Exhibit "L."

### 1. The Language of the Foreclosure Agreement Reflects that All Patents Owned by Stik/Strip Were Sold to REG, Which Includes the '584 Patent.

In late 2001 or early 2002, REG discovered a clerical error in the Foreclosure Agreement. The '584 Patent was mistakenly omitted from the Foreclosure Agreement's "Schedule of Patents." Regardless, it is apparent from the plain language of the Foreclosure Agreement that it included the sale and transfer of ***all*** patents, which included (but was ***not*** limited to) the patents set forth on the "Schedule of Patents."  A copy of the Foreclosure Agreement is attached as Exhibit "G."

The Foreclosure Agreement includes the sale to REG of all of Stik/Strip's intellectual property, including all of Stik/Strip's patents. The Foreclosure Agreement provides in paragraph 2 as follows:

> <u>Purchase and Sale</u>.  Subject to the terms and conditions set forth in this Agreement . . . [Heller Financial] and [Stik/Strip] shall sell, assign, transfer and deliver to [REG], and [REG] shall purchase, acquire and take assignment and delivery of, all of [Stik/Strip's] right, title and interest in and to the Encumbered Assets more particularly described on Schedule 2-1 attached hereto (all of which assets are hereinafter referred to collectively as the "***Subject Assets***") . . . .

See Foreclosure Agreement, Exhibit "G," at p. 2, ¶ 2 (emphasis in original).  Schedule 2-1 to the Foreclosure Agreement provides:

> The ***Subject Assets*** shall consist of the following assets . . . except to the extent that any of the foregoing assets are also enumerated on Schedule 2.1 as being excluded assets:
>
> (e) ***all intellectual property rights***, including, ***without limitation***, ***patents*** and applications therefore, know how, unpatented inventions, trade secrets, secret formulas, business and marketing plans, copyrights and applications therefore, trademarks and applications therefore, service marks and applications therefore,

> trade names and applications therefore . . . and all good will associated with such intellectual property rights . . . .

(emphasis added). Schedule 2.1 of the Foreclosure Agreement – which sets forth the **only** assets excluded from the Foreclosure Agreement – does not list any patents or other intellectual property as an "Excluded Asset."

In addition, the "General Assignment and Bill of Sale," which is Exhibit "A" to the Foreclosure Agreement, provides that:

> Heller Financial, Inc. . . and Stik/Strip Laminating Company, Inc. . . . does hereby, sell, convey, assign, transfer, and deliver to REG Oklahoma Acquisitions, LLC . . . all the right title and interest of the [Stik/Strip] and [Heller] in and to all of the personal property and assets of [Stik/Strip] . . . listed on Schedule I hereto.

Schedule I of the General Assignment and Bill of Sale provides that the personal property and assets of Stik/Strip conveyed include the following assets unless specifically listed as an Excluded Asset in Schedule 2.1 of the Foreclosure Agreement:

> (e) ***all intellectual property rights***, including, ***without limitation***, ***patents*** and applications therefore, know how, unpatented inventions, trade secrets, secret formulas, business and marketing plans, copyrights and applications therefore, trademarks and applications therefore, service marks and applications therefore, trade names and applications therefore . . . and all good will associated with such intellectual property rights . . . .

(emphasis added).

Accordingly, the Foreclosure Agreement unambiguously provides for transfer of "***all*** intellectual property rights . . . ***without limitation***." This language unquestionably includes all patents. Vanguard asks the Court to disregard this language ("without limitation") and limit the Foreclosure Agreement to the transfer of "all intellectual property, `limited to the intellectual property specifically listed on the schedules to this Foreclosure Agreement`." (emphasis shows language proposed by Vanguard). The Foreclosure Agreement clearly does not contain any such limitation. Rather, the Foreclosure Agreement expressly covers "all intellectual

property rights . . . without limitation," including all patents.[3]

### 2. The Parties to the Foreclosure Agreement Agree that the Foreclosure Sale Included the Sale of the '584 Patent.

Representatives of Heller Financial and Stik/Strip have executed affidavits averring that the '584 Patent was one of the assets intended to be and in fact sold in the July 14, 2000 Foreclosure Agreement.  See Affidavit of Faye B. Feinstein, Counsel for DocuSystems in the Foreclosure Agreement transaction, attached as Exhibit "H;" Affidavit of Hugh Wilder, Senior Vice President of Heller Financial, attached as Exhibit "I."[4]  Ms. Feinstein testifies in her affidavit that:

> Pursuant to the Foreclosure Agreement and consistent with my understanding, ***REG purchased***, among other things, ***all of the intellectual property of Stik/Strip, including all of its patents***. Paragraph 2 of the Foreclosure Agreement specifically stated that Heller Financial, Inc. . . . and Stik/Strip shall sell, assign, transfer and deliver to REG all of its rights, title and interest in and to the Encumbered Assets, which were described on Schedule 2-1. Patents were specifically listed as one of the Encumbered Assets.
>
> Evidently, one of the patents was not listed on the schedule of patents assigned. Another was incorrectly identified. ***This fact does not alter the underlying agreement to sell and assign all of Stik/Strip's patents***. Indeed, paragraph 20.7 of the Foreclosure Agreement contemplated that there might well be additional documentation required to complete the transaction. An amended assignment of patents would be such a document.

---

[3] In an attempt to overcome this clear and unambiguous language, Vanguard resorts for the first time in its post hearing brief to repeated, baseless personal attacks against Defendants' attorneys, which have no bearing on the legal issues before the Court. Baseless personal attacks against parties and their attorneys, in an attempt to gain some type of perceived advantage or to satisfy the need to convince clients they are receiving zealous advocacy, is unfortunately becoming more and more common.  In an attempt to avoid being drawn into this type of exchange, Defendants respond only that Vanguard's decision to use its post hearing brief to make these attacks, rather than argue the issue pending before this Court, speaks volumes as to the lack of merit of Vanguard's legal and factual arguments.  This is particularly true with respect to Vanguard's tortured interpretation of the Foreclosure Agreement that "all intellectual property . . . without limitation" really means something less than all intellectual property.

[4] Submitted in the Oklahoma Action.

11

(emphasis added). Similarly, Mr. Wilder, a Senior Vice President for Heller Financial who acted on behalf of Heller Financial in the Foreclosure Sale of Stik/Strip's assets, testifies in his affidavit that:

> At the time of the Foreclosure Agreement, Stik/Strip was in default on its repayment obligation to Heller causing a default and acceleration of payments pursuant to its agreement with Heller.
>
> ***The sale of assets pursuant to the Foreclosure Agreement included all of Stik/Strip's intellectual property, including its patents***. Indeed, the Bill of Sale made this point crystal clear when in Schedule 1 it listed among the assets sold "(e) all intellectual property rights, including, without limitation, patents and applications therefore, no-how [sic], unpatented inventions, trade secrets . . . .
>
> After the foreclosure sale, Stik/Strip was unable to satisfy its obligation to Heller. Approximately $40,000,000 of senior secured debt remained outstanding and that debt remains outstanding today. Notwithstanding the substantial sums still owed to Heller by Stik/Strip, ***Heller asserts no right, title, or interest in U.S. Patent No. 5,921,584 because that patent was sold to REG Oklahoma Acquisitions, L.L.C. as part of the Foreclosure Agreement on July 14, 2000***.

(emphasis added). Accordingly, it cannot be disputed that it was the intent of the parties to the Foreclosure Agreement to transfer the '584 Patent to REG, and the plain language of the Foreclosure Agreement effectuated that intent.

       **3.**     **The Court In the Oklahoma Lawsuit Entered Judgment in Favor of REG and Against Stik/Strip, and the Judgment Expressly Provides that REG Purchased the '584 Patent from Heller Financial and Stik/Strip in the Foreclosure Agreement.**

In early 2002, REG requested that Heller Financial and Stik/Strip execute corrective paperwork to reflect the sale of the '584 Patent. At this time, Vanguard learned that the '584 Patent had been mistakenly omitted from the Schedule of Patents, and upon information and belief, threatened the Officers and Directors of Stik/Strip with personal liability if they executed corrective paperwork. REG was left with no alternative but to bring suit against Stik/Strip to provide Stik/Strip the necessary cover to avoid a lawsuit from Vanguard.

On April 10, 2002, REG filed suit against Stik/Strip in the District Court of Oklahoma County State of Oklahoma to compel execution of the corrective paperwork. A copy of REG's Complaint/Petition is attached as Exhibit "J." The court in the Oklahoma Lawsuit ultimately entered Judgment in favor of REG, and the Court's Judgment expressly provides that "REG purchased U.S. Patent No. 5,921,584 from Stik/Strip in a Foreclosure Agreement dated July 14, 2002." While this is admittedly a Default Judgment, the Oklahoma court entered the Judgment *__after__* Vanguard filed its motion to intervene (in which Vanguard argued that REG did not purchase the '584 Patent in the Foreclosure Agreement), and Vanguard's counsel was present and objected at the hearing where the Oklahoma court so ruled. A copy of REG's Judgment is attached as Exhibit "K."

Vanguard has repeatedly attempted to "characterize" REG's pleading in the Oklahoma Action as an admission that the '584 Patent was not included in the Foreclosure Agreement. Vanguard's argument takes REG's pleading totally out of context and ignores the Judgment of the Oklahoma Court based upon that pleading. In context, REG's Oklahoma pleading was clearly filed to enforce the further assurance clause of the Foreclosure Agreement and to compel Stik/Strip to correct paperwork, not to compel Stik/Strip to effectuate a transfer that was never intended, required or made under the Foreclosure Agreement. This is evidenced by the court's Judgment entered in favor of REG, which expressly provides that "REG purchased U.S. Patent No. 5,921,584 from Stik/Strip in a Foreclosure Agreement dated July 14, 2002." Vanguard's argument that REG's pleading is an admission is simply incorrect.

**F.    Vanguard Subsequently Records Its Judgment in the USPTO, Simultaneously Files the Present Application to Have This Court Seize and Sell the '584 Patent, and Institutes a Third Proceeding in which Vanguard Claims Ownership of All the Assets Sold in the Foreclosure Sale (Including the '584 Patent) because the Sale was Purportedly a Fraudulent Conveyance. Vanguard Does Not Name Heller Financial as a Party to Any of These Proceedings.**

On April 19, 2002, Vanguard attempted for the first time to record a lien on the '584 Patent by filing notice of its Consent Judgment against Stik/Strip in the USPTO. As Vanguard notes in its post hearing brief, the timing of filing is everything in lien priority disputes.

13

Vanguard's filing of a lien two years after the Foreclosure Agreement could not and did not encumber the '584 Patent (or any other Stik/Strip assets) so as to make the July 14, 2000 Foreclosure Sale improper. Even if Vanguard had timely filed its Consent Judgment the day it was entered, Heller Financial had a senior perfected security interest so that Heller Financial could have foreclosed and sold Stik/Strip's assets in any event, including the '584 Patent.

Despite these facts, on May 16, 2002, Vanguard filed a lawsuit against Defendants alleging that the Foreclosure Agreement constitutes a fraudulent sale. On May 23, 2002, Vanguard filed the pending Motion for Public Judicial Sale of the '584 Patent. And, even though Heller Financial is holding $2 million in proceeds from the sale of Stik/Strip's assets which, under Vanguard's claims Vanguard would be entitled to recover, Vanguard has mysteriously chosen not to name Heller Financial in any of its varied proceedings. Defendants submit that Vanguard's failure to name Heller Financial speaks to the underlying motivation of Vanguard's claims, which appears to be to settle some type of personal vendetta against Mr. Goade.

### G. Vanguard's Argument that its Lien has Priority Because Heller Financial Terminated its Security Interest After Heller Financial Sold the '584 Patent to REG is Not Supportable.

Vanguard argues for the first time in its post hearing brief that Heller Financial is not a necessary party, and that Vanguard's lien filed in the USPTO has priority over Heller Financial's security interest, because Heller Financial released its security interest in the '584 Patent. Vanguard even goes so far as to insinuate that this release – which has been filed of public record in Oklahoma since March 3, 2001 – was somehow concealed from Vanguard. Vanguard's argument is factually unsupported and should be rejected.

Heller Financial released its security interest *after* the sale of the '584 Patent to REG. As set forth in the Affidavit of Hugh Wilder of Heller Financial, "Heller asserts no right, title or interest in U.S. Patent No. 5,921,584 because that Patent was sold to REG Oklahoma Acquisition as a part of the Foreclosure Agreement on July 14, 2000." Accordingly, Heller Financial released its security interest in the '584 Patent, but the release was not some metaphysical act that "creates" rights in Vanguard or otherwise invalidates the Foreclosure Agreement.

14

### H.   CONCLUSION – OWNERSHIP OF THE '584 PATENT

While Vanguard claims that the '584 Patent was not included in the Foreclosure Sale and that Heller Financial did not have a perfected senior security interest in the '584 Patent, the facts set forth above demonstrate to the contrary.  At the very least, if these issues are not conclusively established in favor of REG by the facts set forth above, or if not conclusively determined in REG's favor by the Oklahoma Court's Judgment that expressly provides "REG purchased U.S. Patent No. 5,921,584 from Stik/Strip in a Foreclosure Agreement dated July 14, 2002," then there is a disputed issue of material fact concerning the scope of the Foreclosure Agreement and Vanguard's lien priority, which should be resolved at trial and not in a summary judicial sale proceeding, prior to any discovery and without the testimony of any witnesses.  Accordingly, Vanguard's Application for Judicial Sale should be denied.

### II.   **DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN PENNSYLVANIA**

Vanguard argued for the first time at the hearing that personal jurisdiction is proper over Mr. Goade individually, the Goade Trust, and REG under a theory of successor liability personal jurisdiction set forth in Simmers v. American Cyanamid Corp., 576 A.2d 376 (Pa. Super. Ct. 1990).  Under this doctrine, the ***acts of a predecessor*** corporation may be attributed to a successor for purposes of establishing personal jurisdiction, but only if the successor corporation assumes the liability of its predecessor in interest related to these acts.  See id.  This doctrine is inapplicable on the facts of this dispute.

First, Mr. Goade individually and the Goade Trust were not parties to the Foreclosure Agreement, did not acquire any of the assets of Stik/Strip, and under no circumstances could be considered "successors" by a defacto merger with Stik/Strip.  Accordingly, the doctrine of successor liability to support personal jurisdiction is not applicable to Mr. Goade individually or the Goade Trust.

Second, assuming for the sake of argument that REG is a successor to Stik/Strip by a "defacto" merger, REG did not assume any liabilities sufficient to subject REG to personal

jurisdiction in Pennsylvania. As set forth in <u>Simmers v. American Cyanamid Corp.</u>, 576 A.2d 376 (Pa. Super. Ct. 1990):

> Under Pennsylvania law the general rule of successor liability remains that when a company sells its assets to a successor, the successor does not acquire the liabilities of the transferor merely because of its succession to the transferor's assets. Accordingly, *<u>if a successor does not assume either voluntarily or by operation of law the liabilities of its predecessor, then the acts of its predecessor may not be attributed to the successor when answering the question of jurisdiction</u>*.

Here, REG purchased the assets of Stik/Strip in a Foreclosure Agreement. The Foreclosure Agreement in which REG purchased Stik/Strip's assets unambiguously provides that REG acquired only two specific liabilities of Stik/Strip, which have nothing to do with Vanguard's allegations against Mr. Goade, the Goade Trust, and REG. Section 2.3 of the Foreclosure Agreement specifically provides:

> [REG] shall not assume or be deemed to assume any liabilities or accrued liabilities of [Stik/Strip] except that [REG] shall assume those liabilities specifically set forth on Schedule 2.3 hereto.

Schedule 2.3 lists only two liabilities: (i) a lease; and (ii) liability under several minor contracts for office supplies such as mailing machines, copiers, and printers. Schedule 2.3 does not list liability for any tortious conduct committed by Stik/Strip or arising out of its lawsuit with Vanguard. Absent such a provision, REG has no successor liability for any such acts and, therefore, any such act (if sufficient to establish personal jurisdiction over Stik/Strip) cannot be imputed to REG.

Beyond this, the doctrine of successor liability personal jurisdiction is not applicable because Vanguard has not alleged any ***conduct*** ***of*** ***Stik***/***Strip*** to be imputed to REG. In all cases cited by Vanguard, the predecessor company engaged in some <u>conduct</u> that the plaintiff is seeking to hold the successor liable for, such as a defective product manufactured by the predecessor that causes injury after a defacto merger into the successor.

16

In this case, Vanguard's lawsuit against Mr. Goade and the other Defendants is not based on any allegations of tortious or unlawful acts by Stik/Strip. In fact, Vanguard's Complaint is

totally devoid of any allegation concerning acts by Stik/Strip. Rather, Vanguard's Complaint repeatedly alleges that the basis for its lawsuit is that Mr. Goade, "acting for himself, the Goade Trust, and John and Jane Does 1-6 . . . intentionally mislead Vanguard." See Vanguard's Complaint, attached as Exhibit "M." Thus, there is no "conduct" of Stik/Strip to attribute to Mr. Goade, the Goade Trust or REG.

For these reasons, Vanguard's argument that the Court should impute some act of Stik/Strip to Defendants for the purpose of establishing personal jurisdiction should be rejected. As set forth in Defendants' Motion to Dismiss, Mr. Goade, the Goade Trust, and REG do not have sufficient contacts with the State of Pennsylvania for the exercise of personal jurisdiction.

In reaching its determination of the issue of personal jurisdictional, it is important for the Court to note that the named Defendants are separate and distinct entities/individuals. Vanguard claims that all of the Defendants are necessary parties to this litigation. Accordingly, if jurisdiction is improper as to even one of the Defendants, the entire matter should be dismissed and Vanguard should assert its claims against Defendants in the Oklahoma Lawsuit – where jurisdiction is proper as to all Defendants and in the first court to exercise jurisdiction over the '584 Patent.

Respectfully submitted,

James C. McMillin
Michael D. McClintock
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma  73102-7103
T:  (405) 235-9621
F:  (405) 235-0439

OF COUNSEL:
A. Richard Feldman
Greg A. Rowe
Bazelon Less and Feldman, P.C.
1515 Market Street, Suite 700
Philadelphia, PA  19102
T:  (215) 568-1155
F:  (215) 568-9319

2

Post Hearing Brief