LAW OFFICES
# MCAFEE & TAFT
A PROFESSIONAL CORPORATION
10TH FLOOR, TWO LEADERSHIP SQUARE
211 NORTH ROBINSON
OKLAHOMA CITY, OKLAHOMA 73102-7103
TELEPHONE: (405) 235-9621
FACSIMILE: (405) 235-0439
http://www.mcafeetaft.com

MICHAEL D. MCCLINTOCK

WRITER DIRECT
TELEPHONE: (405) 552-2213
FACSIMILE: (405) 228-7413
michael.mcclintock@mcafeetaft.com

March 13, 2003

**VIA FACSIMILE (215) 735-2455**

David J. Perlman, Esq.
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA  19102

Re:  Vanguard v. REG, et al.; ;Civ. No. CIV-02-2943, U.S District Court for the E.D. Pennsylvania

Dear David:

    I am writing in response to your letter of February 19, 2003 and in an attempt to reach a compromise of the present discovery dispute. As I set forth in my e-mail of March 7, 2003, I do not agree with the way you have described many of the discovery issues we discussed on the phone. As we stated at the conclusion of our phone conversation, there was no agreement but rather a rough framework from which to attempt to reach an agreement. Despite my disagreement with much of your letter, based on my notes from our phone conversation and a review of your letter I believe we can reach a compromise on many of the issues as set forth below.

    1.    Vanguard is a competitor of REG Oklahoma Acquisitions, L.L.C. ("REG"). REG objects to the production of confidential, proprietary information and trade secrets to a competitor, and REG as set forth this objection in its discovery responses. It is my understanding that you will agree to the entry of an agreed protective order, and a proposed agreed protective order is attached. As we discussed, the production set forth in REG's response to Vanguard's discovery requests, as well as the production described below, is contingent upon an agreed protective order being entered by the Court.

    2.    With respect to requests that you have not identified in your February 19, 2003, letter, it is my understanding that there is no dispute concerning these requests. If this is incorrect, please let me know so we can attempt to resolve any outstanding issues.

    3.    With respect to Request No. 8, which demands production of all documents that identify current or past shareholders, officers, or directors, REG believes its objections are proper and meritorious. However, it is my understanding that this request is directed at your desire to have REG identify the officers and directors before the asset purchase and immediately after the

1293700_1

- 2 -

purchase. REG will agree to identify these officers and directors. There are no organization charts evidencing this information.

4.  With respect to Request No. 9, which demands the production of all minutes of director's and shareholder's meetings of REG, REG believes their objections are proper and meritorious. First, no such documents exist because REG is a limited liability company and therefore does not have any shareholders or directors nor are there minutes of meetings of shareholders or directors. If the request pertained to meetings that did exist, it is overbroad and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence because it lacks any time restriction or limitation concerning relevant issues.

5.  With respect to Request No. 10, which demands production of all documents that refer or relate to capitalization, financing, and financial structure of REG, it is my understanding that you have agreed to restrict your request to the time of the asset purchase at issue in the lawsuit. Accordingly, REG will agree to produce its formation documents and documents that refer or relate to any security interest or mortgage granted in the assets of REG from July 14, 2000 through December 31, 2000.

6.  With respect to Request Nos. 12 through 16, SSI Technologies is a trade name for REG Oklahoma Acquisitions, L.L.C., so that there are no documents responsive to these requests.

7.  With respect to Request No. 19, which demands production of any and all annual and monthly financial statements, notes to financial statements, balance sheets, income statements, statements of cash flows, and statements of equity, from the date of REG's incorporation to the present, it is my understanding you will agree to restrict this request to documents in REG's possession applicable from July 14, 2000 to December 31, 2000. Accordingly, REG will agree to produce income statements and balance sheets for this period.

8.  With respect to Request Nos. 21 through 28, in which Vanguard (a competitor) demands production of such documents as those identifying REG's past and present customers and identifying REG's products, you explained that these discovery requests were aimed at Vanguard's claim for successor liability based on a theory that REG is a mere continuation of the selling company. However, the documents that you have requested are not relevant to such a claim.

"The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liability of the transferor." Pulis v. United States Electrical Tool Co., 561 P.2d 68, 69 (Okla. 1977). While it is true that an exception to this general rule exists where "the purchasing corporation was a mere continuation of the selling company," it is well established that "the test is not the continuation of the business operation but the continuation of the corporate entity." Id. at 71. The relevant factors for determining whether there is a continuation of the corporate entity include the

- 3 -

continuation of the selling entity after the sale and a common identity of stock, directors, officers or stockholders. See id.

It is apparent that Request Nos. 21 through 28 are an attempt to gain information concerning continuation of the business entity not continuation of the corporate entity. As such, the documents requested are not likely to lead to the discovery of relevant or admissible evidence, and REG stands by the objections set forth in its discovery responses. Beyond this, REG does not dispute that there was an earnest attempt to continue the card business after REG purchased the assets of Stik/Strip in a Foreclosure Agreement after Heller Financial (Stik/Strip's senior secured and perfected lender) foreclosed on Stik/Strip's assets and sold them to REG. To resolve this matter REG will concede that almost all of its initial sales were to former customers of Stik/Strip.

9. With respect to Request No. 33, which demands production of any and all documents that refer or relate to the website www.ssicards.com, it is my understanding that you are seeking documents that relate to the content of the website. After conferring with my client, the only document that exists concerning the content of the website is a draft of a proposed section of the website entitled: "History of SSI Technologies," which we will agree to produce. There are no copies of earlier versions of the website.

10. With respect to Request No. 34, which demands production of any and all documents that refer or relate to any purchase, sale, or transfer of the Edmond Property, and Request No. 35, which demands production of any and all documents that refer or relate to mortgages that were granted on the Edmond Property from 1969 through the present, it is my understanding that you will agree to restrict your request to the relevant time of the July 2000 Foreclosure Agreement and 1998 Stock Purchase Agreement. It is my understanding that you are in possession of the documents concerning the sale/transfer of the Edmond Property on July 14, 2000 (the date of the Foreclosure Agreement). If you do not have these documents REG will agree to produce them. Concerning the 1998 sale of SSI to DocuSystems, Inc., there are no documents responsive to your request as DocuSystems purchased the business of SSI outright in a stock purchase agreement so that no transfer of ownership of the property took place, and it is my understanding that you have copies of the 1998 Stock Purchase Agreement documents as a result of our prior production. Beyond all this, REG will agree to produce documents concerning the mortgage taken on the Edmond property that arose out of the July 14, 2000 Foreclosure Sale.

11. With respect to Request No. 36, which demands production of any and all valuations of the Edmond Property, REG does not possess any appraisal or other specific valuation for the Edmond Property.

12. With respect to Request Nos. 37 through 39, which demand the same information as Nos. 34 through 36 only for the Oklahoma City Property rather than the Edmond Property, REG will agree to produce the same documents for the Oklahoma City Property as for the Edmond Property, as set forth in paragraphs 10 and 11 above.

- 4 -

13. With respect to Requests Nos. 40 through 43, 48, 49 and 51, which demand production of confidential financial information from individuals that were not parties to the July 14, 2000 Foreclosure Agreement, including Ron Goade individually, the Goade Trust and its beneficiaries, REG stands by its objections. Contrary to the assertions in your letter, this financial information does not relate to the 1998 sale of SSI to DocuSystems and is not relevant to any claim asserted by Vanguard. As for the issue of whether the July 2000 asset purchase involved some type of set aside for Vanguard's claim, the documents that are in your possession concerning this transactions speak for themselves.

14. With respect to Request No. 50, which demands production of all federal tax returns for Stik/Strip Laminating Company, Inc., DocuSystems, Inc., and DocuSystems Holding Company, Inc. from 1997 through the present, REG has no such documents.

15. With respect to Request No. 53, which demands production of any and all documents that refer or relate to U.S. Patent No. 5,921,584, the Oklahoma court's grant of summary judgment in favor of REG concerning Vanguard's claim of an ownership interest in the '584 Patent has mooted this request.

16. With respect to Request No. 55, which demands production of any and all documents that refer or relate to litigation between Ron E. Goade, Sr. and Stik/Strip Laminating Company, Inc. or DocuSystems, Inc., REG will agree to produce copies of the pleadings and any non-privileged correspondence in the litigation between Ron E. Goade, Sr. and Stik/Strip Laminating Co., Inc. and DocuSystems.

17. With respect to Request No. 56, which demands production of any and all correspondence or transmissions between Ron E. Goade (or his attorneys) and Stik/Strip Laminating Company, Inc. or DocuSystems, Inc. (or their attorneys), REG will agree to produce any such non-privileged documents.

18. With respect to Request Nos. 60 through 65, which demand the production of confidential financial information from individuals or entities that were not parties to the July 14, 2000 Foreclosure Agreement, including all documents that relate to the Ron E. Goade Revocable Trust and that identify the beneficiaries of the trust, REG stands by its objections. My understanding of the rational behind these requests is to evidence that Mr. Goade benefited from the sale of his business to Stik/Strip to DocuSystems in 1998. This fact is not relevant to any claim asserted by Vanguard. To the extent that it will resolve this dispute, REG will agree that Mr. Goade benefited from the sale of his business to DocuSystems in 1998.

It would likely be helpful to discuss the issues set forth above in a phone conversation to ensure that neither of us is operating under some type of misunderstanding. Hopefully, this process has eliminated the vast majority of disputed issues. After we have agreed on the terms of a protective order, REG should be able to produce responsive documents within seven days of entry of the order by the Court.

- 5 -

Very truly yours,

Michael D. McClintock

MDM/mlz

1293700_1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANGUARD IDENTIFICATION SYSTEMS, INC., | : : : | |
| Plaintiff, | : : | CIVIL ACTION No. 02-2943 |
| v. | : : | |
| RON E. GOADE, SR., et al., | : : | |
| Defendants. | : | |

### STIPULATED PROTECTIVE ORDER

On this ____ day of _____, 2003, came on for hearing the parties' joint application for the entry of a protective order. Having reviewed the application, and having found, for good cause shown, that such an order is needed to prevent unwarranted disclosure of confidential or proprietary information, the Court orders the following:

1. This Order shall govern all documents and other materials produced, during the course of discovery or pre-trial procedures, by any party to this action.

2. If justice requires protective measures to protect commercially-sensitive or trade secret information, any party may designate such information exchanged in discovery as "confidential" or "confidential for attorneys' eyes only" (hereinafter collectively referred to as "Confidential") by marking the legend "CONFIDENTIAL" or "CONFIDENTIAL FOR ATTORNEYS' EYES ONLY" on documents produced pursuant to discovery or exhibits exchanged or on those portions of interrogatory answers deemed Confidential, or by stating on the record that portions of testimony at a deposition or hearing are to be treated as Confidential.

3. Attorneys for the parties, as officers of the Court, shall designate documents and other material as Confidential only when they have a good faith belief that the document and other material is entitled to the protection provided by Rule 26(c) of the Federal Rules of Civil Procedure. In addition, attorneys for the parties shall designate documents and other material as "CONFIDENTIAL FOR ATTORNEYS' EYES ONLY" only when they have a

1293925_1

good faith belief that the documents and other material contain sales information, sales or purchase invoices, customer and potential customer information, product information, pricing information, accounting information, marketing information, profit and loss statements, trade secrets and related documents and information and any material that would materially affect the business, financial, or commercial interests of the party producing the information.

    4.    All documents or information designated "CONFIDENTIAL FOR ATTORNEYS' EYES ONLY" are included within the meaning of "Confidential" information as used in this Protective Order and, except as otherwise provided herein, all provisions set forth in this Protective Order applicable to Confidential information also apply to documents or information designated "CONFIDENTIAL FOR ATTORNEYS' EYES ONLY," except that "CONFIDENTIAL FOR ATTORNEYS' EYES ONLY" documents and information shall not be shown, disclosed or communicated in any way to anyone other than persons to whom such documents have been previously made available, outside counsel of record, their associate attorneys, paralegals, and clerks and secretarial employees. With the exception of the aforementioned individuals, documents and information designated "CONFIDENTIAL FOR ATTORNEYS' EYES ONLY" shall not be shown, disclosed or communicated in any way to any other representative(s) of the parties in this case.

    5.    With respect to deposition testimony, counsel shall state, on the record, all testimony that he or she intends to designate as Confidential. Counsel may, alternatively, at the commencement of a deposition, temporarily designate the entire deposition as Confidential, but where such an initial designation is made, unless the designating party, within ten days after receipt of the transcript, marks as "CONFIDENTIAL" or "CONFIDENTIAL FOR ATTORNEYS' EYES ONLY," those portions of the transcript that he or she then deems Confidential, thus superseding his initial designation of the entire deposition as Confidential, then no portion of the deposition shall continue to be deemed Confidential.

6.  Such confidential information shall be used solely for the purpose of the prosecution or defense of this litigation, and shall not be disclosed in any manner to any person except as provided in this Order.

7.  Documents produced or testimony given under this protective order shall be retained in the office of outside counsel of record. Except as provided in paragraph 4 above with regard to information designated "CONFIDENTIAL FOR ATTORNEYS EYES ONLY," counsel for the parties shall be responsible for assuring that access to all information designated as CONFIDENTIAL shall be permitted only to (a) counsel of record and their employees assisting counsel in this litigation; (b) those officers and employees of the parties who are assisting in this litigation; (c) outside consultants or experts who are retained to assist the parties in the litigation; (d) the Court, in camera, and to its court reporters; (e) deposition court reporters and their staff; (f) the actual deposition witnesses and disclosed prospective trial witnesses, to the extent the Confidential information may reasonably be believed to relate to their testimony; and (g) others permitted by order of the Court. No person having access to any Confidential information shall disclose in any manner its contents to any person other than those described in this paragraph. No such disclosure shall be made for any purpose other than those specified in this order.

8.  Counsel for the respective parties shall be responsible for informing witnesses, as necessary, of the contents of this protective order. Disclosure to any person specified in paragraph 7, subsections 7(c), 7(f) or 7(g), shall be permitted only after each such person acknowledges, in writing, that he or she has read, understands and agrees to be bound by the terms of this Order. Any such person who has received Confidential Information prior to the entry of this Protective Order shall likewise agree to be bound by the terms of this Order. Counsel disclosing Confidential information to any such person shall be responsible for maintaining a file containing the signatures of all such persons to whom Confidential Information has been disclosed. The file shall be made available to opposing counsel before trial

3

and at the termination of this litigation, or earlier by agreement of the parties or by order of the Court for cause shown.

9. If any party wishes to challenge another party's designation of information as "CONFIDENTIAL" or "CONFIDENTIAL FOR ATTORNEYS' EYES ONLY," counsel shall set forth in writing to opposing counsel the documents or information believed to be improperly designated as "CONFIDENTIAL;" the identity of the person(s) to whom the party wishes to disclose the information; the use counsel wishes to make of such information; and, in a brief statement, the reasons disclosure/use is thought necessary. Upon receipt of such written notice, counsel shall within five (5) business days respond in writing, either consenting to the disclosure or stating the basis for objection to the disclosure. (Failure to respond in five (5) business days will be deemed a consent.) If the disclosure is consented to, the provisions of this Protective Order shall remain in effect, so that disclosure shall not go beyond the person(s) identified by this process. If disclosure is objected to, counsel shall endeavor in good faith to resolve the objections by agreement; if objections cannot be resolved by agreement, disclosures cannot take place without an order of this Court.

10. Within 90 days after the conclusion of this action, all Confidential information in the possession or under the control of counsel, the parties or their agents, consultants or experts shall be destroyed or returned to the party producing it. The provisions of this order as to confidentiality shall not terminate with the disposition of this action, but shall continue until further order of the Court.

11. This Protective Order shall not apply to any document or information which (a) is already public; or (b) has come or shall come into the receiving party's legitimate possession independent of the production by the producing party, regardless of whether such information is also contained in discovery materials designated as confidential in this case. Further, this Protective Order shall not restrict discussions concerning confidential materials with any person who has already obtained possession of the confidential materials through legitimate means.

12. No Confidential materials shall be filed in the public record of this action. All material so designated in accordance with the terms of this Protective Order that is filed with the Court, and any pleadings, motions, or other papers filed with the Court disclosing any such material, shall be filed in a sealed envelope and kept under seal by the Clerk of this Court until further order of the Court. Where possible, only confidential portions of filings with the Court shall be filed under seal. To facilitate compliance with this Order by the Clerk's office, material filed under these designations shall be contained in a sealed envelope bearing the appropriate designation on its front face. In addition, the envelope shall bear the caption of the case, shall contain a concise, non-disclosing inventory of its contents for docketing purposes, and shall state thereon that it is filed under the terms of this Order.

_____
UNITED STATES DISTRICT COURT
JUDGE

AGREED:

_____
David J. Perlman
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 10902

Attorneys for Plaintiff


_____
Joseph H. Bocock, OBA #0907
Michael D. McClintock, OBA #18105
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7103
Telephone:    (405) 235-9621
Facsimile:    (405) 235-0439