IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VANGUARD IDENTIFICATION SYSTEMS, INC.,** | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 02-2943 |
| **RONNIE E. GOADE, Sr., et al.** | |
| Defendants. | |
| **VANGUARD IDENTIFICATION SYSTEMS, INC.,** | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 97-6790 (JPF) |
| **STIK/STRIP LAMINATING COMPANY, INC.** (d/b/a SSI PHOTO I.D.) and **DOCUSYSTEMS, INC.,** | |
| Defendants. | |

**O R D E R**

   **AND NOW**, this _____ day of _____ 2003, in consideration of Plaintiff's Motion To Compel The Production Of Documents And Deposition Testimony Claimed To Be Privileged But Subject To The Crime-Fraud Exception And To Compel A More Descriptive Privilege Log, and all papers in support thereof and in opposition thereto, it is hereby **ORDERED** that Defendants shall produce any and all documents responsive to any of Plaintiff's Document Requests otherwise withheld on the ground of any privilege that in any way refer or relate to any one of the following:

   *  a phone conversation occurring on or about May 19, 1998 between Joseph

        Titterington, Esquire ( Titterington ) and Gary Rosen, Esquire ( Rosen ) concerning Stik/Strip Laminating, Inc. ( SSI ) postponing a document production and/or the sale of Stik/Strip to Docusystems;

* the May 20, 1998 Letter from Rosen to Titterington and/or the contents of that letter;

* the May 22, 1998 Letter from Titterington to Rosen and/or the contents of that letter;

* the May 26, 1998 Letter from Rosen to Titterington and/or the contents of that letter;

* the May 26, 1998 Letter from Titteringon to Rosen and/or the contents of that letter;

* the representation that the assets of SSI would not be encumbered when SSI was sold to Docusystems, Inc.; and

* the Junior Subordinated Promissory Note and any and all drafts thereof.

It is further **ORDERED** the Defendants may not assert any privilege with respect to any deposition testimony or interrogatory or other mode of discovery in any way concerning the above identified subjects.

It is further **ORDERED** that within ten (10) days Defendants shall produce a privilege log that describes each document with greater specificity than  regarding the [legal] representation of  a defendant, in compliance with Fed. R. Civ. P. 26(b)(5).

 

                                                _____
                                                    John P. Fullam, Sr., J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANGUARD IDENTIFICATION SYSTEMS, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 02-2943 |
| v. | : | |
| RONNIE E. GOADE, Sr., et al. | : | |
| Defendants. | : | |
| VANGUARD IDENTIFICATION SYSTEMS, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 97-6790 (JPF) |
| v. | : | |
| STIK/STRIP LAMINATING COMPANY, INC. (d/b/a SSI PHOTO I.D.) and DOCUSYSTEMS, INC., | : | |
| Defendants. | : | |

**PLAINTIFF S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS
AND DEPOSITION TESTIMONY CLAIMED TO BE PRIVILEGED
BUT SUBJECT TO THE CRIME-FRAUD EXCEPTION AND TO COMPEL
<u>A MORE DESCRIPTIVE PRIVILEGE LOG</u>**

Plaintiff Vanguard Identification Systems, Inc., by and through undersigned counsel, respectfully moves that this Court compel Defendants to produce documents and allow deposition testimony to proceed that is claimed to be privileged but is subject to the crime-fraud exception and to compel a more descriptive privilege log for the reasons set forth in the

accompanying Memorandum.

                                    Respectfully submitted,

                                    **BOCHETTO & LENTZ, P.C.**

                                    By: _____
                                         George Bochetto, Esquire
                                         David J. Perlman, Esquire
                                         1524 Locust Street
                                         Philadelphia, PA 19102
                                         Ph: (215) 735-3900
                                         Fx: (215) 735-2455

Date: _____                           Attorneys for Plaintiff
                                               Vanguard Identification Systems, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VANGUARD IDENTIFICATION SYSTEMS, INC.,** : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | NO. 02-2943 |
| v. : | |
| : | |
| **RONNIE E. GOADE, Sr., et al.** : | |
| : | |
| Defendants. : | |
| **VANGUARD IDENTIFICATION SYSTEMS, INC.,** : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | NO. 97-6790 (JPF) |
| : | |
| **STIK/STRIP LAMINATING COMPANY, INC.** : | |
| (d/b/a SSI PHOTO I.D.) and **DOCUSYSTEMS, INC.,** : | |
| : | |
| Defendants. : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF S MOTION TO COMPEL THE
PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY CLAIMED TO BE
PRIVILEGED BUT SUBJECT TO THE CRIME-FRAUD EXCEPTION
AND TO COMPEL A MORE DESCRIPTIVE PRIVILEGE LOG**

**I. INTRODUCTION**

Plaintiff Vanguard Identification Systems, Inc. s ( Vanguard s ) fraud and conspiracy to defraud counts, among other counts, implicate the crime-fraud exception to the attorney-client and work-product privileges, and documents should therefore be produced and testimony provided irrespective of the privileges. Because Defendants will not agree to waive these privileges, even with respect to very limited facts, the instant Motion is necessary to obtain

certain documents and deposition testimony.[1]  Vanguard seeks a ruling on this issue in advance of depositions.[2]

Defendant Ron E. Goade, Sr. ( Goade ) and Stik/Strip Laminating Company, Inc. ( SSI ) fraudulently represented through their counsel, Joseph Titterington, Esquire ( Titterington ), in the underlying Patent Action (E.D. Pa. No. 97-6790), that the assets of Goade-controlled SSI would not be encumbered when it was sold to Docusystems, Inc. ( DSI ) on May 29, 1998.  Goade knew the assets would be encumbered.  As alleged in the Complaint, Vanguard relied on this fraudulent misrepresentation by deciding not to obtain an injunction establishing a trust from the sales proceeds.  As a result of the assets being encumbered, Vanguard was unable to collect on its $2 million judgment entered against SSI in the Patent Action on July 10, 2000.  Meanwhile, on July 14, 2000, Goade purchased the assets at a foreclosure sale through his new entity, REG Oklahoma Acquisition, LLC ( REG ).

Since Goade used his attorney to facilitate the fraudulent representation, the privileges do not apply and Goade cannot conceal and perpetuate the fraud by hiding behind them in the 02-2943 litigation.

Additionally, Additionally, Vanguard seeksAdditionally, Vanguard seeks more specific descriptions of the

---

[1]  Pursuant to Local Rule 26.1(f), Vanguard s counsel certifies that after reasonable effort, he was unable to resolve this dispute.

[2]  Vanguard has used the 97-6790 caption in addition to the 02-2943 caption to ensure that the Court s Order also applies to the 97-6790 Defendants, particularly Stik/Strip Laminating Company.  Plaintiff would like to foreclose the possibility that, if the Motion is granted, Goade and his affiliated Defendant in 02-2943 claim that the Order has no effect because the privilege belongs to the 97-6790 Defendants even though Goade was the principal actor in all respects regarding the conduct at issue.  The discovery is being sought in the 02-2943 action.  Thus far, it is the Defendants in that action who are asserting the privilege.

on Defendants privilege log other than a document regarding representation of SSI on REG.

## II.  STATEMENT OF FACTS

Vanguard filed the Patent Action naming SSI as a defendant on November 4, 1997. The case presented an overwhelmingly clear case of infringement, and Defendants therein and herein knew it. They also knew that they faced a very substantial liability at that time because of the infringement. Complaint ¶17.[3]

At the time, SSI was wholly owned by the Ron E. Goade Revocable Trust ( Goade Trust ) and fully controlled by Goade. Goade was Director, Chairman of the Board, President, and CEO of SSI. At all relevant times, Goade directed the Patent Action on behalf of SSI, and later, DSI. Goade s objective in the Patent Action was one of delay and obstruction. Complaint ¶18.

On or about April 30, 1998, SSI filed a motion for summary judgment in the Patent Action. The Court promptly denied SSI s Motion by Order of May 14, 1998 and directed SSI s counsel to  stop playing games.  Complaint ¶19.

Immediately thereafter, on May 19, 1998, SSI s attorney disclosed to Vanguard s attorney that SSI was about to be sold. SSI s attorney also represented that SSI would continue to operate after the sale. Complaint ¶20. This representation was made in the context of SSI seeking to postpone a document production. Complaint, Exhibit  B,  also attached hereto as Exhibit  A.

The following day, Vanguard s attorney wrote to SSI s attorney that he was proceeding in the Patent Action based on SSI s representation that SSI would be an ongoing entity and also

---

[3]  Complaint  refers to the original Complaint filed in 02-2943. Vanguard s Amended Complaint, when filed, will have the same averments as those cited herein but with different paragraph numbers.

notified SSI that SSI s representations were material. See May 20, 998 letter from Rosen to Titterington, attached hereto as Exhibit  A.   Complaint ¶21.

Three days prior to the closing, which SSI s attorney had disclosed would be on May 29, Vanguard s attorney wrote SSI s counsel stating that, in light of the sale, he would file a motion for an injunction barring distribution of the sales proceeds. He stated that SSI could avoid such an action if, by the next day, SSI identified the buyer, confirmed that SSI s assets would not be encumbered or depleted and that there would be no material adverse impact on the balance sheet as a result of the sale. See May 26, 1998 letter to Titterington, attached hereto as Exhibit  B. Complaint ¶22.

> SSI s attorney replied on the same day, writing, in part:
>> We have checked with our client and have been authorized to inform you of the following:
>>
>> *   *   *
>>
>> TheThe transaction involves a saleThe transaction involves a sale of stock and as far asThe t knknownknown to Ron Goade, Sr., there is nothing in the trantransatransactionaltransactional documents which leads him to believe thatthat SSI s assets willthat SSI s assets will bethat SSI s assets will be encumbered or deple salessales transaction or that the sale will sales transaction or that the sale will hasales tr adverse impact on SSI s balance sheet.

See May 26, 1998 letter from Titterington to Rosen, attached hereto as Exhibit  C.   Complaint ¶23.

The  client  with whom counsel conferred was Goade, and Goade was copied on the letter ( May 26 Letter ) containing this statement. Complaint ¶24.

Goade, acting for himself, the Goade Trust, and its beneficiaries, intentionally misled Vanguard by representing that SSI s assets would not be encumbered as a result of the sale.

Complaint ¶25.

The May 26 Letter clearly implicates apparent conversations between Goade and Titterington. Titterington apparently spoke to Goade, and, no matter what was said during such conversations, what Goade actually knew, or what Titterington actually knew, Goade apparently authorized Titterington to disclose that Goade knew nothing about any transactional documents that would lead him to believe that the assets would be encumbered. Goade used the lawyer as a mouthpiece for fraud while hiding, and continuing to hide, behind the privilege. Moreover, Goade was communicating, contemporaneously, with his transactional lawyers at McAffee & Taft concerning the fact that the assets would be encumbered. He now would like to use the privilege to perpetuate his cheating Vanguard out of the $2 million judgment by blocking any discovery concerning the May 26 Letter or his authorization.

Vanguard relied to its detriment on Goade's false statements conveyed by the May 26 Letter. But for Goade's fraudulent statements, Vanguard would have sought and obtained injunctive relief that, among other things, barred distribution of all, or part of, the $10 million consideration transferred to Goade and/or the Goade Trust and/or its beneficiaries, would have established a constructive trust from which Vanguard could satisfy a judgment, or would have barred the sale of SSI or the encumbering of all, or part, of the assets of SSI. Complaint ¶29.

Goade, in fact, knew that SSI's assets would be encumbered, particularly since the lender that financed the purchase took a security interest in SSI's assets on or about the day of the sale and Goade received a Subordinated Note junior to that lender. Complaint ¶ 26.

Indeed, a prima facie case already exists for Goade's fraud. Evidence obtained through discovery confirms that Goade absolutely knew that the assets would be encumbered. When DSI

purchased SSI from the Goade Trust, part of the consideration was a $1.326 million Junior Subordinated Promissory Note payable to Goade as Trustee of the Goade Trust. See Promissory Note, attached hereto as Exhibit D. The Promissory Note bore a legend stating: This Junior Subordinated Note is subordinated to the senior obligation (as defined in the Subordination Agreement dated as of March 29, 1998 (the Subordination Agreement ) among Heller Financial, Inc., as agents to certain financial institutions . . . *Id.* Heller was financing the purchase of SSI and encumbered the assets. Thus, with the closing to occur on May 29 1998, it is indisputable that Goade knew about this Junior Subordinated Note on May 26, when the misrepresentation was made, and therefore knew that the assets of SSI would be encumbered.

Indeed, as early as February 10, 1998, Goade signed a Letter of Intent that discussed his Junior Subordinated Promissory Note. See February 10, 1998 Letter of Intent, attached hereto as Exhibit E. The Letter of Intent stated: The note will be subordinated to all of the third-party senior and subordinated indebtedness of DSI . . . . . *Id.* Further, Goade saw drafts of the Foreclosure Agreement, which both discussed the Subordinated Note and had it attached as a schedule, prior to May 26. See documents attached hereto as Exhibit F, transmitting drafts of the Foreclosure Agreement and/or its schedules. Even further, he received correspondence, both directly and as a copied recipient, discussing the Subordinated Note prior to May 26. See documents attached hereto as Exhibit G. Knowing full well that the assets would be encumbered by DSI s purchase, he employed his attorney to fraudulently represent that they would not be, so that he could receive $10 million without interference from Vanguard.

### III.  ARGUMENT

A.   **Because Goade Used His Attorney-Client Relationship To Advance Or Conceal A Fraud And Continues To Do So, The Crime-Fraud Exception Applies**.

The attorney-client privilege does not apply if the attorney-client relationship or privilege is being used to advance or conceal a crime or fraud.  *Brennan v. Brennan*, 281 Pa. Super. 362, 376, 422 A. 2d 510, 517 (1980) (Privilege does not apply if its exercise  either operates to permit or continue a crime or fraud or is clearly shown to be frustrating the administration of justice. ); *Inigo v. Giordano*, 925 F. 2d 641, 656 (3rd Cir. 1991) ( ... when the legal consultation is in furtherance of a crime or fraud, the statements exchanged will not be protected. )*; In Re Grand Jury Proceedings: Appeal of FMC Corp.*, 604 F. 2d. 798, 802 (3d. Cir. 1979) (The ends of justice would be frustrated if a client used the lawyer s services to further a continuing or future crime or tort.); *Frieman v. USAIR Group, Inc.*, 1994 WL 675221 (E.D. Pa. 1994) at *8 (Exception applies  if communications with counsel were intended in some way to facilitate or conceal the criminal activity. ); *Lipson v. Snyder*, 1989 WL 79779 (E.D. Pa. 1989) at *2 ( ... communications which facilitate a present or future, crime fraud, or tort [footnote omitted] are not privileged [footnote omitted].   The exception   contemplates a present or continuing crime or fraud of the client, and prevents use of the attorney-client relationship to further those ends. ); *FMC Corporation v. R.W. Christy, Inc.*, 1988 WL 76097 (E.D. Pa. 1988) at * 3 ( The attorney-client privilege does not protect communications that further a crime or fraud. );  *Orix USA Corp. v. DVI, Inc.*, 37 Pa. D&C 4th 491, 498 (1997) ( Under Pennsylvania law, the attorney-client privilege has never protected communications between counsel and the client that were made for the purpose or in the course of the commission of [a] proposed crime or fraud or that will aid and abet the client in criminal activities.  )

Although Vanguard does not contend that Oklahoma law applies since the fraud was committed, and continues to be concealed, in Pennsylvania and since the instant case is pending in Pennsylvania, Oklahoma also recognizes the crime-fraud exception. 12 Okl. St. Ann. § 2502(D)(1) explicitly provides that the privilege does not apply:

> If the services of the attorney were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

*Keller v. State*, 651 P. 2d 1339 (Okla. Crim. App. 1982) (Statements made by defendant to his attorney about killing victim, who had sued defendant over employment contract, were not privileged, even though defendant contended attorney was not sure defendant was serious. ); *White v. American Airlines, Inc.*, 915 F. 2d 1414 (10th Cir. 1990) (Corporation s outside counsel s conversations with at-will employee not protected by privilege since they concerned alleged request that employee commit perjury.)[4]

Goade used, and would continue to use, the attorney-client relationship to further his fraud in two fundamental respects. First, he apparently  authorized  his attorney to make a patently fraudulent statement on his behalf, using the attorney   whether the attorney knew or not   as a mouthpiece for fraud. Secondly, he will now assert to privilege to prevent Vanguard from discovering from either him or his attorney what he actually said to his attorney in this regard or what his attorney said to him. He may refuse at his deposition to either confirm or deny that he  authorized  his attorney to make a misrepresentation, and because of Goade s and/or SSI s

---

[4] Some authority holds that the party seeking avoidance of the privilege must establish a prima facie case. See e.g. *Lipson* at *2. Vanguard has clearly met such an initial burden with the documentary evidence indicating that Goade knew of his Junior Subordinated Note when the fraudulent disclosure was made and knew that the Subordinated Note would be junior to the lender s liens in the assets of SSI.

assertion of the privilege, his attorney might refuse to confirm or deny that Goade authorized him to make a fraudulent misrepresentation.  Also, he and his attorneys may refuse to testify about communications or legal work that go to Goade s knowledge of the Junior Subordinated Note.  Goade is not permitted to consult an attorney or hide behind a privilege to advance or conceal his fraud.

In addition to testimony, Vanguard is entitled to documents that in any way refer or relate to this  authorization.   At least two such documents are listed in Defendants  privilege log, which is attached hereto as Exhibit  H.   Item 42 is a letter from Goade s attorney in the Patent Action to Goade concerning the May 20, 1998 letter from Vanguard s attorney, which letter discussed a document production and the statement that Vanguard was proceeding in the Patent Action based on SSI s representation that SSI would be an ongoing entity and also notified SSI that SSI s representations were material.  Item 43 is a Memorandum from one Goade attorney to another from the same time-period and probably concerning the same subjects.   Other questionable documents include items 9, 10, 11, 12, 13, 14, 18, 19, 20, 21, 34, 35, 36, 37, 38, 39, 40, 41.[5]

---

[5] These documents are described in Defendants  privilege log as  regarding representation of Stik/Strip  or  regarding representation of REG.   This overly general description begs the question of work-product and attorney client privilege and fails to comply with Fed. R. Civ. P. 26(b)(5), which requires that the party describe the allegedly privileged communication in a manner that  will enable other parties to assess the applicability  of the privilege or protection.   Remarkably, this is the second privilege log Defendants produced, the first one having been sham  log  that failed to itemize any documents whatsoever. Vanguard therefore seeks a more specific description of the subject of the documents.

B.   **Goade Cannot Hide Behind The Work-Product Privilege Either.**

Goade cannot take refuge in other privileges after the crime-fraud exception voids the attorney-client privilege. First and foremost, the crime-fraud exception applies to the work-product privilege as well as to the attorney-client privilege. *In Re Grand Jury Proceedings: Appeal of FMC Corp.* at 802-803.

Secondly, the work-product privilege is qualified, even apart from the crime-fraud exception, in that it yields upon a showing that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3). Such a showing has been made here. Vanguard needs discovery on the communications and deliberations underlying the May 26 letter. In this context, it is significant that Vanguard is not seeking work-product prepared in anticipation of the litigation in which discovery and a judgment are now being sought but only in anticipation of the Patent Action.

C.   **The So-Called Self-Critical Analysis Privilege Is Inapplicable**.

Defendants raised a so-called self-critical analysis privilege for every item in their privilege log. Such indiscriminate reliance on a privilege — a privilege of dubious applicability in Pennsylvania and limited scope where it does apply — suggests that **all** of their privilege assertions are, like this one, frivolous. Since the universally recognized attorney-client and work-product privileges yield to the crime-fraud exception, this secondary privilege must also yield

But even if the crime-fraud exception did not apply, this privilege cannot insulate Defendants from discovery. For one, the question is still open whether it even exists in Pennsylvania. *Joe v. Prison Health Services, Inc.*, 782 A. 2d 24, 29-31 (Cmwlth. 2001); *Andritz Sproud-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 535 (M.D. Pa. 1997) ( There is no

-10-

authority before us which suggests that Pennsylvania ... has adopted the self critical analysis test. ); *Myers v. Uniroyal Chemical Co., Inc.*, 1992 WL 97822 (E.D. Pa.) at *1, *4 (Privilege remains largely undefined. [T]he court concludes that the Pennsylvania Supreme Court likely would not recognize a critical self analysis privilege applicable to the circumstances of this case. ).

Where applied, in other jurisdiction, the privilege has been applied in limited circumstances. See *Myers*. The privilege "is based upon the concern that disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law or with professional standards." *Myers* at *1 quoting, *Hardy v. New York News, Inc.,* 114 F.R.D. 633 (S.D.N.Y.1987). Although of questionable validity in Pennsylvania, the Commonwealth Court observed:

> Those courts which have recognized a self-critical analysis privilege have generally required that the party asserting the privilege demonstrate that the material to be protected satisfies at least three criteria: the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; and, the information must be of the type whose flow would be curtailed if discovery were allowed.

*Joe* at 34.

Further, the privilege only applies to records mandated by a government body. *Paladino v. Woodloch Pines, Inc.*, 188 F.R.D. 224, 225 (M.D. Pa. 1999); *Frazier v. Southeastern Pennsylvania Transportation Authority*, 1988 WL 117869 (E.D. Pa.). Finally since this privilege protects communications which evaluate past performance for the purpose of improving future operations, this privilege (even if it were to be recognized by the Pennsylvania courts) has

no applicability to a communication made for the purpose of securing legal advice. [6] *Monah v. Western Pennsylvania Hospital*, 44 Pa. D&C 3d 513, 521 (Allegheny County 1987).

Clearly, Defendants cannot establish any one of the requirements for applicability, even if the doctrine did indeed apply in Pennsylvania. That they would raise this privilege for every single one of their withheld documents suggests that all their privilege assertions were thoughtless and are of dubious validity. The effort to conceal and defraud must come to an end.

---

[6] Where it has been applied, it refers to hospital peer review comments on the care and treatment of patients (quoting *Andritz Sprout-Bauer, Inc.* at 634) and legally mandated self-evaluations of equal opportunity policies and affirmative action plans (quoting *Myers* at *1)

## IV.  CONCLUSION

For the foregoing reasons, the Court should rule that no Defendant in either 02-2943 or in the Patent Action (No. 97-6790) can invoke any privileges with respect to any aspect of discovery, including depositions, regarding the correspondence that led up to and included the May 26 Letter or the misrepresentation made in the May 26 Letter or the Junior Subordinated Note.  Further, the Court should order Defendants in 02-2943 to produce a more descriptive privilege log in accordance with the proposed order.

                                            Respectfully submitted,

                                            **BOCHETTO & LENTZ, P.C.**

                                            By: _____
                                               George Bochetto, Esquire
                                               David J. Perlman, Esquire
                                               1524 Locust Street
                                               Philadelphia, PA 19102
                                               Ph: (215) 735-3900
                                               Fx: (215) 735-2455

Date: _____                                Attorneys for Plaintiff
                                               Vanguard Identification Systems, Inc.