IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VANGUARD IDENTIFICATION SYSTEMS, INC.** : | CIVIL ACTION NO. |
| : | 02-2943 |
| **Plaintiff,** : | |
| : | |
| v. : | |
| : | |
| **RONNIE E. GOADE, SR.,** *et al.* : | |
| : | |
| **Defendants.** : | |

### DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendants REG Oklahoma Acquisitions, LLC, Ronnie E. Goade, Sr. (individually, "Goade"), The Ronnie E. Goade, Sr. Revocable Trust (individually, "Goade Trust"), Renise Goade Lee, Ron E. Goade, Jr., Sean Goade, and Susan M. Goade (collectively, "Defendants"), hereby Object to Vanguard Identification Systems, Inc.'s ("Vanguard's") Motion for Leave of Court to File A Second Amended Complaint ("Motion to Amend"). Vanguard's Motion to Amend should be denied because it proposes the futile addition of two new counts to the Complaint. Both counts are based entirely on the language of an indemnification provision contained in a Stock Purchase and Merger Agreement ("Agreement") to which Vanguard is not a party, and which **on its face** does not create any rights in third parties such as Vanguard. Moreover, the indemnification provision in the Agreement is unenforceable against Goade and the Goade Trust because the undisputed evidence establishes that the other party to the

Agreement, Docusystems, Inc., materially breached the Agreement.

Further, allowing Vanguard to amend its Complaint at this juncture would result in substantial and undue prejudice to Goade and the Goade Trust. Vanguard has been in possession of the Agreement since at least July 2002, and apparently as early as January 2001. There is no reason why Vanguard had to wait until one month before the close of discovery, and two months before the trial in this action, to assert new claims based on the Agreement. As Vanguard is well aware, much, if not all, of the substantive evidence needed to rebut the allegations contained in the proposed new counts must be obtained from non-party witnesses who are spread out across the country, who are not available for trial, and many of whom Defendants have **already** subpoenaed and deposed. Defendants would therefore be prejudiced because they would be forced to take and/or attempt to re-open the depositions of non-party, out-of-state witnesses less than one month before the close of discovery, and only two months before the start of the trial in this action.

Thus, on futility grounds, on the grounds that the proposed midnight amendments to Vanguard's Complaint would cause substantial and undue prejudice to Defendants, and due to Vanguard's undue delay in seeking to make said amendments, Vanguard's Motion to Amend should be denied.

## BACKGROUND

### I.  Vanguard Had Possession of the Agreement Prior to Commencing this Action

In July 2000, Vanguard was the plaintiff in an action captioned <u>Vanguard v. Stik/Strip</u>

Laminating Co., Inc., No. 97-6790 (U.S.D.C., E.D. Pa.) ("Patent Action"). On or about July 10, 2000, the parties to the Patent Action, Vanguard, Stik/Strip Laminating Co., Inc. ("Stik/Strip") and its parent company, DocuSystems, Inc. ("DSI"), filed a consent judgment in the Patent Action. See Judgment, dated July, 2000 (attached hereto as Exhibit A).[1]  Subsequently, in December 2001, during post-judgment discovery in aid of execution on the judgment in the Patent Action, DSI produced documents to Vanguard. Apparently, one of the documents produced to Vanguard in December 2001 – over three and one half years ago – was the "Stock Purchase and Merger Agreement," dated May 29, 1998 ("Agreement"), between DSI and Goade.[2]

Thus, even prior to commencing this action in May 2002, Vanguard had in its possession the very Agreement that forms the basis of Vanguard's proposed Second Amended Complaint. It is beyond question that Vanguard has had possession of the Agreement, and has been familiar

---

[1] At that time, DSI was in default on its loans, the banks had foreclosed on DSI's secured assets, and the banks would no longer agree to fund DSI's defense of the Patent Action. The Patent Action was scheduled for trial on July 10, 2000, and DSI agreed to the entry of the consent judgment on the eve of trial due to its dire financial situation at the time. See Transcript of Deposition of Ronnie Goade, taken June 9, 2004 ("Goade Tr.") at 93-94 (attached hereto as Exhibit B); Transcript of Deposition of Hugh Wilder, taken June 10, 2004 ("Wilder Tr.") at 66-69 (attached hereto as Exhibit C). Around the time the judgment was entered, DSI's assets were sold by the banks in foreclosure for about $20 million, which was insufficient to pay off DSI's outstanding loan obligations in excess of $50 million. See Wilder Tr. at 83-85 (attached ehreto as Exhibit C). The judgment was therefore worthless.

[2] A copy of the Agreement is attached as Exhibit F to Vanguard's proposed Second Amended Complaint. Documents produced by DSI during post-judgment discovery in the Patent Action appear to have been labeled with the Bates-prefix "DSI." A letter dated January 9, 2002, and sent by DSI to David Perlman, Vanguard's current attorney, indicates that these documents were available for Vanguard's review and copying as of December 11, 2001. See Letter from John F. Gibbons (DSI's Attorney) to David Perlman, dated January 9, 2002 (attached hereto as Exhibit D). The undersigned have located in their files a copy of the Agreement produced by **Vanguard to Defendants** in this action which bears the Bates numbers DSI 001341 through DSI 001377. Thus, it appears that the Agreement was produced to Vanguard by **at least** December 2001. At his recent deposition in this action, a transcript of which is not yet available, Vanugard's former attorney, Gary Rosen, testified that he received DSI's post-judgment discovery even earlier, **in December 2000 or January 2001**. Thus, Vanguard apparently has had

with the terms thereof, since **at least** July 2002, two months after commencing this suit, and two years prior to filing the Motion to Amend. Indeed, Vanguard attached the Agreement as Exhibit C to its Memorandum in Opposition to Motion to Dismiss, filed in this action on July 29, 2002, two full years ago. See Plaintiff's Mem. in Opp. to Mot. to Dismiss, Exhibit C (filed July 29, 2002) (Docket Entry No. 6).

In September 2003, after having had the Agreement in its possession for well over one year, Vanguard filed an Amended Complaint in this action. Vanguard could have attempted to assert any Agreement-based claims at that time. Instead, when discovery in this case closes in less than one month, and the trial in this action is scheduled to begin in two months, Vanguard now seeks to amend its Complaint to incorporate two new counts, both of which stem entirely from the language of the Agreement.

## II.    The Plain Language of the Agreement

It is without question that Vanguard is not a party to the Agreement. Nonetheless, Vanguard claims that is somehow entitled to step into the shoes of DSI, one of the parties to the Agreement, and enforce an indemnification provision in the Agreement against Goade and the Goade Trust. Alternatively, Vanguard claims that the parties to the Agreement intended Vanguard to be the third party beneficiary of the indemnification provision. However, the Agreement expressly indicates that the parties thereto specifically **did not** intend to create rights in any person **other than** the parties to the Agreement. Specifically, the Agreement provides:

> **Nothing in this Agreement, express or implied, is intended to confer on any person**

---

possession of the Agreement since as early as January 2001.

***other than the parties hereto . . . <u>any rights, remedies, obligations or liabilities under or by reason of this Agreement</u>***.

See Agreement, Article X, §10.8 (emphasis added).

### III.    <u>The Agreement is not Enforceable due to DSI's Material Breach</u>

In any event, the indemnification provision in the Agreement has been vitiated by DSI's material breach. Specifically, the Agreement allows DSI to enforce the indemnification provision in the Agreement against Goade and the Goade Trust **only if** Goade and the Goade Trust were permitted to review and approve any settlement in the Patent Action:

> Goade and the [Goade Trust] shall have the right to be kept informed regarding the Vanguard Litigation. Purchasers shall give ten (10) days prior notice to Goade and the [Goade Trust] before entering into any settlement with regard to the Vanguard Litigation, **which settlement shall be subject to the approval of Goade and the [Goade Trust]**.

Agreement, Article VIII, § 8.10 (emphasis added).[3] The **only** evidence presented in discovery in this case undisputedly demonstrates that DSI **did not** obtain approval from Goade and the Goade Trust before agreeing to the terms of the consent judgment. See Goade Tr. (attached hereto as Exhibit B) at 88-94. Vanguard's Chief Financial Officer testified in his deposition that he has no knowledge that Goade approved the entry of the consent judgment or was involved in the settlement discussions that led to it. See Transcript of Deposition of Robert W. Kane, taken on June 15, 2004 ("Kane Tr.") at 122-125 (attached hereto as Exhibit E) (indicating that Robert W. Kane, Vanguard's Chief Financial Officer, has no knowledge as to whether Goade was involved in the settlement discussions which led to the entry of the consent judgment, and that

---

[3] Vanguard acknowledges in its Motion to Amend that Goade and the Goade Trust "were provided the right to

Kane is not aware of any settlement discussions in which Goade participated).

Notably, in its proposed Second Amended Complaint, Vanguard only alleges **"[u]pon information and belief"** that Goade and the Goade Trust "authorized and or consented to "the entry of the consent judgment in the Patent Action. However, with discovery set to close in less than one month, Vanguard should be required to support its proposed Second Amended Complaint with an allegation that is supported by some evidence, and not one based "upon information and belief" that is directly contradicted by testimony of its own witnesses.

Because DSI breached the terms of the indemnification provision in the agreement by failing to provide Goade and the Goade Trust with the agreed upon right to review and/or approve the settlement of the Patent Action, any indemnification obligation on the part of Goade and/or the Goade Trust has been vitiated.

Therefore, Vanguard cannot enforce the indemnification provision contained in the Agreement.

### IV. Defendants Would be Unduly Prejudiced by the Proposed Second Amended Complaint and Materially Harmed in their Ability to Defend Themselves In This Action

Substantial and undue prejudice will result to Goade and the Goade Trust if Vanguard is permitted to amend its Complaint to add the two proposed claims. Discovery in this case closes on August 15, 2004. As Vanguard is well aware, Defendants have spent the past several months coordinating and taking the depositions of several out-of-state, non-party witnesses, who will be

---

approve or reject any settlement" in the Patent Litigation. See Motion to Amend at 3.

unavailable to provide testimony at the trial in this action. Moreover, the parties have already deposed representatives of both the Defendants and Vanguard. Despite Vanguard's claim that "there is ample time for the Defendants to take additional discovery," see Motion to Amend at 4, there is simply not enough time for Defendants to re-open and re-take the depositions of the witnesses who have already provided deposition testimony in this action. Nor is there enough time for Defendants to research, subpoena, and depose any other non-party witnesses who could provide testimony relevant to Defendants' substantive defenses to Vanguard's new claims. Thus, Defendants' ability to prepare their defense would be substantially and unduly prejudiced if Vanguard's Motion to Amend were granted.

## ARGUMENT

Vanguard's Motion to Amend should be denied because the proposed amendments of two new counts to the operative Complaint in this action would be utterly futile. See Greenberg v. Technicare Corp., No. 85-C-5436, 1987 U.S. Dist. LEXIS 5594, at *10 (N.D. Ill. June 18, 1987) ("Where it is clear that an amendment would be futile . . . then, quite apart from any consideration of delay or prejudice, leave to amend should be denied."); Forman v. Davis, 371 U.S. 178, 182 (1962) (indicating that a motion to amend a complaint should be denied when the proposed amendments would be futile).

Even if the amendments were not futile, Vanguard's Motion to Amend should be denied due to the substantial and undue prejudice that Defendants would suffer were the court to permit said amendments. See Greenberg, 1987 U.S. Dist. LEXIS 5594, at *10 ("Even an amendment that would survive a motion to dismiss is properly barred where it is outweighed by prejudice to

the other party."); DVI Financial Serv's, Inc. v. Kagan, No. 00-CV-1666, 2001 U.S. Dist. LEXIS 4148, at *6 (E.D. Pa. Mar. 23, 2001) ("[P]rejudice to the non-moving party is the touchstone for the denial of [a request for leave to amend]") (citation omitted).  This is especially true where, as here, Vanguard has been in possession of the document which forms the basis for its proposed amendments since prior to commencing this action, and certainly shortly thereafter, and thus could have filed these claims against Goade and the Goade Trust several years ago.  See Greenberg, 1987 U.S. Dist. LEXIS 5594, at *6 ("[T]his court has held that the longer a party has delayed in bringing the amendment, the less prejudice the other party must show to justify denial of leave to amend."); Cureton v. NCAA, No. 97-131, 2000 U.S. Dist. LEXIS 4790, at *6-7 (E.D. Pa. Apr. 14, 2000) (noting the correlation between undue delay and prejudice to the non-moving party).

**I.    Vanguard's Proposed Amendments Are Futile Because The Agreement Upon Which They Are Based Does Not, Under Any Valid Legal Theory, Confer Any Rights Whatsoever On Vanguard**

Vanguard's Motion to Amend should be denied because it seeks to add two new counts to the operative complaint in this action, based on an Agreement which precludes all non-parties – such as Vanguard – from asserting or deriving any rights from the Agreement.  Vanguard proposes the addition of a claim for indemnification from Goade and the Goade Trust based on the indemnification provision contained in the Agreement.  Vanguard proposes another claim for breach of the indemnification Agreement, based on the flawed premise that Vanguard is a third party beneficiary of the indemnification provision contained in the Agreement.  See Proposed Amended Complaint, ¶¶ 86-103.  It is indisputable that Vanguard is not a party to the

- 8 -

Agreement.

Under Illinois law, "a third-party beneficiary may bring an action to remedy the breach of a contract **only if the parties to the contract specifically intended the third party to benefit from the agreement**." Anderson v. BASF Corp., No. 00-C-6804, 2001 U.S. Dist. LEXIS 13930, at *7 (N.D. Ill. 2001) (emphasis added). Moreover, there is a "strong presumption that parties to a contract intend that the contract's provision apply to **only them and not third parties**." Quinn v. McGraw-Hill Cos., 168 F.3d 331, 334 (7th. Cir. 1999).

Here, the Agreement provides:

> **Nothing in this Agreement, express or implied, is intended to confer on any person *other than the parties hereto* . . . any rights, remedies, obligations or liabilities under or by reason of this Agreement**.

See Agreement, Article X, §10.8 (emphasis added). Section 10.8 of the Agreement vitiates Vanguard's unsupported contention that "[t]he parties to the Agreement could have done nothing more to make it any clearer that Vanguard was to be a direct, intended beneficiary of the indemnification clause in the Agreement." See Motion to Amend at 9. Indeed, Section 10.8 confirms that the parties to the Agreement specifically and expressly **did not** intend to make **any** non-party, let alone Vanguard, a direct or intended beneficiary of the Agreement.

The Northern District of Illinois reached this precise conclusion in the Anderson case, holding that language similar to Section 10.8 precluded a group of former employees from recovering, under a third-party beneficiary theory, against the company which had purchased their former employer. See Anderson, 2001 U.S. Dist. LEXIS 1390, at *9 ("The court concludes that the clear import of this provision is that . . . there are no third-party beneficiaries

to the Purchase Agreement."). As in Anderson, there is simply no valid theory under which Vanguard would be able to enforce the indemnification clause in the Agreement.

Contrary to Vanguard's argument on pages 7 and 8 of its Motion to Amend, cases such as Gerrill Corp. v. Jack Hargove Builders, Inc., 538 N.E. 2d 530 (Ill. 1989) and Palmer v. Caisson Corp., 206 N.E.2d 776 (Ill. App. 1965) do not allow Vanguard to step into DSI's shoes to enforce the indemnification provision in the Agreement. Those cases **do not** stand for the proposition that the entry of a judgment triggers the obligation of an indemnitor to pay a **third party**, as opposed to the indemnitee. To the contrary, in each of those cases, the party named in a contract as the indemnitee sought indemnity directly from the party named in the contract as the indemnitor. The situation here is entirely different, where Vanguard is not a party to the Agreement, let alone the party named in the Agreement as the indemnitee. See Gerrill Corp., 538 N.E. 2d at 533 (indicating that the party seeking to enforce a contractual indemnification provision – Hargrove – was in fact the party named in the contract as the indemnitee); Palmer, 206 N.E.2d at 779 (indicating that the indemnitor and the indemnitee had an "indemnity agreement," and describing the indemnitee's attempt to seek indemnification from the indemnitor pursuant to that agreement.).

Likewise, Vanguard's reliance, on pages 7 and 8 of its Motion to Amend, on Cowan v. Insurance Co. of N. America, 318 N.E.2d 315 (Ill. App. 1974) is entirely misplaced. The "doctrine" to which the Cowan court refers in its decision is the doctrine of collateral estoppel, not the doctrine of indemnification. See id. at 321 ("As a general rule, collateral estoppel may be invoked only when both the party invoking the doctrine and the party against whom it is

invoked were adverse parties . . . . However, in certain instances, exception is made where liability rests upon derivative responsibility, such as indemnitor and indemnitee."). The doctrine of collateral estoppel is clearly inapplicable in this action, and thus the long block-quote from the Cowan case on page 7 of Vanguard's Motion to Amend is completely irrelevant to the issues in this case and misleading to the Court.

Even if Vanguard were permitted to assert claims against Goade and the Goade Trust under the Agreement, Vanguard's claims would still fail. The undisputed evidence produced in this action establishes that Goade/the Goade Trust's indemnity obligations under the Agreement were vitiated by DSI's prior breach of the provisions of the Agreement. Under the terms of the Agreement, DSI was required to seek Goade's and the Goade Trust's final approval before the Patent Action was settled. See Agreement, Article VIII, § 8.10. The only testimony in this case, and indeed the only evidence produced by either Vanguard or Defendants in this action, clearly indicates that DSI **did not** seek Goade/the Goade Trust's approval to consent to a judgment in the Patent Action. See Goade Tr. (attached hereto as Exhibit B) at 88-94. Vanguard's CEO had no knowledge that Goade agreed to the settlement. See Kane Tr. at 122-125 (attached hereto as Exhibit E). This no doubt explains why, with less than one month until discovery closes in this action, Vanguard thinly alleges in its Motion to Amend that "[u]pon information and belief," Goade and/or the Goade Trust "authorized and or consented to" the consent judgment filed in the Patent Action. No evidence of this alleged "consent" has been produced in this case.

Thus, even **DSI** could not enforce the Agreement's indemnification clause against Goade

and/or the Goade Trust. See, e.g., Eager v. Berke, 11 Ill.2d 50, 54, 142 N.E.2d 36, 38-39 (Ill. 1957) (holding that the material breach or non-performance of a promise by one party to a contract discharges the obligation of the other party to perform a duty required by the contract). Vanguard has not pled any theory in its proposed Amended Complaint, or cited any principle of law in its Motion to Amend, that would allow it to assert contractual indemnification claims in a situation where even the original indemnitee named in the Agreement could not seek such indemnification.

As is demonstrated above, Vanguard's proposed new additions to the Complaint should not be permitted on futility grounds, and therefore Vanguard's Motion to Amend should be denied in its entirety.

## II. Vanguard's Motion Should Be Denied Due To the Undue Delay of the Amendments Proposed Therein And The Resulting Prejudice Defendants Would Suffer Were Such Amendments Permitted.

Regardless of the utter futility of Vanguard's proposed amendments, Vanguard's Motion to Amend should be denied due to Vanguard's undue delay in seeking to assert the two new proposed claims, and due to the resulting prejudice Defendants would suffer were Vanguard permitted to assert these claims at this late juncture.

Very recently, the Third Circuit Court of Appeals confirmed that a party's undue delay in seeking to amend a complaint is ground for denial of leave to amend, especially where the undue delay places an unfair burden on the opposing party:

> [T]he passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden

on the opposing party. The question of undue delay . . . requires that we focus on the plaintiff's motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants.

Lindquist v. Buckingham Township, Nos. 03-2431, 03-2971, 2004 U.S. App. LEXIS 14922, at *18 (3rd Cir., July 19, 2004). The Lindquist court affirmed the trial court's denial of a plaintiff's motion to amend a complaint, noting that the documents which formed the basis for the plaintiff's proposed amendments: (1) were available to the plaintiff for two years prior to the time that the plaintiff sought leave to amend its complaint; and (2) the case "had already been pending for two years and was ready for trial." Id. at *19; accord DVI Fin. Serv's v. Kagan, No. 00-CV-1666, 2001 U.S. Dist. LEXIS 4148, at *6 (E.D. Pa. Mar. 23, 2001) (denying motion for leave to amend where moving party could have asserted claims "many months ago," noting that "[w]hile the passage of time alone will not support denial of leave to amend, undue delay by a movant in seeking to amend may support such a denial.").

Likewise, in Cureton v. NCAA, No. 97-131, 2000 U.S. Dist. LEXIS 4790, at *6-9 (E.D. Pa. Apr. 14, 2000), the Eastern District Court of Pennsylvania denied a plaintiff's motion for leave to amend where, *inter alia*, (1) the motion was filed three years after the complaint was filed; (2) the "information on which the proposed amended complaint is based was substantially known to plaintiffs" much earlier in the litigation; (3) the "[i]nterest in finality of the proceedings would be ignored if plaintiffs were permitted to amend after extensive discovery . . . [has] been concluded, particularly where, as here, the basis for proposed amended pleadings were clearly known;" and (4) the plaintiff failed to provide an adequate explanation for the undue delay in seeking to amend the complaint. Id. at *8-9.

The factors which lead the Cureton and Lindquist courts to refuse to permit last-minute amendments in those actions are equally applicable in this action. It is undeniable that Vanguard commenced this action over two years ago, on May 26, 2002. Vanguard apparently has had possession of the Agreement since as early as December 2001, and perhaps as early as January 2001, prior to commencing this action. At the very least, it is undeniable that Vanguard has had possession of the Agreement since July 2002, when it attached the Agreement as an exhibit to a brief it filed in this action. See Plaintiff's Mem. in Opp. to Mot. to Dismiss, Exhibit C (filed July 29, 2002) (Docket Entry No. 6).

Noticeably absent from Vanguard's Motion to Amend is any explanation as to why it has waited years, until the eve of trial, before attempting to assert these claims. Indeed, in its Motion to Amend, Vanguard simply states that "[t]hrough discovery in this case, Plaintiff has obtained documents and evidence" demonstrating the existence of the indemnification provision in the Agreement. See Motion to Amend at 1. Vanguard offers no explanation whatsoever as to why it could not have asserted these claims earlier, for example, when it filed its Amended Complaint in this action, in September 2003.[4] Vanguard's eleventh-hour attempt to add claims to this action that could have been asserted years ago, without providing any explanation whatsoever for the undue delay, is grounds in and of itself for the Court to deny Vanguard's Motion to Amend. See Cureton, 2000 U.S. Dist. LEXIS 4790, at *6 ("When a party filing a motion to amend has no adequate explanation for the delay, **untimeliness can be a sufficient**

---

[4] Vanguard neglects to provide the date upon which it claims it received the Agreement in discovery in this action. In fact, Defendants produced a copy of the Agreement, Bates labled G2754 through G2790, to Vanguard on or about June 11, 2003, months before Vanguard filed its Amended Complaint in this action.

**reason to deny leave to amend**.") (emphasis added).

Moreover, here, as in Cureton and Lindquist, extensive discovery has already taken place, and is set to close on August 15, 2004.[5] Witnesses representing both Vanguard and the Defendants have already been deposed in this action.[6] In addition, Defendants have deposed a host of non-party, out-of-state witnesses. Due to the fact that many of these non-party witnesses live and work out-of-state, their depositions were videotaped in order to preserve their testimony for the trial in this action. Several of these witnesses could have information relevant to the substantive allegations contained in Vanguard's proposed amendments, and thus their depositions would have to be reopened, before the close of discovery, in order to allow Defendants to properly defend themselves against Vanguard's proposed new claims.

Even further, with only one month left until the close of discovery, Defendants would have insufficient time to identify, subpoena and depose any additional non-party witnesses regarding the indemnification provision in the Agreement. Similarly, Defendants would have less than one month to identify, subpoena and depose any additional non-party witnesses who could provide testimony demonstrating that the indemnification provision in the Agreement is unenforceable due to DSI's prior breach of the Agreement. These deadlines are made even more pressing in light of the fact that the trial in this action is scheduled to commence in September 2004 – less than two months away. It is clear, therefore, that allowing Vanguard to amend its

---

[5] Originally, discovery in this action was set to close in June 2004. The Court extended the discovery cutoff to August 15, 2004 in response to Defendants' Expedited Motion Compel Discovery, filed on May 14, 2004.

[6] The Goade deposition took place on June 9, 2004. The depositions of Richard O. Warther, President of

Complaint to include the two new claims would be highly prejudicial to Defendants' ability to defend themselves. See, e.g., Greenberg v. Technicare Corp., No. 85-C-5436, 1987 U.S. Dist. LEXIS 5594, at *10 (N.D. Ill. June 18, 1987) (denying motion to amend where, *inter alia*, allowing the amendments to proceed "could conceivably implicate a whole new set of witnesses or the need to retake the depositions of numerous witnesses previously deposed."); DVI Fin. Serv's, 2001 U.S. Dist. LEXIS, at *8 (denying motion to amend where amendments would require the non-moving party to engage in "significant new trial preparation."). Therefore, Vanguard's Motion to Amend should be denied in its entirety.

## CONCLUSION

For all of the foregoing reasons, Defendants object to Vanguard's Motion to Amend, and respectfully submit that the Court should deny the Motion to Amend in its entirety.

DATED:   July 27, 2004

THE DEFENDANTS
BY THEIR ATTORNEYS

*/s/ Marc S. Zaken /WEL/*
Marc L. Zaken (CT 03110)
mzaken@edwardsangell.com
John G. Stretton (CT 19902)
jstretton@edwardsangell.com
EDWARDS & ANGELL, LLP
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901
Tel: (203) 353-6819
Fax: (888) 325-1667

WEL:138665(HT)

---

Vanguard, and Robert W. Kane, Chief Financial Officer of Vanguard, took place on June 15, 2004.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Defendants' Objection to Plaintiff's Motion for Leave to File Second Amended Complaint was mailed via first class mail delivery, postage prepaid, to:

>George Bochetto, Esquire
>David J. Perlman, Esquire
>BOCHETTO & LENTZ, P.C.
>1524 Locust Street
>Philadelphia, PA 19102

this 27th day of July, 2004.

*Marc L. Zaken /WEL*
Marc L. Zaken