# Exhibit C

Page 1

1       UNITED STATES DISTRICT COURT

2       NORTHERN DISTRICT OF CALIFORNIA

3

4       PENDING IN THE UNITED STATES

5              DISRTICT COURT

6       EASTERN DISRTICT OF PENNSYLVANIA

7       (JPF) No. 202CV02943

8       ----------------------------------

9       VANGUARD IDENTIFICATION SYSTEMS,

10      INC.,

11              Plaintiff,

12      vs.

13      RONNIE E. GOADE, SR., et al.,

14              Defendants.

15      ----------------------------------

16        TELECONFERENCED DEPOSITION OF

17              HUGH WILDER

18        SAN FRANCISCO, CALIFORNIA

19              June 10, 2004

20

21

22      REPORTED BY:   RICHARD M. RAKER,

23                     CSR NO. 3445

24

Page 82

1  institution takes a security interest
2  in the assets of a company, is there a
3  filing that is done --
4  A. Yes.
5  Q. -- a public record filing?
6  A. Yes.
7  Q. And where is that filing generally
8     done?
9  A. It is a UCC filing that's usually
10    done in the state and the county at --
11    of the operations of the business.
12 Q. And I just ask you to take a look at
13    Defendants' Exhibit 12 and 13.
14 A. Yes.
15 Q. And are those -- can you tell me what
16    those are?
17 A. These are -- Exhibit 12 is a UCC
18    filing by Heller Financial as agent
19    against all of the company's owned and
20    hereafter acquired assets of the
21    Stik/Strip Laminating Company in
22    Edmond, Oklahoma, that was filed in --
23    looks like June of 1998.
24 Q. And what is Defendants' Exhibit 13?

Page 83

1  A. 13 is a similar filing -- UCC filing
2     against Stik/Strip's assets by Heller
3     Financial filed with the Secretary of
4     State of Illinois.
5  Q. All right. So at the time -- let's
6     just go back for a moment to your
7     earlier statement that -- that Heller
8     was the, quote, senior secured lender,
9     closed quote. And that means that
10    Heller had the priority -- the first
11    priority over anybody else who would
12    seek to claim a right to the assets of
13    DocuSystems or Stik/Strip; is that
14    fair to say?
15 A. That's fair to say.
16 Q. All right. So at the time of this
17    judgment, which we looked at before,
18    Defendants' Exhibit 20, Heller had a
19    security interest or a priority
20    interest to all of the assets of
21    DocuSystems and Stik/Strip; is that
22    right?
23 A. That is correct.
24 Q. Now, at that time, the July of 2000

Page 84

1  time frame, do you recall how much
2  money DocuSystems owed to the bank
3  group that was run by Heller
4  Financial?
5  A. In the neighborhood of 55 million
6     dollars.
7  Q. And do you recall how much the sale
8     of DocuSystems' assets realized for
9     the bank group?
10 A. Yes, I do.
11 Q. And what was that amount?
12 A. 18 million dollars.
13 Q. Of which about 2 million was the
14    sale of the assets of Stik/Strip?
15 A. Yes.
16 Q. And so did DocuSystems have any
17    money or assets left over to satisfy
18    this judgment that was entered into?
19    That's Defendants' Exhibit 20.
20 A. None that I didn't have a security
21    interest in.
22 Q. And did you sell all the assets
23    that you had a security interest in?
24 A. Yes, I did. We did.

Page 85

1  Q. You mentioned at one point that you
2     didn't know Mr. Goade, you'd never
3     dealt with Mr. Goade, and had only
4     recently spoken to Mr. Goade with
5     respect to his asking you to be a
6     witness in this case.
7              But you did say that you
8     had some dealings with the board of
9     DocuSystems, or did you not have
10    dealings with the board of
11    DocuSystems?
12 A. I had dealings with the
13    representatives of the board of
14    DocuSystems.
15 Q. Did you know whether Mr. Goade was
16    ever a member of the board of
17    directors of DocuSystems?
18 A. I don't know. I don't recall.
19 Q. I'll just ask you to take a look at
20    Defendants' Exhibit 14.
21 A. Okay.
22 Q. I take it you've never seen
23    Defendants' Exhibit 14 before?
24 A. No.

Page 66

1  A. None that I can recall.
2  Q. What I'm really getting at is whether
3     there was any purpose to feather Mr.
4     Goade's nest in some way or to benefit
5     Mr. Goade to the detriment of maybe
6     other purchasers who would have been,
7     you know, a higher bid or more
8     attractive just because of some
9     favoritism to Ron Goade. Is there
10    anything like that going on in this
11    transaction?
12 A. Absolutely not.
13 Q. Did Heller Financial have any
14    loyalties to Ron Goade?
15 A. No.
16 Q. Did Heller Financial have any
17    particular interest in seeing that Ron
18    Goade was benefited by this
19    transaction to Heller's detriment?
20 A. No.
21 Q. Now, were you ever aware of a lawsuit
22    by Vanguard Identification Systems
23    against either Stik/Strip or
24    DocuSystems relating to a patent

Page 67

1     infringement claim?
2  A. I became aware of the lawsuit in the
3     waning months of the case.
4  Q. And what was your understanding or
5     knowledge of the lawsuit?
6  A. I had very limited knowledge on the
7     lawsuit. Most of the conversations
8     that I had concerning the lawsuit was
9     the company requesting dollars in
10    their budget that would be necessary
11    to defend the lawsuit again towards
12    the end of the case.
13 Q. The company requesting the money to
14    budget for defending the lawsuit is
15    DocuSystems?
16 A. Yes.
17 Q. So DocuSystems was seeking money from
18    Heller to pay for DocuSystems' legal
19    defense of the case?
20 A. The company was presenting us budgets
21    on a weekly basis that forecasted
22    negative cash from its operations.
23    One of the items that was
24    increasing -- or that was part of the

Page 68

1     reason -- that was in their budget for
2     a cash expenditure was money to defend
3     this case.
4  Q. And what was Heller's reaction to
5     DocuSystems' budget for cash to defend
6     the Vanguard litigation?
7  A. We rejected the budget. We did not
8     get into specifics as far as what the
9     company could and could not spend
10    money on. We refused to provide
11    additional capital at the levels that
12    the company was requesting us to
13    provide.
14 Q. And was that specific to the Vanguard
15    litigation or just in general to the
16    budget as an entirety?
17 A. It was in general to the budget.
18 Q. And I think you mentioned earlier
19    that the company was bleeding cash,
20    and at the point that the assets were
21    sold off, the company was at the point
22    where it was about to shut its doors.
23    Is that a fair summary of your
24    testimony?

Page 69

1  A. That's a fair summary.
2  Q. So would it be a fair to say, then,
3     that it was questionable whether
4     DocuSystems had the financial cash to
5     pay for the continued defense of the
6     Vanguard litigation?
7  A. Yes.
8  Q. Were you aware of where -- what the
9     status was of the Vanguard litigation
10    at or around the time of July of 2000?
11 A. I was aware that a settlement had been
12    reached as far as the disposition of
13    the case or that a -- let me back up.
14       I was aware that
15    conversations were occurring between
16    the two parties towards a disposition
17    of the case, but I am unsure as to
18    when that settlement or agreement was
19    reached in reference to our actions
20    under the foreclosure agreements.
21 Q. Well, let me show you -- or ask you
22    to take a look at a document that was
23    marked previously as Defendants'
24    Exhibit 17.

18 (Pages 66 to 69)

Page 126

```
 1   STATE OF CALIFORNIA    )
 2                          ) ss.
 3   COUNTY OF SAN FRANCISCO )
 4
 5
 6        I, the undersigned, declare under
 7   penalty of perjury that I have read the
 8   foregoing transcript, and I have made any
 9   corrections, additions, or deletions that
10   I was desirous of making; that the
11   foregoing is a true and correct transcript
12   of my testimony contained therein.
13        EXECUTED this _____ day of
14   _____, 2004, at
15
16   _____, _____.
17      (City)           (State)
18
19
20   _____
21   HUGH WILDER
22
23
24
```

Page 128

```
 1           REPORTER'S CERTIFICATE
 2
 3
 4
 5        I, RICHARD M. RAKER, CSR #3445,
 6   Certified Shorthand Reporter, certify:
 7        That the foregoing proceedings were
 8   taken before me at the time and place
 9   therein set forth, a which time the
10   witness was put under oath by me;
11        That the testimony of the witness
12   and all objections made at the time of the
13   examination were recorded stenographically
14   by me and were thereafter transcribed;
15        That the foregoing is a true and
16   correct transcript of my shorthand notes
17   so taken.
18        I further certify that I am not a
19   relative or employee of any attorney or of
20   any of the parties nor financially
21   interested in the action.
22
23
24
```

Page 127

```
 1             ERRATA
 2
 3   PG/LN  NOW READS:   SHOULD READ:
 4   _____
 5   _____
 6   _____
 7   _____
 8   _____
 9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22   _____
23   _____
24   _____
```

Page 129

```
 1        I declare under penalty of perjury
 2   under the laws of the State of California
 3   that the foregoing is true and correct.
 4
 5        Dated this 16th day of June, 2004.
 6
 7
 8   _____
 9   RICHARD M. RAKER, C.S.R. No. 3445
```