IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VANGUARD IDENTIFICATION SYSTEMS, INC.**, | : <br> : <br> : **CIVIL ACTION** <br> : <br> Plaintiff, : <br> : **NO. 02-2943** <br> : <br> v. : <br> : <br> **RONNIE E. GOADE, SR.**, et. al. : <br> : <br> Defendants. : |

# ORDER

**AND NOW**, this _____ day of _____, 2004, in consideration of Plaintiff's Motion for Partial Summary Judgment, and all papers in support thereof and in opposition thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. Judgment is hereby entered in favor of Vanguard Identification Systems, Inc. and against Defendant REG Oklahoma Acquisition, LLC in the amount of $2 million plus interest from July 10, 2000.

BY THE COURT:

_____
                              J.,

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VANGUARD IDENTIFICATION SYSTEMS, INC.**, | : <br> : <br> : <br> :     CIVIL ACTION <br> : <br> :     NO. 02-2943 <br> : <br> : <br> : <br> : <br> : |
| Plaintiff, | |
| v. | |
| **RONNIE E. GOADE, SR.**, et. al. | |
| Defendants. | |

## **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT**

Plaintiff Vanguard Identification Systems, Inc., by and through undersigned counsel, respectfully moves for partial summary judgment for the reasons set forth in the accompanying Memorandum.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

DJP2105

By: _____
George Bochetto, Esquire
David J. Perlman, Esquire
1524 Locust Street
Philadelphia, PA 19102
Ph: (215) 735-3900
Fx: (215) 735-2455

Date: August 18, 2004

Attorneys for Plaintiff
Vanguard Identification Systems, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VANGUARD IDENTIFICATION SYSTEMS, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **RONNIE E. GOADE, SR.**, et. al. <br><br> Defendants. | CIVIL ACTION <br><br> NO. 02-2943 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGEMENT**

**I.   INTRODUCTION**

On July 14, 2000, four days after this Court entered a $2 million stipulated judgment ("Judgment") in *Vanguard Identification Systems, Inc.* ("Vanguard") *v. Stik/Strip Laminating, Inc.* ("Stik/Strip"), (E.D. Pa. No. 97-6790) all of the assets of Stick/Strip were transferred in a foreclosure sale, unbeknownst to Vanguard, to Stik/Strip's original owner, Ron E. Goade, Sr.  The $2 million purchase price went not to the judgment creditor, Vanguard, but to Stik/Strip's lender. As a result of the sale, Goade walked away with the same company he owned when Vanguard initiated *Vanguard v. Stik/Strip*, leaving Vanguard with an unsatisfied judgment to which the Defendants had consented days earlier.

The purpose of this lawsuit is to collect the $2 million stipulated judgment plus interest, and the purpose of this partial summary judgment  motion is to obtain a judgment based on one count about  which there can be no factual dispute, Vanguard's successor liability claim.  As a matter of law, this Court should now enter a $2 million judgment plus interest against the Goade-owned entity

that admittedly succeeded to substantially all of the assets of Stik/Strip and continued its operations, REG Oklahoma Acquisition, LLC ("REG").

## II.   STATEMENT OF FACTS

*Vanguard v. Stik/Strip* was a patent infringement action ("Patent Action") initiated on November 4, 1997.  At the time, Stik/Strip was owned by the Ron E. Goade Revocable Trust, an estate planning device for which Ron E. Goade, Sr. ("Goade") is the trustee and over which he has complete control.  See Deposition of Ron E. Goade, Sr. ("Goade Deposition"), attached hereto as Exhibit "A" at 67 (confirming that when the company was sold, the cash went to the Trust).  The Patent Action involved a number of memorable shanningans on the part of Stik/Strip.  Notably, when Vanguard's lawyer, Gary A. Rosen, Esquire, traveled to Stik/Strip's Oklahoma plant to inspect its manufacturing equipment since the manufacturing process was at issue, Stik/Strip had covered all the equipment in white sheets.  Deposition of Gary A. Rosen ("Rosen Deposition") at 92-93, attached hereto as Exhibit "B."  There was nothing to inspect.  Under this Court's sanction Order, Stik/Strip paid for Mr. Rosen's travel expenses.  *Id.*

Then Stik/Strip filed a frivolous summary judgment motion based on a letter Vanguard's attorneys had written before suit was filed.  The letter stated that the case would ultimately not be fought over certain independent patent claims.  Stik/Strip turned the letter on its head – apart from the fact that the letter did not constitute determinative evidence – and argued that, because the attorneys had promised that independent claims would not be at issue, there could be no issue over dependent claims.  This elicited a prompt judicial rebuke: "stop playing games." *Id.* at 16-17.  Stik/Strip backed down and stipulated to infringement, and, ultimately, on July 10, 2000, to the Judgment.  Stipulation and Order, attached hereto as Exhibit "C," Patent Action Docket, attached

hereto as Exhibit "D" at #36, and Judgment, attached hereto as Exhibit "E" and Docket at #80.

But well before the Judgment was entered, on May 29, 1998, an event occurred that is significant to this Motion. Goade sold Stik/Strip to Docusystems, Inc. ("Docusystems") for approximately $10 million, $8.26 of which was paid in cash, the remaining consideration being a note and Docusystems stock. In order to finance this and other mergers, Docusystems borrowed approximately $60 million from Heller Financial, Inc. ("Heller"), and Heller took a security interest in all of the assets of Docusystems, including the assets of Stik/Strip. As explained in the First Amended Complaint and evidenced by the correspondence attached thereto, Vanguard asked Stik/Strip whether the transaction would result in the assets of Stik/Strip being encumbered. For if they were to be encumbered, Vanguard would have, as it explained to Stik/Strip, sought an injunction to set aside a portion of the $8.26 cash sales proceeds and/or have named Goade as an individual defendant. But Vanguard received a false answer, which Stik/Strip's attorneys attributed to Goade, that the assets would not be encumbered. This misrepresentation, though relevant as background to the instant Motion, is the subject of Vanguard's fraud claim. What is most pertinent here is the fact that Heller took a security interest in Stik/Strip's assets, creating the basis for Goade re-purchasing Stik/Strip in July, 2000 in a foreclosure sale, and, in the process, evading the Judgment.[1]

Defendants cannot deny that REG is the functional successor to Stik/Strip. First and foremost, Vanguard served Requests for Admission covering this issue. In response to the First Set

---

[1] After the sale to Docusystems, Goade was employed as the Director of Business Development of Stik/Strip and was a Member of the Board of Directors of Docusystems, until he was terminated on October 22, 1999.

of Requests for Admission, Defendants admitted that REG acquired Stik/Strip's real properties in both Edmond and Oklahoma City, Oklahoma. Defendants' Response to Plaintiffs' First Set of Requests for Admission, attached hereto as Exhibit "F" at 3; see also Foreclosure Agreement, also Goade Deposition Exhibit 18, attached hereto as Exhibit "G" at ¶ 2. Further, Defendants admitted that REG acquired all of the plant and equipment located at those sites. Response to First Request for Admission at Response 4.

Although it was unnecessary given these comprehensive admissions concerning the real property and operating assets, Plaintiffs followed up with their Second Set of Requests for Admission on February 3, 2004, which are deemed admitted since Defendants served no response.[2] Second Set of Requests for Admission, attached hereto as Exhibit "H." The Second Set of Requests for Admission establish with more particularity that:

    1.    On or about July 14, 2000, substantially all of the assets of Stik/Strip Laminating Company, Inc. were sold to REG Oklahoma Acquisition, LLC.

    2.    On or about July 14, 2000, the following assets of Stik/Strip Laminating Company, Inc. were sold to REG Oklahoma Acquisition, LLC:

        a.    All inventory (including, without limitation, raw material, work in process, finished goods, service parts, and supplies);

        b.    all furniture, art work, fixtures, equipment (including office equipment), machinery, parts, computer hardware, tools, dies, jigs, patterns, molds, automobiles and trucks, and all other tangible personal property (other than inventory);

        c.    all trade accounts receivable, notes receivable, negotiable

---

[2] Defendants cannot claim that the Requests were never received and that they never knew they existed since they were also served with a Third Set of Requests, which, by their very title, indicated that there was indeed a Second Set. As stated in the Affidavit of David J. Perlman, Esquire, attached hereto as Exhibit "L," at ¶ 3(H), Defendants did not respond to the Second Set of Requests.

instruments, and chattel paper;

      d.    all rights against suppliers under warranties covering any of Stik/Strip Laminating Company, Inc.'s tangible assets arising from and after the closing of REG Oklahoma Acquisition, LLC's purchase of Stik/Strip Laminating Company, Inc.;

      e.    all intellectual property rights, including, without limitation, patents and applications therefor, know-how, unpatented inventions, trade secrets, secret formulas, business and marketing plans, copyrights and applications therefor, trademarks and applications therefore, service marks and applications therefor, trade names and applications therefor, trade dress, and names and slogans used by Stik/Strip Laminating Company, Inc. (including, without limitation, the names "SSI," "SSI Custom Data Cards," "SSI Photo I.D." and Stik/Strip Laminating Company, Inc.'s corporate name), and all goodwill associated with such intellectual property rights, provided, however, that, for the period ending 180 days after the closing of REG Oklahoma Acquisition, LLC's purchase of Stik/Strip Laminating Company, Inc., Stik/Strip Laminating Company, Inc. may use the name "Stik/Strip Laminating Company, Inc." in connection with the winding up of its and its parent's business affairs;

      f.    all license agreements, distribution agreements, sales representative agreements, service agreements, supply agreements, franchise agreements, computer software agreements, and technical service agreements to which Stik/Strip Laminating Company, Inc. is a party;

      g.    all customer lists and customer records and information;

      h.    all books and records, including, without limitation, blueprints, drawings and other technical papers, payroll, employee benefits, accounts receivable and payable, inventory, maintenance, and asset history records, ledgers, and books of original entry, all insurance records and OSHA and EPA files;

      i.    all rights in connection with prepaid expenses with respect to the assets listed in this Request for Admission;

      j.    all computer software, including all documents and sources codes with respect to such software, and all licenses and leases of software;

      k.    all letterhead, sales and promotional materials, catalogues, and advertising literature;

      l.    all telephone numbers of Stik/Strip Laminating Company,

Inc.'s and all lock boxes to which Stik/Strip Laminating Company, Inc.'s account debtors remit payments;

      m.    Stik/Strip Laminating Company, Inc.'s rights, title and interest in the lease for certain storage space at 3601 S. Broadway, Suite 1000, Edmond, Oklahoma; and

      n.    the right, title and interest of Stik/Strip Laminating Company, Inc. in any non-disclosure agreements relating to the sale of the assets listed in this Request for Admission or the Business[3] and non-competition agreement relating to the Business, excluding any non-disclosure agreements and non-competition agreement to which both Stik/Strip Laminating Company, Inc. or any of its affiliates and Ronnie E. Goade, Sr. or any of his affiliates were, or are, parties.

Even if the Second Set of Requests for Admission were not deemed admitted, there could be no denying them. They are based on the July 14, 2000 Foreclosure Agreement, the document governing Heller's foreclosure and the sale of Stik/Strip to REG, at ¶ 2 and the attached Schedule 2-1.[4] Foreclosure Agreement.

In essence, all of the assets necessary to operate the business were transferred to REG.

---

[3]    "Business," as defined in the Requests, means the manufacture of plastic transaction cards (including, without limitation, all laminated and non-laminated transaction and identification cards with or without microchips and whether or not prepaid, including, without limitation, "smart," prepaid phone, debit, affinity, access, calling, banking, promotional and retail cards, and all related packaging); specialty tags and labels of the type being manufactured by Stik/Strip Laminating Company, Inc. on or about July 2000; personalization machines, including, without limitation, encoding machines; and the provision of services being provided on or about July 2000 or planned on or about July 2000 to be provided which are directly ancillary to the foregoing, it being understood that "Business" does not include the manufacture of paper and plastic tickets, passes and tags and related products for the airline and surface transportation business, or formerly carried on by DocuSystems, Inc., or Stik/Strip Laminating Company, Inc.'s other direct and interest affiliates.

[4]    While the First Set of Requests for Admission utilized the Foreclosure Agreement, the Second Set, which went unanswered, revised the specific Requests.

Heller retained only non-operating intangible assets – essentially, cash and accounts receivable.[5] Foreclosure Agreement at Schedule 2-1.

That substantially all of the assets of Stik/Strip were sold to REG was also stated in a letter Stik/Strip and Docusystems sent to Stik/Strip's creditors. June 27, 2000 Letter from Faye B. Feinstein, Esquire to Stik/Strip Creditors, Goade Deposition Exhibit 21, attached hereto as Exhibit "I." At his deposition, Goade agreed that his company, REG, purchased substantially all of the assets of Stik/Strip. Goade Deposition at 183.

The continuity between Stik/Strip and REG extends beyond just the real estate and operating assets. For one, the name under which they were doing business was functionally identical. Stik/Strip was known in the industry as "SSI," and its full doing-business-as name was "SSI Custom Data Cards." Goade Deposition at 126 - 127. After REG's purchase, Goade – instead of calling the company REG – began doing business as "SSI Technologies." Plaintiff's Response to Defendants' First Set of Admissions at Response No. 9; July 21, 2001 website printout, Goade Deposition Exhibit 20, attached hereto as Exhibit "J;" May 26, 2004 website printout, Goade Deposition Exhibit 19, attached hereto as Exhibit "K;" Goade Deposition at 175. While Goade claimed at his deposition that the substitution of "Technologies" for "Customer Data Cards" was somehow a distinguishing feature of the name, the manifest intent was to establish continuity with Stik/Strip by using the "SSI" name. Indeed, throughout the website, "SSI Technologies" is referred

---

[5] The Foreclosure Agreement lists one machine to be retained by Docusystems, a "custom magnetic stripping encoder." Foreclosure Agreement at Schedule 2-1. However, Defendants response to the Requests for Admission preclude consideration of the retention of this item, if indeed it has any significance, in any case. Separately, computer equipment that Goade expected to be transferred was stolen during the transition period. Goade Deposition at 167 - 176. Again, the Admissions preclude consideration of the computers which, in any case, are not significant since they were apparently stolen by a third-party.

to by the common shorthand of "SSI." Print-out of websites. What is more, both the July 25, 2001 and the May 26, 2004 website printouts, stand as admissions that Stik/Strip (publicly known and even defined on the website as "SSI") is the same as REG (also referred to as "SSI"). For example, the SSI Technologies website states "For over 30 years SSI has been the leader in card manufacturing," relying on the common trade name ("SSI) while acknowledging that the repurchased company is the same as Stik/Strip of decades ago. July 21, 2001 website printout at VAN 71. The "History of SSI Technologies" provided on then May 26, 2004 printout also admits to identity between the two companies.

They were identical in more than equipment, name, and the public personna presented by REG. For example, REG used Stik/Strip's phone numbers. Goade Deposition at 149. More importantly, it retained all of its employees, except one. *Id.* REG also sold, or attempted, to sell to all the same customers as Stik/Strip. Response to First Set of Requests for Admission at Response 8.

REG's purchase of some new equipment did not create a different company. For one, the equipment was not installed until eight or nine months later. *Id.* at 154-155. Moreover, the equipment was used to create a product that, to at least the end user, was identical to the existing product. Goade Deposition at 156-157. Further, when that equipment was installed, only a small percentage of the equipment received from Stik/Strip went off line. *Id.* at 155. Some of the new equipment REG has since stopped using. Goade Deposition at 154. Even after the new equipment was up and running, the company remained identical to Stik/Strip in the ways noted above.

### III.  ARGUMENT

**A.   As the Successor of Stik/Strip, REG is liable for the Judgment.**

There are significant exceptions to the general rule that when one company sells all of its assets to another the successor does not acquire the liabilities of the transferor merely because it acquired its assets.  Specifically, the transferee will be liable for the transferor's obligations where 1) the purchaser expressly or impliedly agrees to assume such obligation; 2) the transaction amounts to a consolidation or merger; 3) the purchasing corporation is merely a continuation of the selling corporation; or 4) the transaction was fraudulently entered into to escape liability.  *Raytech Corporation v. White*, 54 F. 3d. 187, n. 6 at 192 (3rd Cir. 1995); *Dawejko v. Jorgensen Steel Company*, 290 Pa. Super. 15, 18, 434 A. 2d. 106, 107 (1981).

The third exception listed above has given rise to the substantial continuity exception, which allows for the imposition of liability on a successor even where there is not identity of officers directors or shareholders; in general, the doctrine applies "where the public policy vindicated by recovery from the implicated assets is paramount to that supported by the traditional rules delimiting successor liability."   *United States of America v. Keystone Sanitation Company, Inc.*, 1996 WL 672891 (M.D. Pa.) at *5 quoting *United States v. Mexico Feed and Seed Co., Inc.*, 980 F. 2d 478, 487 (8th Cir. 1992); *Andritz Sprout-Bauer, Inc. V. Beazer East Inc.*, 12 F. Supp. 2d. 391, 404-405 (M.D. Pa. 1998); *United States v. Atlas Minerals and Chemicals, Inc.*, 824 F. Supp. 46, 49-50 (E.D. Pa. 1993): *Conway v. White Trucks*, 692 F. Supp. 442, 450-450 (M.D. Pa. 1988); *Dawejko*; See also, *Commonwealth v. Lavelle*, 382 Pa. Super. 3567, 555 A. 2d 218 (1989) (applying *de facto* merger doctrine under circumstances also subject to substantial continuity doctrine.)

In applying the substantial continuity doctrine – also known as the "continuity of enterprise

theory" – courts have weighed a number of factors. *Id.* The factors, none of which constitutes a requirement, were succinctly articulated in *United States of America v. Keystone Sanitation Company, Inc.* as follows:

   (1) retention of the same employees;

   (2) retention of the same supervisory personnel;

   (3) retention of the same production facilities in the same location;

   (4) production of the same product;

   (5) retention of the same name;

   (6) continuity of assets;

   (7) continuity of general business operations; and

   (8) whether the successor holds itself out as the continuation of the previous enterprise.[6]

In support of its list of factors, the *Keystone* court cited *United States v. Carolina Transformer Co.*, 978 F. 2d 832, 838 (4th Cir. 1992).

Significantly, that a transfer of assets occurs as a foreclosure sale under Article 9 of the Uniform Commercial Code, as in this case, does not insulate the purchaser of the assets from a successor liability claim. *Continental Insurance Company v. Schneider*, 2002 Pa Super 323, 810 A.2d 127 (2002). (Company that had purchased assets of debtor company from secured creditor pursuant to UCC was subject to successor liability claim.)  Thus, REG can find no refuge in the Uniform Commercial Code.

Clearly, all of the factors favor imposing liability on REG. It operated with all of the same

---

   [6]   Being a CERCLA case, *Keystone* added as a factor whether the transfer to the new corporation was an effort to avoid environmental liability.

employees as Stik/Strip, except one, Jeff Bainter ("Bainter"). Bainter was the on-site supervisory person prior to REG's July 10, 2000 repurchase, and naturally, he was replaced by Goade. Goade Deposition at 111-112. All other supervisory personnel were the same. Production took place at the same location, using the same facilities. The product line was the same, at least until new equipment was installed nine months later, and even then, the new equipment produced product that was identical to the end user and the old equipment was still used to produce the pre-existing product. REG used the same name and the same assets. It conducted substantially the same business and holds itself out to be the successor of Stik/Strip

The policy considerations underlying the substantial continuity doctrine strongly support a finding of successor liability in this case. Stik/Strip's admitted infringement of Vanguard's patents occurred when Goade owned and operated Stik/Strip, and the Patent Action was filed when Goade owned and operated Stik/Strip. Thus, from the policy viewpoint, it was mere happenstance that there was an interim owner, Docusystems. Because the business was reacquired by the original owner/operator, a finding of liability does not penalize an otherwise innocent business owner who happened to acquire the assets and business operations subject to a preexisting liability. Rather, the assets and operations landed in the lap of the responsible individual. In this case, successor liability would cause liability to follow not simply the assets and business operations that gave rise to the liability but also the individual. This is a particularly apt factual setting for application of the substantial continuing doctrine.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment should be granted.

                                      Respectfully submitted,

                                      **BOCHETTO & LENTZ, P.C.**

                                            DJP2105

                             By: _____
                                      George Bochetto, Esquire
                                      David J. Perlman, Esquire
                                      1524 Locust Street
                                      Philadelphia, PA 19102
                                      Ph: (215) 735-3900
                                      Fx: (215) 735-2455

Date: August 18, 2004                  Attorneys for Plaintiff
                                      Vanguard Identification Systems, Inc.

## CERTIFICATE OF SERVICE

I, David J. Perlman, Esquire, hereby certify that I caused to be served a true and correct copy of the Plaintiff's Motion for Partial Summary Judgment and Memorandum in support thereof upon counsel as follows:

By Hand Delivery:

>A. Richard Feldman, Esquire
>BAZELON, LESS & FELDMAN, P.C.
>1515 Market Street, Suite 700
>Philadelphia, PA 19102-1907

By Overnight mail:

>Marc L. Zaken, Esquire
>EDWARDS & ANGELL
>3 Stamford Plaza
>301 Tresser Boulevard
>Stamford, CT 06901

>BOCHETTO & LENTZ, P.C.
>DJP2105

>By:_____
>   David J. Perlman, Esquire

Date: August 18, 2004