## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| VANGUARD IDENTIFICATION SYSTEMS, INC., | : : : | |
| Plaintiff, | : : | **CIVIL ACTION** |
| v. | : : | **NO. 02-2943** |
| RONNIE E. GOADE, SR., et. al. | : : : | |
| Defendants. | : : | |

### <u>ORDER</u>

**_____AND NOW**, this _____ day of _____, 2004, in consideration of Plaintiff's Motion for Judgment As a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), or in the Alternative, for a New Trial Pursuant to Fed. R. Civ. P. 59, and all papers in support thereof and in opposition thereto, judgment is hereby entered in the amount of $2,596,209.58 in favor of Vanguard Identification Systems, Inc. against Ron E. Goade, Sr., the Ron E. Goade Trust, and Susan Goade.


**BY THE COURT:**


_____
_____    J.,

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **VANGUARD IDENTIFICATION SYSTEMS, INC.,** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | **NO. 02-2943** |
| v. | : | |
| | : | |
| **RONNIE E. GOADE, SR.,** et. al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S MOTION FOR JUDGMENT**
**AS A MATTER OF LAW PURSUANT TO Fed. R. Civ. P. 50(b), OR IN**
**THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO Fed. R. Civ. P. 59**

Plaintiff Vanguard Identification Systems, Inc., by and through undersigned counsel,

respectfully moves for judgment as a matter of law, or in the alternative, for a new trial for the

reasons set forth in the accompanying Memorandum.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

DJP2105

By: _____
George Bochetto, Esquire
David J. Perlman, Esquire
David P. Heim, Esquire
1524 Locust Street
Philadelphia, PA 19102
Ph: (215) 735-3900
Fx: (215) 735-2455

Date:                                      Attorneys for Plaintiff
                                               Vanguard Identification Systems, Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VANGUARD IDENTIFICATION SYSTEMS, INC., | : : : |
| Plaintiff, | : : **CIVIL ACTION** |
| v. | : **NO. 02-2943** : |
| RONNIE E. GOADE, SR., et. al. | : : : |
| Defendants. | : : |

**REPLACEMENT MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT
AS A MATTER OF LAW PURSUANT TO Fed. R. Civ. P. 50(b), OR IN
THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO Fed. R. Civ. P. 59**

Plaintiff, Vanguard Identification Systems, Inc. ("Vanguard), by and through undersigned

counsel, Bochetto & Lentz, P.C., hereby files the following Memorandum of Law in Support of

its Renewed Motion for Judgment as a Matter of Law ("Renewed JMOL") Pursuant to Fed. R.

Civ. P. 50(b):

## I.  INTRODUCTION

Vanguard is entitled to judgment in the amount of $2,597,074.14 based on existing jury

findings combined with the rulings as a matter of law that are the subject of this Motion.  As a

matter of law, the statute of limitations could not begin to run until Vanguard suffered damages

that would give rise to the claims in this action against the instant defendants, which could not

have been before July 10, 2000.  When that ruling on the statute of limitations is applied to the

jury's negligent misrepresentation finding, Vanguard is entitled to judgment against Ron E.

Goade, Sr. ("Goade") and the Goade Trust.[1]  With respect to successor liability, as a matter of

law, the evidence, including admissions, requires a finding against REG Oklahoma Acquisition,

LLC.   With respect to the damage amount, the only evidence in the record supports damages in

the amount of $2,597,074.14, not the $1,296,539.31 awarded by the jury.   Thus, Vanguard is

entitled to judgment against Goade, the Goade Trust, and REG in the amount of $2,597, 074.14.

In addition, Vanguard should be entitled, as a matter of law, to judgment based on fraud.

The only barrier to fraud-based liability is the jury's erroneous finding that Goade did not cause

his lawyer, Joseph P. Titterington, to send the letter containing the fraudulent misrepresentation.

But all of the evidence on point, and there is no contradictory evidence, shows that Goade was

the source of the misrepresentation.

Additionally, this Court should enter an order imposing a constructive trust over the

assets of Goade, his wife Susan Goade, and the Goade Trust.

Finally, Vanguard is entitled to a new trial because the Court intruded on the jury's fact-

finding duty by improperly directing it how to decide a factual issue.  As evident from a juror's

statement, this inappropriate directive prejudiced all of the jury's deliberations against Vanguard.

## II.  ARGUMENT

### A.    Standard for Rule 50(b) Renewed JMOL

The critical question in a motion for a renewed JMOL is whether, "viewing the evidence

in the light most favorable to the non-movant and giving it the advantage of every fair and

reasonable inference, there is [. . .]sufficient evidence from which a jury reasonably could find

---

[1]    Alternatively, Vanguard is entitled to a new trial because the jury question on the statute of limitations was incorrect and slanted toward Defendants.  The question sought a determination of when the misrepresentation occurred, not when Vanguard was injured.

liability." *CGB Occupational Therapy, Inc. v. RHA Health Services Inc.*, 357 F.3d 375, 383 (3d Cir. 2003)(citing *W.V. Realty Inc. v. Northern Ins. Co. of New York*, 334 F.3d 306, 311 (3d Cir.2003)).  Although such judgments are sparingly granted, "more than a scintilla of evidence is needed to sustain a verdict . . . . [and thus] judgment as a matter of law will be granted where the record is critically deficient of the minimum quantum of evidence in support of the verdict." *CGB Occupational*, 357 F.3d at 383 (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir.2003)).

Furthermore, JMOL may be entered even where the jury's verdict is supported by more than a scintilla of evidence.  For example, if "the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings," JMOL should be entered.  *Genzyme Corp. v. Atrium Medical Corp.*,  315 F.Supp.2d 552, 560-61 (D.Del. 2004)(quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed.Cir.1998)).

**B.    JMOL Should Have Been Granted As To Defendants' Statute Of Limitation Defense.**

At the close of the evidence, Vanguard's counsel moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), arguing that the statute of limitations defense should not be submitted to the jury and should be dismissed as a matter of law. Trial Trans., 9/24/04, attached hereto as Exhibit "A" at 99, 109-10.  Because the Court ultimately submitted the issue to the jury, Vanguard is renewing its Motion pursuant to Fed. R. Civ. P. 50(b), again requesting the statute of limitation defense be dismissed.  Once judgment as a matter of law is entered as to the statute of limitations defense, judgment must be entered in favor of Vanguard on its negligent misrepresentation claim because the jury found  Vanguard established all of the required

elements for such a claim.  Verdict Form, Section I, Interrogatory Nos. 4-5, attached hereto as

Exhibit "B."

1.    **Statute of Limitations Facts.**

On May 26, 1998, Vanguard's attorney in the underlying Patent Action,[2] Gary A. Rosen,

Esquire ("Rosen"), learning that the defendant in that action, SSI, was to be sold,  wrote SSI's

lawyer seeking:

> (2) confirmation that SSI's assets will not be encumbered or depleted by this
> transaction, and that there will be no material adverse impact on its balance sheet.

Rosen wrote that providing such information would obviate the need of, among other

things, seeking an "injunction against any disposition of sale proceeds pending final judgment in

this action."  *See Hoxworth v. Blinder Robinson & Co., Inc.*, 903 F. 2d 186 (3rd Cir. 1990)

(District court has power to protect potential future damages remedy by preliminary injunction.)

Titterington, relying on Goade, drafted a reply to Rosen's Letter.  It stated, in part:

> We have checked with our client and have been authorized to inform you of the
> following:
>
>                             \*    \*    \*
>
> 2.    The transaction involves a sale of stock and as far as is known to
> Ron Goade, Sr., there is nothing in the transactional documents
> which leads him to believe that SSI's assets will be encumbered or
> depleted by the sales transaction or that the sale will have a
> material adverse impact on SSI's balance sheet.

Of course, the transactional documents did indeed indicate that the assets would be

encumbered.  The security interests could not have been put in place, the leveraged buyout could

not have occurred, without their being encumbered.   Moreover, the jury found that Goade knew

---

[2]    The "Patent Action" is *Vanguard Id Systems, Inc. v. Stik/Strip Laminating Co., Inc.*, ("SSI") No. 97-CV-6790, a patent infringement action pending in this Court.

the assets were to be encumbered when he made the misrepresentation on May 26, 1998. Jury Verdict Form 1(a).

Three days later, on May 29, 1998, SSI was sold to Docysystems, Inc. Goade received $8 million in cash, a $1.36 million promissory note, and a 13 percent stake in Docusystems. All of the assets of SSI were encumbered to finance this and other purchases by Docusystems.

As a consequence of the fraudulent misrepresentation, Rosen did not seek the injunction threatened in his May 26, 1998 letter; thus, Goade's fraudulent misrepresentation benefitted Goade, as he well knew, by allowing him to pocket the $ 8 million without having a portion of it escrowed.

Clearly, after a certain point in time, even if Vanguard had discovered the fraud, the injunction would  not have been a viable alternative since, among other things, the $8 million would no longer be cash.  Moreover, even if it remained a viable remedy, it would not be the same remedy as this action, a damage action against different defendants.

In September, 1999, Docusystems had agreed with Vanguard to settle the Patent Action for $2.5 million, but when Docusystems informed Goade, he would not agree to the settlement.

On July 10, 2000, judgment was entered in the Patent Action against SSI and Docusytems in the amount of $2 million ("Judgment").  Four days later, on July 14, 2000, Docusystems' secured lender foreclosed and sold the assets of SSI back to Goade for $2 million.

## 2.    <u>Vanguard Must Prevail On the Statute of Limitations.</u>

Although Defendants argued that Vanguard's fraud and negligent misrepresentation claims should be dismissed because the Complaint was filed more than two years after the fraudulent May 26, 1998 letter, they ignored that damages are an essential element of each cause

of action and that Vanguard was not damaged for purposes of bringing this action against these defendants until the $2 million Judgment was entered and Vanguard was unable to collect as a result of the foreclosure.[3]

There can be no dispute that damages are an element of all causes of action.  *See, e.g., Donahue v. W.C.A.B.* (Philadelphia Gas Works), 2004 WL 1631424 (Pa. Cmlwth.) (Damages element of fraud.); *Goldstein v. Phillip Morris, Inc.*, 2004 PA Super 260, 854 A.2d 585 (2004) (same); *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882 (1994) (In negligent misrepresentation claim, injury must result to one relying on representation.); *McDermott v. Party City Corp.*, 11 F.Supp.2d 612 (E.D. Pa. 1998) (Injury is an element in a breach of fiduciary duty claim.) Further, there also can be no dispute that a cause of action does not begin to accrue until the element of damages is ascertainable.  *See, e.g., Huff v. Nationwide Ins. Co.*, 167 B.R. 53, 59 (W.D.Pa. 1992)(Fraud limitations period does not begin to accrue until plaintiff's suffers harm or damage); *Dicicco v. Willow Grove Bank*, 308 F.Supp.2d 528, 534 (E.D. Pa. 2004)("In Pennsylvania, a fraud cause of action accrues on the date the injury was sustained, or when 'a party has a legal right to institute suit and can maintain a successful action.'");  *Ross v. Johns-Manville Corp.*, 766 F. 2d. 823, 826 (3d Cir. 1985) ("A claim arising under Pennsylvania law accrues at 'the occurrence of the final significant event necessary to make the claim suable,'" (citing *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive*, 372 F. 2d. 18, 20 (3d Cir. 1966));

---

[3]    Count I was a claim for fraud; Count II, conspiracy to defraud; Count III, promissory estoppel or negligent misrepresentation; Count VI, breach of fiduciary duty; Count VII, an accounting.

*Baron v. Allied Artists Pictures Corp.*, 717 F. 2d. 105 (Cause of action accrues only when it could be prosecuted to a successful conclusion – in tort, that is when damages occur.)[4]

In the somewhat analogous situation of a claim for indemnity, contribution, or reimbursement from a third party, the cause of action accrues for statute of limitations purpose only *after* judgment or settlement of the underlying suit because that is the time damages become ascertainable. *See Shocey, ex rel Litt v. Duck Head Apparel Co., Inc.*, 4a F. Supp. 413 (M.P. Pa. 1999); *Site-Blauvelt Engineers, Inc. v. First Union Corp.*, 153 F. Supp. 2d. 707 (E.D. Pa. 2001).

Although it is not controlling authority, the court's discussion of the accrual issue in *New York City Transit Authority v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 85-86, 714 N.Y.S.2d 232, 237 (N.Y.A.D. 2000) is instructive given the current record.  In *Eisen*, the Transit Authority filed suit against several lawyers and law firms for fraud in connection with two prior personal injury actions – the *Robbins* and *Nieves* cases – both of which were filed against the Transit Authority. It was alleged that the lawyers fraudulently induced witnesses to give false testimony at trial in support of the plaintiffs' cases in the underlying personal injury actions.  The *Robbins* case resulted in a $750,000 jury verdict, while the *Nieves* case resulted in a million dollar settlement.

---

[4]     Not surprisingly, other jurisdictions follow the same line of reasoning as Pennsylvania.  That is, the limitations period for fraud claims does not begin to accrue until the plaintiff as incurred "ascertainable damages."  *See, e.g., Estate of Kalwitz v. Kalwitz*, 717 N.E.2d 904, 914 (Ct. App. Ind. 1999)("Thus, the statute runs when the resultant damage of a [fraudulent] act is susceptible of ascertainment."); *Holmin v. TRW, Inc.*, 330 N.J. Super. 30, 36, 748 A.2d 1141, 1145 (App. Div. 2000)("Until a plaintiff has suffered 'damages,' therefore, he cannot maintain a suit for damages based on fraud since his cause of action has not yet accrued.  It will accrue only when 'damage' is inflicted."); *Kansas Wastewater, Inc. v. Alliant Techsystems, Inc.*, 257 F.Supp.2d 1344, 1349 (D.Kan. 2003)(Fraud cause of action does not begin to accrue until "plaintiff suffers substantial injury (that is reasonably ascertainable)"); *New York City Transit Authority v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 85-86, 714 N.Y.S.2d 232, 237 (N.Y.A.D. 2000)(". . . . a cause of action for fraud cannot accrue until every element of the claim, *including injury*, can truthfully be alleged . . . .")

-7-

In the Transit Authority's subsequent fraud case, the lawyers argued that the limitations period began to accrue at the time of the misrepresentations.  Noting that a fraud cause of action "cannot accrue until every element of the claim, including injury, can truthfully be alleged," the court held that the "fraud claim accrued no earlier than the settlement of the *Robbins* litigation, and the satisfaction of the judgment in *Nieves*, both of which occurred within six years of the filing of the instant complaint."  *Id.* at 85-86, 237.

Here, like the situation in *Eisen*, Vanguard's resultant damage from the fraudulent May 28, 1998 letter (which, like *Eisen*, occurred during the litigation) did not materialize until the underlying patent litigation ended and judgment was entered in July, 2000.  While the encumbering of SSI's assets impacted Vanguard in the patent litigation (just as the false representations impacted the defendants in *Eisen*), Vanguard had no basis for collection from Goade until the Judgment was entered on July 10, 2000.  It was not until the Judgment that Vanguard was damaged for purposes of the claims in **this** action.  It was the judgment, and only the judgment, that provided a legal entitlement to money.

Indeed, as of September 1999, around the time Vanguard is alleged to possess the Dunn & Bradstreet reports in its file that showed the security interest, Vanguard had settled the case with Docusystems – although Goade rejected the settlement. Plaintiff's Exhibit 50.  Thus, even at that pre-judgment moment, there might have been no damages whatsoever in this action.  The uncertainty of ongoing litigation – particularly the uncertainty of a complicated patent case – and the possibility that the case might settle or not succeed at trial foreclosed Vanguard's ability to prosecute a fraud claim against a different defendant before the underlying patent case concluded.

In sum, there simply was no statute of limitations issue for the jury to consider.  As a matter of law, the limitations period on Vanguard's fraud claim could not have accrued before Judgment was entered on July 10, 2000.  Because the lawsuit was initiated on May 16, 2002, Vanguard filed within two years of when its claims accrued. The issue should not have been submitted to the jury, and Vanguard should have been granted judgment as to this defense as a matter of law.

> **C.      In The Alternative, A New Trial Should Be Granted Because The Way In Which The Statute Of Limitations Issue Was Submitted To The Jury On The Verdict Form Was Erroneous.**

In the alternative, assuming, *arguendo*, that the statute of limitations issue involved factual issues that needed to be resolved by the jury, a new trial should be awarded because the wording of the interrogatory on the Verdict Form was erroneous and favored Defendants. Where, as here, the wording of the jury interrogatories are legally erroneous, a new trial under Fed.R.Civ.P. 59 is warranted.  *See, e.g., Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998)("Because the interrogatories and corresponding instructions did not properly state the elements [of the legal issue], we conclude that a new trial [. . .]  is required.")(*citing NBO Indus. Treadway Cos. v. Brunswick Corp.*, 523 F.2d 262, 275 (3d Cir.1975), *rev'd on other grounds*, 429 U.S. 477 (1977)).

As set forth above, "a fraud cause of action accrues on the date the injury was sustained." *Dicicco*, 308 F.Supp.2d at 534.  Thus, the key question on the statute of limitations issue in this case was:  at what point in time did Vanguard sustain harm or injury as a result of the misrepresentation?  Instead of asking this question, which focuses on when damages were

sustained, the Court framed the jury interrogatory by erroneously focusing the jury's attention on a completely irrelevant issue, *i.e.*, the time Vanguard became aware of the misrepresentation:

> If your answer to any of the seven previous questions is "Yes," did Vanguard learn (or, if Vanguard acted reasonably, should it have learned) of the misrepresentation before May 15, 2000?

Exhibit B, Verdict Form, Section III.

The Court's interrogatory focused on an *irrelevant* question – when the misrepresentation was made or Vanguard knew it was made – and ignored the only relevant question – when Vanguard was damaged such that it could file suit. The latter question – the time when Vanguard was damaged – was relevant to the limitations issue (to the extent there was any issue), but the former question was not, and moreover, favored Defendants. A cause of action does not exist and therefore does not accrue until "a party has a legal right to institute suit and can maintain a successful action." *Dicicco*, 308 F.Supp.2d at 534. There is no legal right to sue until a party suffers damage, and that is the point at which a limitations period begins to run.

Because the Court's interrogatory focused the jury on a completely irrelevant question, the jury's answer to that interrogatory cannot be permitted to stand. The relief for such an error is a new jury trial in which the jury is given the proper legal issue to consider. Thus, to the extent the limitations issue is not one of law (although it clearly is), a new trial should be granted so the jury has the opportunity to answer the relevant legal issue.

### D.    JMOL Should Have Been Granted As to Successor Liability.

In addition to the statute of limitations defense, Vanguard's counsel also moved for judgment as a matter of law pursuant to Rule 50(a) concerning Defendants' successor liability. Trial Trans., 9/24/04 at 99-105. Because the Court ultimately submitted the issue to the jury,

-10-

Vanguard is moving again pursuant to Rule 50(b), renewing its Motion for judgment as a matter of law on Defendants' successor liability.

### 1.    Successor Liability Facts.

REG is the functional successor to Stik/Strip.  REG acquired Stik/Strip's real properties in both Edmond and Oklahoma City, Oklahoma.  Further, REG acquired all of the plant and equipment located at those sites. Plaintiff's Exhibit 61 at Response 4.

REG acquired substantially all of the assets of Stik/Strip including:

1.    All inventory;

2.    All furniture, art work, fixtures, and equipment;

3.    All trade accounts receivable, notes receivable, negotiable instruments, and chattel paper;

4.    All license agreements, distribution agreements, sales representative agreements, service agreements, supply agreements, franchise agreements, computer software agreements, and technical service agreements to which Stik/Strip Laminating Company, Inc. is a party;

5.    All customer lists and customer records and information;

6.    All books and records;

7.    All rights in connection with prepaid expenses with respect to the assets listed in this Request for Admission;

8.    All computer software, including all documents and sources codes with respect to such software, and all licenses and leases of software;

9.    All letterhead, sales and promotional materials, catalogues, and advertising literature;

10.    All telephone numbers of Stik/Strip Laminating Company, Inc.'s  and all lock boxes to which Stik/Strip Laminating Company, Inc.'s account debtors remit payments; and

      11.     Stik/Strip Laminating Company, Inc.'s rights, title and interest in the lease for certain storage space at 3601 S. Broadway, Suite 1000, Edmond, Oklahoma.

Plaintiff's Exhibit 62 (Second Set of Requests for Admission were not answered and deemed admitted); Goade Testimony.

In essence, all of the assets necessary to operate the business were transferred to REG.

But the continuity between Stik/Strip and REG extends beyond just the real estate and operating assets. For one, the name under which they were doing business was functionally identical. Stik/Strip was known in the industry as "SSI," and its full doing-business-as name was "SSI Custom Data Cards." After REG's purchase, Goade – instead of calling the company REG – began doing business as "SSI Technologies." This was shortened to SSI. Plaintiff's Exhibit 59 and 66. Indeed, both the July 25, 2001 and the May 26, 2004 "REG" website printouts, stand as admissions that Stik/Strip (publicly known and even defined on the website as "SSI") is the same as REG (also referred to as "SSI"). For example, the SSI Technologies website states "For over 30 years SSI has been the leader in card manufacturing," relying on the common trade name ("SSI") while acknowledging that the repurchased company is the same as Stik/Strip of decades ago. The "History of SSI Technologies" provided on the September 2004 printout also admits to identity between the two companies.

REG also retained all of its employees, except one.

Finally, there is shareholder continuity. Goade and/or his Trust owned thirteen percent (13%) of Docusystems, which owned SSI, and Goade and/or his Trust own one-hundred percent (100%) of REG.

-12-

2.    **Successor Liability Argument.**

The doctrines that impose successor liability on a corporation that purchased a predecessor's assets are flexible in that they identify a number of factors to be considered, no single factor being determinative.  The facts in this case are uniquely appropriate for imposing liability for the Judgment entered against SSI and Docusystems on REG.  As Vanguard has observed, finding REG liable does not punish a stranger to the wrongful conduct, as successor liability typically risks doing.  In this case, the liability would not follow merely a set of assets, but also an individual corporate owner whose actions gave rise to the original wrongdoing and to the patent infringement liability.

Liability should be imposed under the substantial continuity doctrine and also under the more general rule, from which the substantial continuity doctrine was derived, of *de facto* succession – *i.e.* that the purchasing corporation is merely a continuation of the predecessor.

There are significant exceptions to the general rule that when one company sells all of its assets to another the successor does not acquire the liabilities of the transferor merely because it acquired its assets.  Specifically, the transferee will be liable for the transferor's obligations where 1) the purchaser expressly or impliedly agrees to assume such obligation; 2) the transaction amounts to a consolidation or merger; 3) the purchasing corporation is merely a continuation of the selling corporation; or 4) the transaction was fraudulently entered into to escape liability.  *See Raytech Corporation v. White*, 54 F. 3d. 187, n. 6 at 192 (3rd Cir. 1995); *Dawejko v. Jorgensen Steel Company*, 290 Pa. Super. 15, 18, 434 A. 2d. 106, 107 (1981).

The third exception listed above has given rise to the substantial continuity exception, which allows for the imposition of liability on a successor even where there is not identity of

officers, directors or shareholders.  In general, the doctrine applies "where the public policy vindicated by recovery from the implicated assets is paramount to that supported by the traditional rules delimiting successor liability."  *United States of America v. Keystone Sanitation Company, Inc.*, 1996 WL 672891 (M.D. Pa.) at *5 quoting *United States v. Mexico Feed and Seed Co., Inc.*, 980 F. 2d 478, 487 (8th Cir. 1992); *Andritz Sprout-Bauer*, *Inc. V. Beazer East Inc.*, 12 F. Supp. 2d. 391, 404-405 (M.D. Pa. 1998); *United States v. Atlas Minerals and Chemicals, Inc.*, 824 F. Supp. 46, 49-50 (E.D. Pa. 1993): *Conway v. White Trucks*, 692 F. Supp. 442, 450-450 (M.D. Pa. 1988);  *Dawejko*; See also, *Commonwealth v. Lavelle*, 382 Pa. Super. 3567, 555 A. 2d 218 (1989) (applying *de facto* merger doctrine under circumstances also subject to substantial continuity doctrine.)

In applying the substantial continuity doctrine – also known as the "continuity of enterprise  theory" – courts have weighed a number of factors.  *Id.*  The factors, none of which constitutes a requirement, were succinctly articulated in *United States of America v. Keystone Sanitation Company, Inc.* as follows:

(1) retention of the same employees;

(2) retention of the same supervisory personnel;

(3) retention of the same production facilities in the same location;

(4) production of the same product;

(5) retention of the same name;

(6) continuity of assets;

(7) continuity of general business operations; and

(8) whether the successor holds itself out as the continuation of the previous

enterprise.[5]

In support of its list of factors, the *Keystone* court cited *United States v. Carolina Transformer*

*Co.*, 978 F. 2d 832, 838 (4th Cir. 1992).

Significantly, that a transfer of assets occurs as a foreclosure sale under Article 9 of the

Uniform Commercial Code, as in this case, does not insulate the purchaser of the assets from a

successor liability claim.  *See Continental Insurance Company v. Schneider*, 2002 Pa Super 323,

810 A.2d 127 (2002)(Company that had purchased assets of debtor company from secured

creditor pursuant to UCC was subject to successor liability claim.)   Thus, REG can find no

refuge in the Uniform Commercial  Code.[6]

Clearly, all of the factors favor imposing liability on REG.  It operated with all of the

same employees as Stik/Strip, except one, Jeff Bainter ("Bainter").  Bainter  was the on-site

supervisory person prior to REG's July 10, 2000 repurchase, and naturally, he was replaced by

Goade.  All other supervisory personnel were the same.  Production took place at the same

location, using the same facilities.  REG used the same name and the same assets.  It conducted

substantially the same business and holds itself out to be the successor of Stik/Strip.

The policy considerations underlying the substantial continuity doctrine also strongly

support a finding of successor liability in this case.  Stik/Strip's admitted infringement of

Vanguard's patents occurred  when Goade owned and operated Stik/Strip, and the Patent Action

---

[5]      Being a CERCLA case, *Keystone* added as a factor whether the transfer to the new
corporation was an effort to avoid environmental liability.

[6]      As discussed more fully below, in addition, REG did not acquire the assets in
good faith under the UCC.

-15-

was filed when Goade owned and operated Stik/Strip.  Thus, from the policy viewpoint, it was mere happenstance that there was an interim owner, Docusystems.  Because the business was reacquired by the original owner/operator, a finding of liability does not penalize an otherwise innocent business owner who happened  to acquire the assets and business operations subject to a preexisting liability.  Rather, the assets and operations landed in the lap of the responsible individual.  In this case, successor liability would cause liability to follow not simply the assets and business operations that gave rise to the liability but also the individual.   This is a particularly apt factual setting for application of the substantial continuing doctrine.

Defendants would apply an unjustifiably narrow view of the substantial continuity doctrine.  They argue that it is limited to "cases involving federal statutory rights and public policies, such as CERCLA cases."  While it has been applied in CERCLA cases, it has not been limited to CERCLA, or indeed, to federal statutory rights.  Consistent application in one context is not equivalent to a limitation.  For example, it has been applied to state law products liability claims.  *See, e.g. Dawejko v. Jorgensen Steel Company*, 290 Pa. Super. 15, 18, 434 A. 2d. 106, 107 (1981); *Conway v. White Trucks*, 692 F. Supp. 442, 450-450 (M.D. Pa. 1988).

As Vanguard observed,  the doctrine applies "where the public policy vindicated by recovery from the implicated assets is paramount to that supported by the traditional rules delimiting successor liability."  *United States of America v. Keystone Sanitation Company, Inc.*, 1996 WL 672891 (M.D. Pa.) at *5 quoting *United States v. Mexico Feed and Seed Co., Inc.*, 980 F. 2d 478, 487 (8th Cir. 1992).  Public policy is not limited to federal statutes or state product liability law.  Just as the successor to a polluter should be liable for clean-up costs and just as the successor to the manufacturer of a defective product should remain liable to support public

policy, so SSI's successor should remain liable for patent infringement and for a judgment entered immediately before the succession. Corporations should not be permitted to evade wilful patent infringement or the consequences of a judgment by the trick of an asset sale. Public policy supports enforcement of patents, a Federal right, no less than it supports obligations under CERCLA or the rights of plaintiffs injured by defective products who could not recover but for the doctrine. Moreover, public policy supports the satisfaction of judgments, particularly when the individual who owns and controls the party making the payment was the same as the individual who owned and controlled the party that committed the wrong.

Even without the substantial continuity doctrine, the undisputed facts mandate successor liability. The *de facto* merger and the mere continuation aspects of successor liability are similar. *See, e.g. Continental Insurance Company v. Schneider*, 2002 Pa Super 323, 810 A.2d 127, 134-135 (2002); *Commonwealth v. Lavelle*, 382 Pa. Super. 356, 374 555 A. 2d 218, 227 (1989) (de facto merger and mere continuation theories are difficult to distinguish.) Under both doctrines, the factors to be considered are just that – factors and not essential elements. Thus, continuity of ownership, though a factor, is not a requirement. Indeed, the *de facto* merger doctrine has been applied to establish successor liability where there was not continuity of ownership. *Lavelle*, *supra*. Accordingly, even without continuity of ownership, the other factors merit a finding of liability against REG.

In any event, in the instant case, there is continuity of ownership in two respects. First, prior to the July 2000 transaction, Goade owned 13 percent of Docusystems, which, in turn, owned SSI. Thus, although other Docusystems shareholders have no interest in REG, Goade maintained an ownership interest, albeit through Docusystems, both before and after the July

-17-

2000 transaction.  Secondly, from an even broader temporal view, especially appropriate to the instant case, there is indeed full continuity of ownership:  when the infringement was committed and the Patent Action commenced, Goade owned all of the defendant infringer, SSI, and now he has full ownership of the ultimate successor, REG, against which Vanguard seeks to enforce the Judgment.

REG is without refuge in the Uniform Commercial Code, both because the *Continental Insurance Company* case precludes it and because the assets of SSI obtained through a foreclosure sale were not, in fact, purchased in good faith.  Defendants' way around the *Continental Insurance* case is to argue that Pennsylvania law does not apply.   However, their choice of law analysis is superficial and fundamentally flawed.   Pennsylvania's choice of law methodology involves two-steps:  first, a determination whether a conflict exists, and then, if there is a conflict, a determination of which state has the greater interest in application of its laws.  The methodology was well-described in *Harsh v. Petroll*, 840 A. 2d. 404, 418 (Cmwlth. 2003):

> In Pennsylvania, the choice of law analysis is a two-step process. First, the trial court determines whether a true conflict exists between the laws of the competing states.  If a false conflict exists, no further analysis is necessary.  "A false conflict exists if only one jurisdiction's governmental interest would be impaired by the application of the other jurisdiction's law.  In such a situation, the court must apply the law of the state whose interests would be harmed if its law were not applied." *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir.1991).  If the court determines that a true conflict exists, it then analyzes the governmental interests and determines which state has the greater interest in the application of its law. *Ratti v. Wheeling Pittsburgh Steel Corporation,* 758 A.2d 695 (Pa. Super.2000), *petition for allowance of appeal denied,* 567 Pa. 715, 785 A.2d 90 (2001).

The instant case calls for the application of Pennsylvania law on both counts.  First, there is no true conflict.  Pennsylvania has determined that, despite UCC § 9-617 (13 Pa. Cons. Stat.

-18-

Ann. § 9617), which allows a transferee who acts in good faith to take foreclosed-upon property irrespective of liens, the successor liability doctrine will apply. A party who purchases an entire business operation at a foreclosure sale – and retains the same employees and identifies itself with the debtor business – will inherit liabilities, for he has bought a functioning business, not a mere asset. Illinois and Oklahoma have not ruled on the issue. Consequently, there is not a true conflict, at most only a "false conflict." If this Court ruled that the successor liability doctrine did not apply, Pennsylvania's interest would be impaired. If, however, it held that the successor liability doctrine applied, neither Illinois' nor Oklahoma's interest would be affected since neither jurisdiction has ruled on the issue.

Although it is difficult, if not impossible, to move to the second step of the analysis when neither Illinois nor Oklahoma have made a determination that actually conflicts with Pennsylvania's, one can see how Pennsylvania's interest would predominate. Pennsylvania has an interest in enforcing its judgments, particularly against defendants – in both the Patent Action and this action – over which it has jurisdiction. It has an interest in ensuring that obligations to Pennsylvania creditors who have become creditors by virtue of Pennsylvania judicial proceedings are not evaded when an entire functioning business becomes the subject of an Article 9 foreclosure. But to apply the law that the parties selected in their foreclosure document (in this case, Illinois) or that the purchasing entity self-servingly chose as the place of its incorporation would make evasion possible in all instances, for the interested parties could always opt for the favorable law.

But even if the *Continental* case did not exist or is overturned, Defendants cannot pass the good faith requirement of § 9-617. 13 Pa. Cons. Stat. Ann. § 9617 provides:

-19-

§ 9617. Rights of transferee of collateral

(a) Effects of disposition.--A secured party's disposition of collateral after default:

> (1) transfers to a transferee for value all of the debtor's rights in the collateral;
>
> (2) discharges the security interest under which the disposition is made;  and
>
> (3) discharges any subordinate security interest or other subordinate lien.

(b) Rights of good-faith transferee.--A transferee that acts in good faith takes free of the rights and interests described in subsection (a) even if the secured party fails to comply with this division or the requirements of any judicial proceeding.

(c) Rights of other transferee.--If a transferee does not take free of the rights and interests described in subsection (a), the transferee takes the collateral subject to:

> (1) the debtor's rights in the collateral;
>
> (2) the security interest or agricultural lien under which the disposition is made;  and
>
> (3) any other security interest or other lien.

To find that Goade acted in good faith ignores his conduct in May 1998.  That conduct allowed for the security interests to be imposed without Vanguard protecting itself, which security interests, in turn, gave Heller the right to foreclose – and, if Defendants were to have their way, would give Goade and REG the right to evade the Judgment to the detriment of Vanguard.   The connection between Goade's fraudulent conduct in 1998, as found by the jury in the first verdict question, and the foreclosure in 2000, is anything but attenuated.  The 1998 malfeasance relates directly to the encumbering of assets that was the sine qua non of the Article 9 sale.

In sum, the successor liability question presented to the jury was so clear based on the undisputed facts, Vanguard should have been awarded judgment as a matter of law.  There was an *undisputed* continuity of enterprises in the predecessor and successor corporations.  Furthermore, as a matter of law, the UCC does not protect REG from successor liability, and in any event, there is no possible way that the jury could have found Goade acted in good faith, which is a requirement for UCC protection.  In all respects, this issue was a legal one, which should have been decided in Vanguard's favor, as a matter of law, based on the undisputed facts.  The jury's verdict should be vacated and judgment should be entered in Vanguard's favor on its successor liability claim.

E.    **As a Judgment in a Patent Action, the Judgment Is Enforceable Against REG Because Validity and Infringement Were Admitted and REG Is in Privity with Stik/Strip.**

Aside from successor liability, Vanguard should have also been awarded JMOL because the Patent Judgment was enforceable against REG regardless of its successorship.  Where a patent's validity and patent infringement are established, the judgment will be enforced not only against the defendant to the original action but against a successor who is in privity with that defendant.  *See, e.g., Brunswick Corporation v. Chrysler Corporation*, 408 F. 2d. 335 (7th Cir. 1969); *Arco Polymers, Inc. v. Studiengesellschaft Kohle*, 555 F. Supp. 547 (E. D. Pa. 1982).

In this case, validity and infringement are established not only by the patent Judgment but also by the Stipulation and Order accompanying the judgment, which includes explicit admissions as to both.  *See* Plaintiff's Exhibit 1.  Because REG is undisputably in privity with SSI, the Judgment must be enforced against REG as a matter of law.

-21-

**F.    As A Matter of Law, The Damage Award Could Only Have Been $2,596,209.58, not $1,296,539.31.**

Vanguard had moved for a damage ruling during its 50(a) motion for judgment as a matter of law and hereby renews the motion under Fed. R. Civ. P. 50(b).  Trial Trans., 9/24/04 at 110,  ln. 14-18.  The jury plainly awarded a damage figure unsupported by the evidence.   Only Vanguard offered evidence on damages.  Defendants, while contesting liability, did not contest the amount of damages; specifically, they did not contest $2 million, based on the Judgment, plus post-judgment interest under the statutory rate applicable to the Judgment.  Interest at the statutory rate was appropriate because, if Vanguard had been able to collect from the defendants to the underlying Patent Action, it would have received post-judgment interest at that rate.

Plaintiff's Exhibit 74 calculated interest as of September 20, 2004 to be $593,048.62.   It also calculated the per diem rate to be $447.28.  Thus, interest through the date of the award, September 29, 2004, should have been $597,074.14.  The total damage amount, uncontradicted by any evidence or argument, should have been $2,597,074.14.   The damage award of $1,296,539.31 was against the evidence.

Thus, after the Court finds in favor of Vanguard on the issues before it on the instant Motion, it should enter judgment in the amount of $2,597,074.14.  For example, finding in Vanguard's favor on the statute of limitations and applying the existing negligent misrepresentation findings, it should enter judgment against Goade and the Goade Trust in that amount.   Likewise, after finding in Vanguard's favor on successor liability, it should enter such a judgment against REG.  Similarly, on fraud (as explained below), it should enter such a judgment against Goade and the Goade Trust.

G.    **The Finding That Goade Did Not Knowingly Cause His Lawyer To Convey The Falsehood Regarding The Encumbrance of SSI's Assets Was Against The Weight Of The Evidence.**

Although a jury finding as to whether Goade caused his lawyer to convey the misrepresentation contained in the letter drafted by his attorney was unnecessary in light of the law of agency, it is also against the weight of the evidence.[7]   The only evidence established that Goade was the source of the misrepresentation.   Goade himself had no memory.   Trial Trans. 9/22/04 at 14, ln. 23 – 15, ln. 3; 16, ln. 12 – 19, ln. 5, attached hereto as Exhibit "C."   The letter itself stated: "We have checked with our client..."   In the course, of making the misrepresentation, it also stated: "... as far as is known to Ron Goade, Sr."   Exhibit P 29.   Thus, the document itself identifies Goade as the source of the misrepresentation.   Finally, the testimony of the author of the letter, Joseph P. Titterington, identifies Goade as the source:

Q    Could you look for a moment at  Exhibit 6?

A    Okay.

Q    Okay.  Exhibit 6 is a May 26th, 1998, letter from you to Mr. Rosen, the same date as Exhibit  And it says it's acknowledging  receipt of the letter of Mr. Rosen's of the same date.   This letter, Exhibit 6, is  your -- is your response or your effort to answer the inquiries that Mr. Rosen made in Exhibit No. 5, his May 26th letter.  Is that right?

---

[7]    "It is, of course, beyond cavil that the attorney-client relationship is an agent-principal relationship."  *McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 853 (3d Cir. 1996).  Thus, it is equally clear that, as a matter of law, Goade, as the principal and master of his agent, Titterington, is liable for any misdeeds (including intentional acts) that the agent performs in the course of his representation.  "The master who puts the servant in a place of trust or responsibility ... is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, ... goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on another."  *Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel*, 832 F.Supp. 922, 932 (E.D. Pa. 1993)(principal held liable for intentional conversion of agent).  Accordingly, the issue of whether Goade authorized or "caused" Titterington to make the misrepresentation in the May 28, 1998 letter should never have been submitted to the jury.  As a matter of agency law, Goade should have been held liable for the misrepresentation of his agent.

A    Yes.

Q    Okay.  And you wrote Exhibit No. 6.  Is that right?

A    Yes.

Q    Okay.  And you see that there's Items  1, 2, 3 and 4 in the middle of the letter?

A    Yes.

Q    Generally, what was the basis for  your -- for the information you provided in Items
     1, 2, 3 and 4 of the May 26th, 1998, letter you  wrote to Mr. Rosen?

A    That information would have come from Mr. Goade, I believe.

Q    So in Number 2, where it says, "The transaction involves the sale of stock and as far
     as known to Ron Goade, Sr., there's nothing in the transactional documents which
     leads him to  believe that SSI's assets will be encumbered or depleted by the sales
     transaction or that the sale will have a material adverse impact on SSI's balance
     sheet," that information would have come   from Mr. Goade?

A    I would believe that to be true, yes.

Q    And how would it have gotten from Mr. Goade to -- into the letter that is Exhibit 6?

A    Well, one of two things.  Either I  heard him say that during a conversation that he
     had with Mr. Codding and me, or Mr. Codding told me that was what Mr. Goade had
     told him.

Deposition of Joseph P. Titterington, Esquire at 24, ln. 19 – 26, ln. 12, played on video tape to

the jury.

     Thus, no evidence supported the jury's finding, and all the evidence supported the

contrary finding.   As a matter of law, the Court should reverse jury verdict question 1(b).   Then,

with a 1(b) finding in Vanguard's favor, the Court should enter judgment for fraud in Vanguard's

favor since the jury already found reliance, causation and damages in Vanguard's favor in its

answer to question 5.

H.    **JMOL Should Have Been Granted As To Vanguard's Request
For A Constructive Trust**

_____ In addition to moving for a JMOL on the limitations and successor liability issue, at the close of the evidence, Vanguard also requested the Court to impose a constructive trust, as a matter of law, on $2.59 million as to Defendants Ron Goade, Susan Goade, The Goade Trust and REG Oklahoma. Trial Trans. 110-12. Although the Court denied that request, Vanguard hereby renews its Motion for JMOL on this issue because the *undisputed* facts of record dictate such relief be awarded.

_____ Pennsylvania case law has long held that a "constructive trust arises where a person who holds title to property subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched, if he were to retain it." *Pierro v. Pierro*, 438 Pa. 119, 127, 264 A.2d 692, 696 (1970)(*citing Chambers v. Chambers*, 406 Pa. 50, 54, 176 A.2d 673, 675 (1962); and *Gray v. Liebert*, 357 Pa. 130, 135, 53 A.2d 132, 135 (1947)) See also *In re Lewis Jones, Inc.*, 362 F.Supp. 919, 921 (E.D.Pa.1973), *aff'd*, 492 F.2d 1238 (3rd Cir.1974); *Murphy v. Landsburg*, 58 F.R.D. 165, 170 (E.D.Pa.), *aff'd*, 490 F.2d 319 (3rd Cir.1973). A constructive trust is the vehicle through which equity remedies situations where "property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, [and therefore] equity converts him into a trustee." *Pierro, supra*, 438 Pa. at 127, 264 A.2d at 696 (*quoting Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378, 380 (1919) (CARDOZO, J.)

Because of its roots in equity, a constructive trust arises where there is a finding that a party, against whom the trust is imposed, acquires property in a manner which "'creates [an] equitable duty in favor of the party' seeking the constructive trust." *Morris v. Philadelphia*

*Electric Co.*, 45 B.R. 350, 352 (E.D.Pa.1984).  There are no rigid standards for the imposition of

constructive trusts.  Traditionally, constructive trusts have been imposed where a party acquires

legal title to property by violating some express or implied duty owed to another.  *See Pierro,*

*supra*, 438 Pa. at 127; 264 A.2d at 696.  Such a trust may also be imposed where property is

obtained through bad faith, fraud, or lack of good conscience.  *See, e.g. In re Summit Airlines,*

*Inc.*, 94 B.R. 367, 370 (Bankr.E.D.Pa.1988), *aff'd*, 102 B.R. 32 (E.D.Pa.1989)(*citing Kohr v.*

*Kohr*, 271 Pa.Super. 321, 328-29, 413 A.2d 687, 690-91 (1979)); *Pierro*, *supra*, 438 Pa. at

127-28, 264 A.2d at 696.[8]

Here, the facts dictate the imposition of a constructive trust.  It is undisputed that

Stik/Strip, a company over which Ron Goade had exclusive control and ownership, infringed

Vanguard's patent and is liable for the entire amount of a $2 million judgment, plus interest.  The

jury found that Goade knew the assets of SSI would be encumbered when he caused his attorney

to make the misrepresentation. The assets were placed out of Vanguard's reach, and Goade and

the Goade Trust received, as a result, $8 million in cash.  Ultimately, Susan Goade acquired

control of at least some of the proceeds.  What is more, Goade eventually reacquired his

company under the auspices of another company controlled by him, REG.   Further, he invested

the proceeds of the May 1998 sale in REG.  As a result, Mr. Goade and his companies were able

---

[8]     Constructive trusts have also been imposed in the absence of wrongful conduct, or
intentions, in order to prevent unjust enrichment. *See American Trade Partners, L.P. v. A-1 Int'l*
*Importing Enterprises, Ltd.*, 755 F.Supp. 1292, 1301 (E.D.Pa.1990); *In re American Int'l*
*Airways, Inc.*, 44 B.R. 143, 146 (E.D.Pa.1984); *Stauffer v. Stauffer*, 465 Pa. 558, 568, 351 A.2d
236, 2141 (1976).  Thus, aside from the lack of good faith and conscience, a constructive trust
should be imposed to prevent the unjust enrichment the Goades derived from avoiding paying for
the patent judgment.

to avoid compensating Vanguard for infringing its patent, and they were able to flout a Judgment from this Court through their purposely complicated corporate transactions.

Under these circumstances, it is clear that Mr. and Mrs. Goade, the Goade Trust, and REG Oklahoma should be charged as constructive trustees over the funds sufficient to satisfy the Judgment (plus interest) in the underlying Patent Action.  Given the undisputed facts in this regard, a constructive trust should have granted as a matter of law.

## I.    A New Trial Should Be Awarded Because The Jury's Verdict Was Coerced By Statements From The Court Concerning The Evidence During Deliberations.

During deliberations, the jury had a question concerning the meaning of the successor liability interrogatories.  The question concerned  Section VI, interrogatory no. 1, which read as follows:

### Section IV:    Successor Liability

1.    Did REG purchase the assets of Stik/Strip at the July 2000 foreclosure sale in order to enable SSI or Docusystems to escape liability for the claims asserted by Vanguard in the patent litigation?

Exhibit B, Verdict Form, Section VI, Interrogatory No. 1.  As to this interrogatory, the jury queried whether the question was asking "if REG purchased assets" *solely* to avoid the patent judgment, or whether avoiding the patent judgment was just *"one"* of the reasons REG purchased assets.  Verdict Form, Court Exh. 1, Jury Questions, 9/28/04.

On the morning of September 28, 2004, the Court addressed the jury's question.  While doing so, however, the Court launched into an improper commentary on how the Court recalled the evidence on this issue, even – incredibly – suggesting to the jury what a proper verdict would be:

Bear in mind that under the evidence, as I recall it, but it will be for you to recall, the bank had already foreclosed on the assets and it was part of that foreclosure that REG Purchased the assets.  And that under the evidence that has been presented, REG and Docusystems would not have been able to use those assets to pay off the patent judgment in any event, because they had already been foreclosed on by the bank.

\*    \*    \*    \*

Have I gotten you thoroughly confused?  In short, it only has – pay attention to the way the question is worded.  If you conclude that at the foreclosure sale, REG purchased the assets, believing that it was necessary to make it difficult for Vanguard to collect on its patent judgment from those assets.  If that's what you find, then you can so find.  ***But under the evidence, as I recall it, it would be rather difficult to reach that conclusion.***

Having now confused everybody, I will submit the case to you for further deliberations.

Trial Trans., 9/28/04, attached hereto as Exhibit "D" at pp. 10-11 (emphasis added).

Needless to say, such judicial statements to a deliberating jury are highly improper.

Indeed, suggesting the way in which a jury should decide a case is considered coercive.  *See, e.g.,*

*United States v. United States Gypsum Co.*, 438 U.S. 422, 462 (1978)(Judge's *ex parte*

conference with jury foreman amounted to supplemental instruction to foreman relating to jury's

obligation to return verdict); *Jenkins v. United States*, 380 U.S. 445, 446 (1965)(per curiam)

(judge's statement that "[y]ou have got to reach a decision in this case" held coercive); *Rinehart*

*v. Wedge*, 943 F.2d 1158, 1160 (9th Cir. 1991)(Based on juror's affidavits concerning effect of

judge's improper comments concerning amount of damages, the verdict was "coerced" and new

trial warranted).  "When the verdict is coerced by the trial court, a new trial ***must*** be granted."

*Rinehart*, 943 F.2d at 1160 (citing *Jenkins*, 380 U.S. at 446)(emphasis added).

The court's discussion of the issue in *Rinehart* is particularly on point.  There, after the

jury returned a general verdict, the trial court recalculated the amount of damages itself, and then

polled the jury to ratify the recalculation. *See Id.* at 1160. On a motion for a new trial, the trial

court reconsidered this procedure, ultimately finding that "it intruded on the jury's deliberative

process and coerced the verdict." *Id.* The Ninth Circuit affirmed the trial court's decision,

noting that "[w]hen the verdict is coerced by the trial court, a new trial must be granted." *Id.*

(citations omitted). In so holding, the Ninth Circuit relied upon juror affidavits, which revealed

the damaging and prejudicial effect of the trial court's comments.

Likewise, here, there can be no question that the Court's commentary had a profound

effect on the jury's deliberative process. In fact, at least one juror, Ms. Judith A. Winters, has

given an unequivocal statement as to the profound effect the Court's comments had on the

deliberative process. In this regard, she states as follows:

> We got to the point of deliberation where we needed clarification on two issues.
> One was we needed the Judge to explain clear and convincing as well as the
> successor liability question. There was a great deal of discussion on the successor
> liability issue. Nancy, another juror, argued that the chain had been broken. I
> argued that since Goade maintained over 10% stock ownership, he kept a
> controlling interest. In order for me to get the other jurors to understand that, we
> decided to get a clarification from the Judge about the meaning of successor
> liability. When we were brought back to the courtroom, the Judge started going
> off on tangents that had nothing to do with our questions, then he asked if he had
> us thoroughly confused. I listened very carefully, but I was, in fact confused.
> Then the Judge went on to say that if we believed that Goade bought only the
> assets to avoid the judgment and that was the only reason, then so be it. ***I was***
> ***encouraged by that, because that is what I and four other jurors believed.*** But
> then ***the Judge said that under the evidence as he recalled, it would be difficult***
> ***to reach that conclusion.*** That statement totally blew me out of the water. When
> we returned to deliberate, as soon as the door was closed, we all were very
> ***surprised*** that the Judge had ***offered an opinion*** on a ***finding that we had not yet***
> ***made***. I consciously made the decision to no longer fight in favor of this question.
> I had to change my approach and start picking my battles. ***The Judge wiped the***
> ***successor liability question right out of our discussion.*** So, after we were totally
> deflated by the Judge's comment and opinion, we decided to simply forego the
> argument on successor liability and voted "No."

Exhibit "E," Declaration of Judith A. Winters (emphasis added).

Worse, the Court's coercive comments affected the deliberations on other issues,

including the fraud issue.   The jury began the deliberations with the successor liability question,

and the Court's coercive commentary defeated the jurors who would have found in Vanguard's

favor and persuaded possible holdouts.   As Ms. Winters stated:

> During the deliberations, we skipped the first two questions dealing with fraud,
> because they had to be answered based on clear and convincing evidence.  Since
> those questions were more difficult and time consuming, we decided to save them
> for last.

*   *   *

> So, after we were totally deflated by the Judge's comment and opinion, we
> decided to simply forego the argument on Successor Liability and voted "No."
> We spent the next day arguing questions #1 and #2.  I was not going to cave in on
> those questions.  After long deliberation, we concluded unanimously that by clear
> and convincing evidence that #1 was "yes" and # 2 was "no."

Accordingly, just like the situation in *Rinehart*, there is clear, admissible evidence[9]

that the Court's suggestive statement influenced not only the successor liability issue, but also the

entire deliberative process.  A new trial must be awarded in this instance.  *See Rinehart*, 943 F.2d

at 1160 (citing *Jenkins*, 380 U.S. at 446).

---

[9]     Ms. Winters' statement is admissible under Fed.R.Evid. 606(b), which states that a juror's statement is admissible to show "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."  In *Rinehart*, the court specifically found that such testimony from jurors concerning the influence of a trial court's allegedly coercive statements was admissible as evidence of an "outside influence" that was "improperly brought to bear upon a juror."  *See, e.g., Rinehart*, 943 F.2d at 1160 (holding juror's testimony "was admissible to prove the court's influence.")

## IV.  CONCLUSION

For the foregoing reasons, the Court should enter judgment in Vanguard's favor and against all Defendants in the amount of $2,596,209.58,or, alternatively, grant Vanguard a new trial.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

DJP2105; GB1066

By: _____

George Bochetto, Esquire
David J. Perlman, Esquire
David P. Heim, Esquire
1524 Locust Street
Philadelphia, PA 19102
Ph: (215) 735-3900
Fx: (215) 735-2455

Date: October 14, 2004                  Attorneys for Plaintiff
Vanguard Identification Systems, Inc.

-31-

## CERTIFICATE OF SERVICE

I, David J. Perlman, Esquire, hereby certify that I caused to be served a true and correct copy

of the Plaintiff's *Replacement* Memorandum of Law in Support of Motion for Judgment As a Matter

of Law Pursuant to Fed. R. Civ. P. 50(b), or in the Alternative, for a New Trial Pursuant to Fed. R.

Civ. P. 59 upon the following counsel via overnight mail:

Marc L. Zaken, Esquire
EDWARDS & ANGELL
3 Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901


Upon the following counsel via hand delivery:

A. Richard Feldman, Esquire
BAZELON, LESS & FELDMAN, P.C.
1515 Market Street, Suite 700
Philadelphia, PA 19102-1907


BOCHETTO & LENTZ, P.C.
DJP2105


By:_____
David J. Perlman, Esquire

Date: October 14, 2004