## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANGUARD IDENTIFICATION SYSTEMS, INC., | : | CIVIL ACTION |
| **Plaintiff** | : | NO. 02-2943 |
| | : | |
| v. | : | |
| | : | |
| RONNIE E. GOADE, SR., et al. | : | |
| | : | |
| **Defendants.** | : | |
| | : | NOVEMBER 11, 2004 |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, FOR A NEW TRIAL

### I.    INTRODUCTION

Defendants REG Oklahoma Acquisitions, LLC (individually, "REG"), Ronnie E. Goade, Sr. (individually, "Goade"), The Ronnie E. Goade, Sr. Revocable Trust (individually, "Goade Trust"), and Susan M. Goade (collectively, "Defendants"), hereby submit this Memorandum of Law in Opposition to Vanguard Identification Systems, Inc.'s ("Vanguard's") Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial ("Motion"). Vanguard's Motion should be denied because, as this Court stated on the record after the jury announced its verdict, **Defendants** would have been entitled to Judgment as a Matter of Law on Vanguard's claims, even if the jury had returned a verdict in Vanguard's favor.

Vanguard's Motion also fails on its merits. Vanguard's claim of entitlement to judgment on Defendants' statute of limitations defense to Vanguard's fraud-based claims[1] is belied by the testimony of Vanguard's own witnesses. Those witnesses' trial testimony uniformly confirms

---

[1] Vanguard's fraud-based claims are Counts I (Fraud), II (Conspiracy to Defraud), III (Negligent Misrepresentation/Promissory Estoppel), VI (Breach of Fiduciary Duty) and VII (Request for an Accounting).

that Vanguard's alleged "damages" were suffered in May 1998, right before Stik/Strip was purchased by Docusystems, Inc. ("DSI"). Thus, even under Vanguard's own theory, the fraud-based claims are barred by the statute of limitations.

Vanguard's claim of entitlement to judgment on its "successor liability" claim also lacks merit. The only evidence produced at trial overwhelming demonstrates that REG is **not** the successor in interest to Stik/Strip Laminating Company, Inc. ("Stik/Strip"). Vanguard continues to press the application of the relaxed "substantial continuity" doctrine of successor liability, which is inapplicable in cases such as this. Vanguard's continued reliance on this relaxed standard highlights the fact that Vanguard failed to introduce any evidence at trial that satisfies the traditional "de facto merger" exception to the general rule of non-corporate successor liability.

Vanguard's claim that Defendants are responsible for paying the consent judgment obtained by Vanguard in its patent infringement suit ("Patent Action"), because REG was allegedly "in privity" with Stik/Strip, lacks any merit whatsoever. Indeed, the argument itself reflects an attempt on Vanguard's part to mislead this Court. The only cases cited by Vanguard in support of this argument do not, by any stretch of construction, support Vanguard's claim that Defendants are responsible for paying the judgment in the Patent Action.

Finally, Vanguard's claim that statements made by this Court during the jury charge constituted "juror coercion" should fail. Judge Fullam's statements constituted, at most, an expression of his opinion as to the facts of this case, or the reasonable inferences that could be drawn from the evidence. Such statements are permissible, and do not constitute coercion. Moreover, when viewed in context, and as a whole, Judge Fullam's jury charge made clear that the jury – and no one else – was responsible for trying the issues in this case. If one of the jurors

happened to consider his honor's measured and qualified expression of his opinion as binding, that juror was unreasonable. Regardless, even if the statement did constitute "coercion," the error was harmless, as Defendants were entitled to judgment as a matter of law on all of Vanguard's claims in any event. The juror statement provided by Vanguard in support of its Motion is, therefore, a red herring.

## II.    ARGUMENT

Vanguard's Motion should be denied in its entirety, because Vanguard has failed to show anything other than a general dissatisfaction with the outcome of the trial in this action. Vanguard has failed to satisfy the "rigorous standard" applicable to a renewed Rule 50 motion for judgment as a matter of law, which requires the Court to "construe all the evidence and draw all reasonable inferences from the evidence in a light most favorable to" Defendants. See Green v. DuPont Dow Elastomers, LLC, No. 00-3058, 2003 U.S. Dist. LEXIS 21034, at *3 (E.D. Pa. Nov. 13, 2003). The judgment entered by this Court should stand because the record is not, to say the least, "critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief," and because Vanguard has failed to demonstrate that "there is no rational basis for the jury's verdict." See Highlands Inc. Group v. Buskirk, No. 98-CV-4847, 2000 U.S. Dist. LEXIS 16008 (E.D. Pa. Oct. 31, 2000) (citations omitted).

**A.    Vanguard is Not Entitled to Judgment as a Matter of Law, Because, as this Court Stated on the Record, Defendants Would Have Been Entitled to Judgment as a Matter of Law Even if the Jury Had Returned A Plaintiff's Verdict.**

After the trial in this action, the jury returned a verdict in the Defendants' favor. However, as expressly stated by the Court, even if this had not been the case, Defendants would have been entitled to judgment as a matter of law:

The Court:    I will note for the record that as previously suggested to counsel indirectly at some of our sidebar conferences, if the jury had not reached a verdict in favor of the defendants I would have granted the defendants' judgment as a matter of law for the following reasons: I don't think that any reasonable lawyer could possibly have interpreted that May 26th, 1998 letter as an assurance that there would not be any liens on the assets. And I don't think any rational person could have relied on that.

\*       \*       \*

Similarly on statute of limitations grounds I don't think there's any question whatsoever, but any misrepresentation was certainly known long before the two years was up. So to make a long story short, I don't think that you should feel at all surprised. On the basis of the jury's findings, I direct that judgment will be entered in favor of the defendants and this action is dismissed with prejudice.

See Trial Tr., 9/29/04, at 8-10 (attached hereto as Exhibit A). Therefore, Vanguard's Motion, and the spectrum of arguments put forth in its supporting Memorandum of Law ("Memo of Law"), are futile, and Vanguard's Motion should be denied.

## B.    In Any Event, Vanguard is Not Entitled to Judgment as a Matter of Law on the Jury's Finding That Vanguard's Claims are Barred by the Statute of Limitations.

Vanguard concedes that it had knowledge of the alleged fraud in Counts I-III, VI and VII of the operative Complaint in this action, more than two years prior to the commencement of this action. Vanguard's argument that these claims did not accrue until Vanguard suffered "damages" ignores the testimony of Vanguard's three chief witnesses – Gary Rosen, Richard Warther and Robert Kane.[2] All of them testified that Vanguard was harmed in May 1998 when Stik/Strip was sold to Docusystems. All three of these witnesses testified that Vanguard had a three-day window, just prior to the May 29, 1998 closing, in which to prevent the "harm" that allegedly stemmed from the statements contained in Goade's attorney's May 26, 1998 letter to Vanguard's attorney ("May 26, 1998 Letter"). All three of these witnesses testified that but for the

---

[2] This Court characterized Vanguard's statute of limitations argument as "silly." See Trial Tr., 9/24/04, at 109 (attached hereto as Exhibit F).

statements in the May 26, 1998 Letter, Vanguard would have sought injunctive relief preventing the sale of Stik/Strip to DSI, and the establishment of a constructive trust from which to satisfy any judgment eventually entered in the patent action. All three of these witnesses testified that Vanguard lost the opportunity to obtain these remedies the moment the Stik/Strip-DSI transaction closed in May 1998. This testimony provides more than enough support for the jury's conclusion that Vanguard's claims are barred by the two-year statute of limitations.

Gary Rosen, Vanguard's attorney in the Patent Litigation, testified that Vanguard was damaged in May 1998 when it purportedly relied on the statement in the May 26, 1998 Letter that "as far as is known to Ron Goade, Sr., there is nothing in the transactional documents which leads him to believe that [Stik/Strip's] assets will be encumbered or depleted by the sales transaction . . . ." See Plaintiff's Trial Exhibit 26. Specifically, Rosen testified:

Q:    All right. When you received [the May 26, 1998 Letter], did you communicate it, or the substance of it, to your clients?

A:    I did. I'm sure I sent a copy of the letter.

Q:    And what did you tell them about it?

A:    I could not give you chapter and verse of any discussions we had at that point, other than this letter we deemed to be responsive to the request I had made. . . .

Q:    As a result of receiving that letter, Mr. Rosen, from Mr. Titterington, with that language in the letter **did you thereafter pursue the injunction with the Court, seeking an escrow account or that type of thing?**

A:    **No. We stuck with the original strategy, which was to go straight ahead, try to get the case to trial on as expeditious a path as we could . . . until final judgment.**

Q:    Why didn't you pursue the injunction after receiving that letter?

A:    Well, as I mentioned before, pursuing these other remedies had the down side to us of potentially delaying the final resolution of the case. These could have been side tracks. **In getting these assurances, we felt that the sale was not changing the status of the action or the status of the defendant, and therefore, taking**

**those steps would be unnecessary and we could continue with the primary goal of getting the case to final resolution.**

Trial Tr., 9/21/04, at 41-42 (emphasis added) (attached hereto as <u>Exhibit B</u>).  Even more specifically, Rosen testified:

Q:     . . . . Well, let me talk to you about this delay issue.  Now, one of the things you threatened to do in this letter was to . . . get an injunction, a temporary order of the court restraining any disposition of the funds, right?

A:     The proceeds of the sale transaction.

Q:     Right.  So – and that's something that you threatened to do at that time, but never did, after getting the letter from Mr. Titterington on May 26th.

A:     We didn't do it then, **and it's not something that could have been done later**.

Q:     All right.  You say it couldn't have been done later, but you never attempted to go before the judge at any time between May 26, 1998 and say that, we got a letter saying the assets wouldn't be encumbered, we found out that the assets are going to be encumbered, and now we want a pile of money put aside in case we win. You never brought that to the Court's attention, did you?

A:     **That's something that would have to have been done before contemporaneous with the transaction, and we did not do that, in light of the representations Mr. Goade made**.

<u>See id.</u> at 75 (emphasis added) (attached hereto as <u>Exhibit B</u>).

Vanguard's CEO, Richard Warther, and CFO, Robert Kane, confirmed Rosen's testimony. <u>See id.</u> at 114-115 (attached hereto as <u>Exhibit B</u>) (testimony of Vanguard's CEO, indicating that Vanguard "relied completely on [Titterington's May 26, 1998 Letter].  Otherwise, we would have gone forth with an injunction."); <u>Id.</u> at 136-142 (attached hereto as <u>Exhibit B</u>) (testimony of Vanguard's CFO, indicating, *inter alia*, that if Vanguard wanted to seek an injunction and/or the establishment of an escrow account, it would have had to have done so "prior to the sale" of Stik/Strip, but that "[r]ather than doing that, [Vanguard] received assurances" from Titterington in the form of the May 26, 1998 Letter, and that subsequent to the

sale of Stik/Strip, Vanguard had "lost the option of going and getting an escrow on Mr. Goade's $8 million.").

The testimony of these witnesses irrefutably demonstrates that Vanguard's alleged "damages" in this action were sustained in May 1998, four years before Vanguard commenced this suit against the Goade Defendants. Vanguard could have sued Defendants for alleged "fraud," or "negligent misrepresentation" or "breach of fiduciary duty" or "promissory estoppel" at any point between May 1998 and May 15, 2000 (two years before Vanguard commenced this action). In its action, Vanguard could have requested a variety of different types of relief – including the "constructive trust" to which it claims it is entitled in its Motion, the posting of a bond, an escrow, or an attachment on other assets, to secure a potential recovery in the Patent Action. Vanguard failed to do so within the time period established by 42 Pa. Cons. Stat. § 5524(7). Therefore, even under Vanguard's own theory, Vanguard's fraud-based and breach of fiduciary duty claims are barred by Pennsylvania's two-year statute of limitations for such claims.

Vanguard's argument that it is entitled to a new trial "because the way in which the statute of limitations issue was submitted to the jury on the verdict form was erroneous" fails for the same reasons stated above. Vanguard attacks the wording on the jury verdict form ("Juror Verdict Form"), which reads as follows: "If your answer to any of the seven previous questions is 'Yes,' did Vanguard learn (or, if Vanguard acted reasonably, should it have learned) of the misrepresentation before May 15, 2000?" See Juror Verdict Form (attached as Exhibit B to Vanguard's Memo of Law). Vanguard's claim that it is entitled to a new trial because this interrogatory should have focused on "when" Vanguard allegedly suffered "damages" as a result of Defendants' alleged misrepresentation, presupposes that the issue of "when" Vanguard

suffered damages was actually in dispute. It is axiomatic that only disputed issues of fact should be submitted to the jury for decision. Here, as is demonstrated above, the only testimony on the issue of when Vanguard suffered damages – indeed, the harmonious testimony of each of Vanguard's key witnesses – demonstrates that this issue was not in dispute. Instead, the issue in dispute was when Vanguard learned, or should have learned, that the statements contained in the May 26, 1998 Letter were a "misrepresentation." This is the question answered by the jury, and there was nothing erroneous about it.[3] Therefore, Vanguard's request for a new trial should be denied.

**C.    Vanguard's Claim of Entitlement of Judgment as a Matter of Law on its Successor Liability Claims Fails**

**(1)    REG Purchased The Assets of Stik/Strip In A Commercially Reasonable Foreclosure Sale Pursuant To The UCC And Thus Cannot Be Deemed To Be The Corporate Successor Of Stik/Strip For Liability On The Judgment In The Patent Action.**

Vanguard does not dispute that REG purchased the assets of Stik/Strip in a foreclosure sale conducted pursuant to the UCC. Section 9-610 of the UCC Provides:

§ 9610. Disposition of collateral after default

(a)    Disposition after default.--After default, a secured party may sell, lease, license or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.

(b)    Commercially reasonable disposition.--Every aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable. If commercially reasonable, a secured party

---

[3] To the contrary, if there was anything erroneous about the questions posed on the Juror Verdict Form, it was the fact that the interrogatories on the "negligent misrepresentation" claim did not mirror the interrogatories on the "fraud" claim. For example, the jury found that Goade did not knowingly cause his lawyer to convey "false information" to Vanguard's attorneys in connection with Vanguard's fraud claim. See Jury Verdict Form, § 1(b). However, this same question was not asked of the jury with respect to Vanguard's negligent misrepresentation claim. Since the jury found that Goade did not knowingly cause his lawyers to convey false information, it is likely that the jury would have also found that Goade did not "negligently" cause his lawyers to convey false information, if that question had been posed to them. Defendants reserve their right to claim this as reversible error, if the need for Defendants to so argue ever arises.

> may dispose of collateral by public or private proceedings, by one or more
> contracts, as a unit or in parcels and at any time and place and on any terms.

13 Pa. Cons. Stat. Ann. § 9610;[4] accord 12A Okla. Stat. § 1-9-610 (substantially the same); 810

Ill. Comp. Stat. 5/9-610 (substantially the same).   A good-faith transferee who acquires the assets

of the selling company at a commercially reasonable foreclosure sale takes the assets free of the

bank's security interest, and free of "***any subordinate security interest or other subordinate***

***lien***."   13 Pa. Cons. Stat. Ann. § 9617 (emphasis added); accord 12A Okla. Stat. § 1-9-617; 810

Ill. Comp. Stat. 5/9-617 (same).

    The jury specifically found that the 2000 foreclosure sale was carried out in a

commercially reasonable manner.   See Juror Verdict Form (attached as Exhibit B to Vanguard's

Memo of Law).   Vanguard does not contest this finding in its Motion.   Despite the bald

statements in its Memo of Law to the contrary, Vanguard introduced no evidence at trial to

counter the fact that REG was anything other than a good faith purchaser of the assets of

Stik/Strip in the 2000 sale.   Dresner, the investment bank hired by Heller Financial to conduct the

---

[4] In its Motion and Memo of Law, Vanguard half-heartedly argues that Pennsylvania law applies to its successor liability claims, despite this Court's express reservations as to the applicability of Pennsylvania law. See Trial Tr., 9/24/04, at 102-03 (attached hereto as Exhibit F).   Thus, in an abundance of caution, Defendants have cited Pennsylvania statutes and case law in support of their successor liability argument.   However, under Pennsylvania's choice of law rules, which must be applied by this Court in this diversity action, either Illinois or Oklahoma law should apply to Vanguard's successor liability claims. See Southeastern Penn. Transp. Auth. v. International Eng'g, No. 91-7179, 92-2053, 1993 U.S. Dist. LEXIS 5698, at *3-4 (E.D. Pa. May 3, 1993).   This is why Defendants have cited Oklahoma and Pennsylvania statutes and case law throughout their successor liability argument.   However, the facts show that the 2000 foreclosure sale had no connection whatsoever to Pennsylvania.   The 2000 sale of Stik/Strip's assets to REG closed in Illinois, and the Foreclosure Agreement pursuant to which REG acquired the assets of Stik/Strip contains an Illinois choice of law provision. See Defendants' Exhibit 32 (Foreclosure Agreement, § 20.4).   Likewise, Oklahoma law could apply to Vanguard's successor liability claims, because Oklahoma was the situs of the assets that were sold to REG as a result of the 2000 foreclosure sale, and REG's principal place of business is in Oklahoma. Vanguard's contention that Defendants' "choice of law analysis is superficial and fundamentally flawed" because there "is no true conflict," see Memo of Law, at 18, is puzzling.   The one lower Pennsylvania Superior Court decision cited by Vanguard in support of its contention that "REG is without refuge in the Uniform Commercial Code," Continental Ins. Co. v. Schneider, Inc., 810 A.2d 127, 129 (Pa. Super. Ct. 2002), stands as the strongest proof that there is, in fact, a conflict between the successor liability law of Pennsylvania and the successor liability laws of other states.   Defendants' research has yielded no comparable Illinois or Oklahoma cases, nor has Vanguard directed the Court's attention to any such cases.   Thus, at least for the time being, the Continental Insurance case creates a conflict between the laws of Pennsylvania on the one hand, and Illinois and Oklahoma on the other.   Nonetheless, the Continental Insurance decision is not a decision of Pennsylvania's highest court, and is currently on appeal to the Pennsylvania Supreme Court. See Continental Ins. Co. v. Schneider, No. 629 WAL 2002, 2003 Pa. LEXIS 965 (Pa. June 5, 2003).

foreclosure sale, considered bids from several other potential buyers. See Trial Tr., 9/22/04, at 103-104; 106, 109-113 (attached hereto as Exhibit C) (testimony of Dresner employee John Riddle, indicating that Dresner prepared an offering memo and solicited bids from several potential buyers, outlining the terms of the bids); Trial Tr., 9/23/04, at 3-4 (continuing Riddle's testimony on the issue) (attached hereto as Exhibit D); Id. at 40-41 (same testimony from Dresner employee Joseph Kacergis); Defendants' Exhibit 39 (StoneHouse Bid Proposal); Defendants' Exhibit 40 (Lucas Color Card Bid Proposal). Dresner evaluated these bid proposals and provided reports to Heller and DSI's Board of Directors. See Trial Tr., 9/23/04, at 10-13, 15-16 (testimony of John Riddle) (attached hereto as Exhibit D); Id. at 40-41 (testimony of Joseph Kacergis). Dresner actually solicited an offer from Goade, who at first declined to submit a bid. See Trial Tr., 9/23/04, at 3-4 (attached hereto as Exhibit D) (testimony of John Riddle); Id. at 37-38; 44-45 (same, testimony of Joseph Kacergis); Trial Tr., 9/23/04, at 46-47 (attached hereto as Exhibit E) (testimony of Ron Goade). Goade was chosen as the purchaser of Stik/Strip's assets because his offer was not contingent on his ability to obtain financing (it was a cash offer), and because he could close the deal quickly. See Trial Tr., 9/23/04, at 64-70 (testimony of Hugh Wilder of Heller) (attached hereto as Exhibit D); Id. at 4-6, 15-16 (testimony of John Riddle). Heller, which had to approve the sale before it could be consummated, see id. at 15 (testimony of John Riddle), approved the sale to Goade because it believed that it was in Heller's best interest to do so. See id. at 73 (testimony of Hugh Wilder). Heller had no reason to "feather Mr. Goade's nest in some way or to benefit Mr. Goade to the detriment of . . . other [potential] purchasers." See id.

In fact, the undisputed evidence produced at trial established that Goade submitted a bid for the assets of Stik/Strip simply because he did not want to see the company shut down, and because he did not want to see all of Stik/Strip's employees lose their jobs. See Trial Tr., 9/23/04,

at 46-48 (attached hereto as <u>Exhibit E</u>) (Goade decided to bid on the assets of Stik/Strip because he did not want to see Stik/Strip close down, and because he wanted to save the jobs of Stik/Strip's employees); Trial. Tr., 9/23/04, at 37-38 (attached hereto as <u>Exhibit D</u>) (testimony of Joseph Kacergis) (same).  Vanguard presented no evidence to the contrary.

As a good faith transferee of the assets of Stik/Strip, obtained pursuant to a commercially reasonable foreclosure sale, REG took those assets free of the claims of Stik/Strip's unsecured creditors, such as Vanguard.  Thus, Vanguard cannot now proceed against REG under a successor liability theory.  However, as is explained in more detail below, even if the UCC does not preclude successor liability in this case, Vanguard has, nonetheless, failed to establish that the jury's finding of non-successor liability lacks a rational basis.

### (3) Vanguard Continues to Rely on an Inapplicable Successor Liability Standard and Inapplicable Case Law

Due to its failure to establish that REG was the successor in interest to Stik/Strip under any of the applicable successor liability standards, Vanguard continues to assert in its Motion that a "relaxed" successor liability standard, applicable only in cases involving federal statutory rights and lofty public policy issues, is applicable here.  Vanguard's argument is grounded in the so-called "substantial continuity" or "continuity of enterprise" theory.  <u>See</u> Memo of Law at 12-17.

The cases cited in Vanguard's Memo of Law make clear, however, that the "substantial continuity" or "continuity of enterprise" doctrine evolved in cases involving federal statutory rights and federal public policies, such as CERCLA cases.  In those limited cases, the courts have "**<u>lessened the stringent burden</u>** of establishing successor liability under the common law standard by expanding the scope of the 'mere continuation' exception."  <u>Andritz Sprout-Bauer,</u>

Inc. v. Beazer East, Inc., 12 F. Supp. 2d 391, 404-05 (M.D. Pa. 1998) (emphasis added) (cited on page 14 of Vanguard's Memo of Law).

In CERCLA cases, courts apply these less rigorous successor liability principles due to the "remedial purpose of CERCLA, i.e., to place the burdens of cleaning up hazardous substances on those who caused the problem due to the irresponsible handling of such materials." Id. at 405. The less rigorous "substantial continuity" is not applicable in this case, which is neither a CERCLA case nor a products liability case, nor does it implicate any federal statutory rights. See, e.g., Central Nat'l Gottesman v. Pemcor, Inc., No. 03-3203, 2001 U.S. Dist. LEXIS 16388, at *3 (E.D. Pa. Oct. 10, 2001) (refusing to apply doctrine of "continuity of enterprise" in an action involving a contract dispute, which did not involve "issues of grave public concern," or federal statutory rights).

Indeed, each and every one of the cases cited in Vanguard's Memo of Law in which a court considered the "substantial continuity" exception is either a CERCLA case or a products liability case. See United States v. Keystone Sanitation Co., No. 1:CV-93-1482, 1996 U.S. Dist. LEXIS 13651, at *14-15 (M.D. Pa. Aug. 22, 1996) (CERCLA case, noting that "[n]umerous courts have recognized the applicability of the substantial continuity theory **in the CERCLA context**.") (emphasis added) (cited on pages 13-14 of Vanguard's Memo of Law); Andritz Sprout-Bauer, Inc., 12 F. Supp. 2d at 404-05 (CERCLA case, noting that "**[u]nder CERCLA**, standards for successor liability **less rigorous** than the traditional common law standard have evolved.") (emphasis added) (cited on page 14 of Vanguard's Memo of Law); United States v. Mexico Feed & Seed Co. Inc., 980 F.2d 478 (8th Cir. 1992) (CERCLA case) (cited on page 14 of Vanguard's Brief); United States v. Atlas Minerals & Chemicals, Inc., 824 F. Supp. 46, 50 (E.D. Pa. 1993) (holding that "continuity of enterprise" theory is inapplicable even in some

CERCLA cases, noting that "**it was never intended that this new approach would replace the traditional test**. Instead, the 'continuity of enterprise' theory should be applied **only when the application of traditional corporate law principles would frustrate the remedial goals of CERCLA**.") (emphasis added) (cited on page 14 of Vanguard's Memo of Law); Conway v. White Trucks, 692 F. Supp. 442 (M.D. Pa. 1988) (product liability case) (cited on page 14 of Vanguard's Memo of Law); Dawejko v. Jorgensen Steel Co., 290 Pa. Super. 15 (1981) (products liability case) (cited on page 14 of Vanguard's Memo of Law).

The law in Illinois and Oklahoma is not any different. There, the courts apply the "substantial continuity" doctrine only when application of the relaxed standard is necessary "**in order to protect federal rights or effectuate federal policies**." See Chicago Truck Drivers, et al. v. Tasemkin, 59 F.3d 48, 49 (7th Cir. 1995) (ERISA case, applying Illinois law) (emphasis added); Norfolk Southern Ry. v. Gee Co., No. 98-C-1619, 2001 U.S. Dist. LEXIS 10784, at *81 (N.D. Ill. June 26, 2001) (noting that "[t]he Seventh Circuit has not yet recognized the "substantial continuity" exception in the CERCLA context," but that it has "employed the concept **in the context of other federal statutes**.") (emphasis added); Horsehead Indus. v. St. Joe Minerals Corp., No. 94-C-98-B, 1996 U.S. Dist. LEXIS 22493, at *53 (N.D. Okla. Apr. 3, 1996) ("The broad remedial purpose of CERCLA requires application of the more flexible continuity of enterprise theory of successor liability to prevent responsible parties from evading CERCLA liability through strategic behavior or transactional technicalities.").[5] Vanguard cites no case in its Motion or Memo of Law in which a court applied the substantial continuity doctrine in a situation even remotely similar to the one at bar. Vanguard's continued insistence

---

[5] It should be noted that the Horsehead Industries case is the **only** Oklahoma case, state or federal, Defendants could locate in which a court, applying Oklahoma law, even mentions the "substantial continuation" theory.

on the application of an inapplicable successor liability standard only highlights the futility of

Vanguard's Motion, which should be denied for the reasons set forth above.

### 2. Vanguard's "De Facto" Merger Argument Has No Evidentiary Support

Vanguard has also failed to demonstrate that there was "no rational basis for the jury's

verdict" on the issue of successor liability under the "de facto merger" exception.  See Highlands

Inc. Group v. Buskirk, No. 98-CV-4847, 2000 U.S. Dist. LEXIS 16008 (E.D. Pa. Oct. 31, 2000)

(citations omitted).  In making a "de facto merger" determination, courts in Pennsylvania,

Oklahoma and Illinois focus on the whether there is a continuity of the successor corporation, as

evidenced by:

> (1) continuity of ownership/stockholders; (2) a cessation of ordinary business of the
> predecessor and its prompt dissolution; (3) assumption by the successor of the liabilities
> ordinarily necessary for daily operation of the business; and (4) continuity of
> management, personnel, physical locations, aspects and general business operation.

Ryan Beck & Co., Inc. v. Faust, No. 03-CV-636, 2003 U.S. Dist. LEXIS 15164, at *7 (W.D. Pa.

Aug. 6, 2003); accord Pulis v. United States Electrical Tool Co., 561 P.2d 68, 71 (Okla. 1977);

Nguyen v. Johnson Machine & Press Corp., 433 N.E.2d 1104, 1143 (Ill. App. Ct. 1982).

Vanguard's assertion that "continuity of ownership, though a factor, is not a requirement,"

ignores a plethora of case law, from courts across the country, which hold that "[t]he transfer of

stock **is a key element** in finding a de facto merger because it represents continuity of

ownership." Forrest v. Beloit Corp., 278 F. Supp. 2d 471, 477 (E.D. Pa. 2003) (emphasis

added); Nilsson v. Continental Machine Manuf. Co., 621, N.E.2d 1032, 1034 (Ill. App. Ct. 1993)

(holding that a continuity of stock ownership is **critical** to a finding of successor liability under

the "de facto merger" and "mere continuation exceptions to corporate successor liability)

(emphasis added); accord Pulis, 561 P.2d at 71.  In Forrest, the court granted summary judgment

in a defendant's favor because the plaintiff failed to demonstrate that the successor company had purchased the predecessor company entirely with shares of its own stock. See Forrest, 278 F. Supp. 2d at 477.

Here, as in Forrest, the plaintiff produced no evidence that there was a continuity of stock ownership between Stik/Strip and REG. Stik/Strip was a wholly-owned subsidiary of DSI prior to the 2000 foreclosure sale. DSI had acquired 100% of Stik/Strip's stock as a result of its 1998 purchase of Stik/Strip. See Defendants' Exhibit 2 (Stock Purchase & Merger Agreement, indicating that DSI transferred the stock of Stik/Strip to a newly created subsidiary of DSI, in exchange for which DSI received 100% of the newly-created subsidiary's stock). After DSI purchased Stik/Strip in 1998, neither Goade, nor any of the other Defendants, owned any stock whatsoever in Stik/Strip. Thus, at the time REG purchased the assets of Stik/Strip in July 2000, neither Goade, nor any of the other Defendants, were stockholders in Stik/Strip. Moreover, REG acquired the assets of Stik/Strip in a foreclosure sale conducted pursuant to Article 9 of Uniform Commercial Code. See Defendants Exhibit 32 (Foreclosure Agreement, see Recital B). Far from being a stock transaction, it is undisputed that REG paid $2 million in cash for the assets of Stik/Strip. There is simply no continuity of stock ownership in this case.

In its Memo of Law, Vanguard makes much of the fact that Goade owned a minority share of worthless stock in DocuSystems Holdings Corporation ("DHC") at the time he bought the assets of Stik/Strip. This fact does **not** establish the continuity of ownership needed to establish the "de facto merger" exception to the general rule of non-successor liability. First, it is undisputed that Defendants' stock was in Stik/Strip's parent company, not Stik/Strip. See Defendants' Exhibit 2 (Stock Purchase & Merger Agreement, through which Defendants acquired stock in DHC, not Stik/Strip). Second, Defendants' minority stock interest in DHC did

**not** provide Goade with the ability to control DSI, or for that matter, Stik/Strip. Vanguard has

produced no evidence to the contrary.

In fact, the only evidence presented on this issue demonstrates, to the contrary, that

Goade had no control over DSI or Stik/Strip, and that DSI had actually fired Goade in October

1999 and removed him from its board of directors in February 2000, months prior to the July

2000 foreclosure sale. See Trial Tr., 9/23/04, at 38, 44-45 (attached hereto as Exhibit E).[6]

Likewise, Goade testified, with supporting documentation, that DSI refused to listen to the

advice offered by Goade with respect to DSI's operation of Stik/Strip. See id. at 36-39 (attached

hereto as Exhibit E); Defendants' Exhibits 64, 65, 68 (Goade's written complaints to DSI). The

only evidence presented at trial conclusively established that Goade had absolutely no control

over Stik/Strip after he sold it to DSI in 1998. In short, Vanguard can point to no evidence to

support its "continuity of ownership" theory.[7]

In the end, Vanguard's "de facto merger" argument consists of the exact same elements as

its "continuity of enterprise" argument. To wit, Vanguard dwells on the fact that REG purchased

Stik/Strip's real estate and equipment at the asset sale, and the fact that REG continued to employ

Stik/Strip's employees (with the exception of one) after the 2000 sale. These facts exist in the

vast majority of asset sales, and particularly asset sales like this one, which was conducted as a

foreclosure sale under Article 9 of the UCC. See Davila v. Magna Holding Co., No. 07-C-1909,

2000 U.S. Dist. LEXIS 2648, at *40-41 (N.D. Ill. Feb. 28, 2000) (recognizing that a foreclosure

sale conducted under Article 9 typically involves the sale of "all of [the debtor's] assets," and that

---

[6] Goade stopped attending meetings of DSI's board of directors in October 1999. See Trial Tr., 9/23/04, at 38 (attached hereto as Exhibit E).

[7] Vanguard's argument that "from an even broader temporal view . . . there is indeed full continuity of ownership: when the infringement was committed and the Patent Action commenced, Goade owned all of the defendant infringer, SSI, and now has full ownership of the ultimate successor, REG," is absurd, as it asks the Court to completely ignore the period of time between May 1998 and July 2000 when DSI owned and operated Stik/Strip.

under such circumstances, there is "nothing suspicious about the fact that the transfer was for all

of [the debtor's] assets."). These facts, by themselves, do not satisfy the "rigorous standard"

applicable to renewed Rule 50 motions, and they fall far short of demonstrating that there is "no

rational basis for the jury's verdict" on the issue of successor liability.

Indeed, the evidence shows indisputably that REG was not a "mere continuation" of

Stik/Strip. By the time of the 2000 foreclosure sale, the reputation of the "Stik/Strip" that Goade

had sold to DSI in 1998 had been all but destroyed by the changes DSI had made to Stik/Strip's

business. See Trial Tr., 9/23/04, at 34-36 (attached hereto as Exhibit E) (testimony of Ron

Goade, describing changes made by DSI). Thus, Goade had to start all over again, and he

intended to use the assets of Stik/Strip in order to build a new company. See id. at 53-54. Under

DSI, the majority of Stik/Strip's products were manufactured at DSI's Tennessee facilities. See

Trial Tr., 9/24/04, at 2-4 (attached hereto as Exhibit F).[8]  Goade first needed to take steps that

would allow REG to begin manufacturing products out of the Oklahoma facilities he had

purchased in the 2000 foreclosure sale. See id. at 8-13. The building itself was in serious need

of repair, a large percentage of the computers and software programs mysteriously disappeared

after the 2000 foreclosure sale, and a large percentage of the equipment was in terrible condition.

See id. at 8-13. Goade spent millions of dollars to bring the building up to code and for new

equipment that would produce a product comparable to its competitors' products. See id. at 12-

18.

Thus, shortly after the 2000 foreclosure sale, REG began manufacturing products in a

different location, using a different method than had been used by Stik/Strip, and on different

---

[8] The Tennessee facility, products manufactured by DSI at the Tennessee facility under the "Stik/Strip" name, and the customer orders pending at the Tennessee facility, were **not** purchased by REG in the foreclosure sale, but rather, were sold to a purchaser called "Magnetic Tape and Label," in Dallas, Texas. See Trial Tr., 9/24/04, at 6-8; 10-11 (attached hereto as Exhibit F).

equipment than had been used by Stik/Strip. In addition, REG began to manufacture its products using a product called "Teslin." See id. at 5-6. Teslin is a premium product in the card industry. See id. DSI/Stik/Strip had used an inferior product "T2" to manufacture Stik/Strip's products. See id. at 5-6; Trial Tr., 9/23/04, at 35-36 (attached hereto as Exhibit E).

Quite simply, REG is **not** the same business as Stik/Strip. As this Court noted on the record, "my inclination is to basically say that if [the jury] accept[s] Mr. Goade's testimony as correct **there is no successorship, they could find successorship only by rejecting his testimony**." Trial Tr., 9/24/04, at 99 (attached hereto as Exhibit F) (emphasis added). Vanguard has failed to sustain its burden of showing that the evidence presented at trial, when viewed in the light most favorable to the Defendants, fails to provide a rational basis for the jury's verdict. Therefore, Vanguard's Motion should be denied.

**D.    Vanguard's "Privity" Argument Fails Because Whether the Judgment in the Patent Action is Entitled to *Res Judicata* Effect Is Not At Issue Here.**

Vanguard's assertion that REG is required to pay the judgment entered in the Patent Action because "validity and infringement were admitted and REG is in privity with Stik/Strip," is legally unsupported. The two cases Vanguard cites in support of this argument, Brunswick Corp. v. Chrysler Corp., 408 F.2d 335 (7th Cir. 1969) and Arco Polymers, Inc. v. Studiengesellschaft Kohle, 555 F. Supp. 547 (E.D. Pa. 1982), are inapposite to the issues in this case, and reflect Vanguard's continuing desire to mislead this Court.

In both Brunswick and Arco, the issue decided by the respective courts was whether prior findings of **patent validity** and **patent infringement** were entitled to *res judicata* effect against subsequent purchasers of the entity found liable for patent infringement. See Brunswick, 408 F.2d, at 336 ("This is an appeal from an interlocutory decision by the District Court which

denied appellant's motion to strike a designated defense and for judgment based on *res judicata* with respect to an earlier decree in the same Court **as to validity and infringement of two of the patents in suit**.") (second emphasis added"); Arco Polymers, Inc., 555 F. Supp. at 549 ("Defendants' motion seeks summary judgment . . . on grounds that . . . Plaintiff is barred by *res judicata* **from urging invalidity or noninfringement** of the '115 patent in suit in view of the final judgment entered by the Court in [prior litigation].") (emphasis added).  The principle of law for which the Brunswick and Arco Polymers, Inc. cases stand is that a "judgment of **validity of a patent**, rendered on the merits after contested litigation, will operate as *res judicata* against a party or persons in privity with a party." 6-19 Chisum on Patents § 19.02, n.86 and accompany text (citing, *inter alia*, Arco Polymers, Inc.).  The issue in those case was **not**, as it is here, whether the subsequent purchaser of the assets of a predecessor corporation at a foreclosure sale is required to pay a judgment entered against other parties in a prior lawsuit.[9]  As such, Vanguard's "privity" argument fails as a matter of law.

**E.    Vanguard is Not Entitled to a New Trial Due to "Juror Coercion"**

Vanguard's "juror coercion" argument fails because Judge Fullam's comment did not amount to "juror coercion," and because even if it did influence one juror, the "error" was

---

[9] Judge Fullam made this point in a discussion with Vanguard's counsel, on the record:

| | |
|---|---|
| Mr. Bochetto: | . . . And the Chrysler line of cases say that when another company comes along or another individual comes along and buys all of those assets, as a matter of law, it buys it subject to the patent infringement ruling. |
| The Court: | Of course, but that does not bind them to pay the judgment for royalties that were realized years earlier by somebody else. |
| Mr. Bochetto: | Well, I believe that the line of cases does say that they are bound by the judgment, Judge, and I would – |
| The Court: | The cases that I have seen that you've cited so far don't say anything about damages. |

See Trial Tr., 9/24/04, at 101-02 (attached hereto as Exhibit F).  It should be noted that Vanguard has **not** cited any new cases in its Motion or Memo of Law.

harmless. As is demonstrated above, the only evidence presented at trial conclusively demonstrated that REG is not, in fact, the legal "successor in interest" to Stik/Strip. Vanguard has pointed the court to absolutely no evidence that would have allowed the jury to conclude that "REG purchase[d] the assets of Stik/Strip at the July 2000 foreclosure sale in order to enable **SSI or Docusystems to escape liability for the claims asserted by Vanguard in the patent litigation**." See Juror Verdict Form at 3, § VI.1 (emphasis added) (attached to Vanguard's Memo of Law as Exhibit B).

In fact, the only evidence introduced at trial was that both SSI and DSI were near bankruptcy, and had no money to pay Vanguard. See Trial Tr., 9/22/04, at 93-94 (attached hereto as Exhibit C) (testimony of John Riddle, indicating that within six months of the 1998 Closing, DSI's level of profitability had dropped below zero, DSI was losing money and was unable to service its financial obligations, and was in jeopardy of filing for bankruptcy). More importantly, the decision to sell the assets of Stik/Strip in a foreclosure sale was made by Heller. See Trial Tr., 9/23/04, at 15 (testimony of John Riddle) (attached hereto as Exhibit D). Goade had nothing to do with it, and Vanguard introduced no evidence to the contrary. There was no evidence presented to the jury that either DSI or Stik/Strip had any incentive whatsoever to "escape liability" for Vanguard's claims, let alone that Goade purchased the assets to enable them to do so. Thus, even if Judge Fullam's comment constituted error, it was harmless error, because Defendants would have been entitled to judgment as a matter of law on the successor liability theory in any event.[10]

Moreover, no reasonable juror would have been "coerced" by this Court's statement. All of the cases cited by Vanguard in support of its "coercion" argument involve situations in which

---

[10] Similarly, as stated by the Court on the record, Defendants would have been entitled to judgment as a matter of law on Vanguard's fraud claims as well. Thus, Vanguard's claim that the alleged "juror coercion" affected the jury's fraud deliberations, even if true, fails as well.

a judge's statements and/or conduct egregiously trampled on the province of the jury. In <u>United States v. United States Gypsum Co.</u>, 438 U.S. 422 (1978) (cited on page 27 of Vanguard's Memo of Law), the judge held an ex parte conference with the foreman of a jury, after the jury had listened to nearly five months of testimony, had been in sequestered deliberations for six days, and had informed the court, by note, that it could not reach a verdict. Likewise, in <u>Jenkins v. United States</u>, 380 U.S. 445 (1965), the judge commanded the jury in a criminal trial: "You have got to reach a decision in this case," after the jury had sent a letter to the judge stating that "it had been unable to agree upon a verdict on both [criminal] counts because of insufficient evidence." <u>See id.</u> at 446. After the judge's instruction, the jury returned a verdict of guilty, despite its earlier statement that there was "insufficient evidence."

Similarly, <u>Rinehart v. Wedge</u>, 943 F.2d 1158 (9th Cir. 1991), which Vanguard characterizes as "particularly on point," is in fact, far from "on point." There, it appears the jury returned a verdict with a set dollar amount of damages, and the judge proceeded to recalculate the damages and poll the jury to ratify the judge's damages recalculation. <u>See id.</u> at 1160. Here, in contrast to the cases cited by Vanguard, Judge Fullam's harmless statement as to his recollection of the evidence could not have influenced a reasonable juror. Thus, the "juror statement" submitted by Vanguard should be disregarded.

Judge Fullam's statement constituted an expression of his honor's recollection of the evidence presented at trial, and at most, an expression of his opinion as to the reasonable inferences that could be drawn from that evidence. The general rule is that federal judges are permitted to make such expressions:

> The rule that the trial court is not permitted in its charge to the jury to invade the province of the jury to determine the facts at issue in the case **does not preclude the trial judge from expression of opinion as to the facts**. The general rule of the common-law practice is that the trial judge in summing up is not forbidden to express an opinion upon

the facts; it is deemed that **he can be of aid to the jury in expressing an opinion upon the reasonable inferences to be drawn from the evidence**.

75A Am. Jur. 2d, Trial § 1195 (2004) (emphasis added); accord Evans v. Wright, 505 F.2d 287, 290 (4th Cir. 1974) (same); Commonwealth v. Hosey, 364 Pa. Super. 578, 582 (1987) (same). Judge Fullam's comment clearly falls within these parameters.

Further, "it is well settled that the trial court's instructions to the jury must be read as a whole, and that error cannot be predicated on isolated excerpts from the charge." See Hosey, 364 Pa. Super. at 582 (citation omitted). Here, in his charge to the jury, Judge Fullam clearly instructed the jury, on multiple occasions, that the jury – and no one else – was responsible for determining the factual issues in this case:

> You understand, of course, that you are the people who analyze the testimony, decide which witnesses are credible and which ones are not credible. What inferences you draw . . . from the agreed facts and so forth. **And nothing which I will say in the course of these instructions is intended to express an opinion of my own as to what your verdict should be. And even if I did express an opinion it wouldn't be binding on you. So, I want you to be sure that you understand that you are the people who decide the case in all respects.**

> \*        \*        \*

> So, the argument here is and you, of course, will be arguing both sides of this proposition, that there were some unusual features to this sale, this purchase of the assets by Mr. Goade, that rendered it suspicious and gives rise to an inference that it was not carried out in good faith for the purpose of simply foreclosing and paying back the bank. What was really done was they devised for making sure that Mr. Goade could continue to operate the business the same as it had been before. **This issue of successor liability is, as I say, another issue which you will have to resolve.**

> \*        \*        \*

> The basic issue, as I'm sure you understand is, do you agree that matters occurred as Mr. Goade has told us. Or do you draw the inferences that the plaintiff and his witnesses have suggested. **And that's the issue for you to decide and it's going to be left to your solemn decision.**

Trial Tr., 9/27/04, at 6, 14, 109 (attached hereto as Exhibit G) (emphasis added); accord id. at 107 ("You've heard the arguments on both sides . . . . I'm not expressing any opinion one way or

the other."); id. at 108 ("You've heard the arguments both ways on that and I won't make any

further comment."). Indeed, even the comment that forms the basis for Vanguard's claim of an

entitlement to a new trial was prefaced by an instruction that the jury could reach whatever

conclusion it decided to reach:

> In short, it only has – pay attention to the way the question is worded.  If you conclude
> that at the foreclosure sale, REG purchased the assets, believing that it was necessary to
> make it difficult for Vanguard to collect on its patent judgment from those assets.  **If
> that's what you find, than you can so find**.  But under the evidence, as I recall it, it
> would be rather difficult to reach that conclusion.

Trial Tr., 9/28/04, at 11 (attached hereto as Exhibit H) (emphasis added).  Thus, Judge Fullam's

charge, especially when viewed in context and in whole, left the jury "free to act on its own view

of the evidence."  See Hosey, 364 Pa. Super. at 582.  Therefore, Vanguard's claim of "juror

coercion" lacks merit, and Vanguard's motion for a new trial should be denied.

### III. CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that Vanguards' Motion

for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), or in the Alternative, For a

New Trial Pursuant to Fed. R. Civ. P. 59, should be denied in its entirety.

<div style="margin-left:40%">

THE DEFENDANTS
BY THEIR ATTORNEYS

_____

Marc L. Zaken (*Pro hac vice*)
mzaken@edwardsangell.com
William E. Lohnes (*Pro hac vice*)
wlohnes@edwardsangell.com
EDWARDS & ANGELL, LLP
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901
Tel: (203) 353-6819
Fax: (888) 325-1667

</div>

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Judgment as a Matter of Law, or, in the Alternative, for a New Trial, was mailed, via first class U.S. mail, postage prepaid, to counsel for Plaintiff, addressed as follows:

> George Bochetto, Esquire
> David J. Perlman, Esquire
> Bochetto & Lentz, P.C.
> 1524 Locust Street
> Philadelphia, PA 19102

this 11th day of November, 2004.

William E. Lohnes

WEL:142289(HT)